UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| MATTHEWS 350 E LASALLE LLC, *et al.,*[1] | )    Case No. 26-30288 |
| | ) |
| | )    (Joint Administration Requested) |
| Debtors. | ) |

**DEBTORS' FIRST DAY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING DEBTORS TO USE CASH COLLATERAL FOR OPERATING EXPENSES AND GRANTING REPLACEMENT LIENS TO SECURED CREDITORS**

Matthews 350 E Lasalle LLC d/b/a 300 E. Lasalle d/b/a 300 East Lasalle and Commerce Center Development, LLC, as debtors and debtors-in-possession (each a "**Debtor**"; together, "**Debtors**"), by proposed counsel[2], pursuant to 11 U.S.C. § 363, Federal Rule of Bankruptcy Procedure 4001(b), requests that the Court enter an Order authorizing the use of Cash Collateral as defined by 11 U.S.C. § 363(a) for operating expenses on an interim basis through a hearing on a final Order, and the granting of replacement liens, and in support of such request state as follows:

**Procedural Background, Jurisdiction, Venue, and Statutory Basis**

1.      On March 10, 2026 (the "**Petition Date**"), Debtors each filed a Voluntary Petition under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

2.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157, 1334, and venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Matthews 350 E Lasalle LLC d/b/a 300 E. Lasalle d/b/a 300 East Lasalle (2706); and Commerce Center Development, LLC (9882).

[2] An Application to Employ proposed counsel is being filed concurrently herewith.

3.      This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (M) and is a matter of federal bankruptcy law.

4.      The statutory and legal predicates for the relief sought herein are Sections 105(a) and 363 of the Bankruptcy Code, and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

**Background of Debtor**

5.      Debtors continue to operate their business and manage their property as debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108 of the Bankruptcy Code.

6.      No trustee or examiner has been appointed in this Chapter 11 case and no official unsecured creditors' committee has been appointed herein.

7.      Matthews 350 E Lasalle LLC d/b/a 300 E. Lasalle d/b/a 300 East Lasalle ("**350 E Lasalle**") was organized on October 19, 2018, as an Indiana limited liability company and has operated and continues to operate.

8.      Commerce Center Development, LLC ("**CCD**") was organized on May 23, 2014, as an Indiana limited liability company and has operated and continues to operate.

9.      CCD is the owner of, among other parcels, the following parcels of real property located in St. Joseph County, Indiana, which is subject to a mortgage by KeyBank National Association and more particularly described as follows:

> Parcel I: Lot Numbered Three (3) in Commerce Center Minor Subdivision, as per plat thereof recorded December 30, 2019 as Instrument Number 2019-34703 in the Office of the Recorder of Saint Joseph County, Indiana.

> Parcel II: Non-exclusive Easement for access as set forth in an instrument by and between Commerce Center Development, LLC and Matthews 350 E LaSalle LLC dated April 2, 2020 and recorded April 29, 2020 in Instrument Number 2020-10418 in the Office of the Recorder of Saint Joseph County, Indiana.

2

(the "**Real Estate**").

10.     350 E Lasalle has a leasehold interest in the Real Estate pursuant to a lease with CCD dated October 30, 2019 (the "**Ground Lease**").

11.     The Real Estate is a 144-unit multi-family mid/high rise property located at 300 East Lasalle Avenue in South Bend, Indiana, with commercial and residential tenants. The property consists of a single, 10-story apartment building. Improvements thereon were constructed in 2022 and are situated on a 0.79-acre site. The improved residential units were 84.7% leased as of March 9, 2026. The Real Estate also has 14,507 square feet of street-level retail space and 14,323 square feet of fourth-floor office space, and 202 structured parking spaces on multiple levels.

12.     Prior to the Petition Date, Debtors each executed and delivered certain loan documents to KeyBank National Association ("**KeyBank**"), under the terms of which KeyBank made a loan to 350 E Lasalle in the original principal sum of $33,000,000.

13.     To secure the obligations to KeyBank on June 3, 2022, 350 E Lasalle executed and delivered to KeyBank a Mortgage, Assignment of Lease and Rents, Assignment of Contracts, Security Agreement and Fixture Filing (the "**Mortgage**"), which was recorded on June 7, 2022 as Instrument Number 2022-10416 in the Office of the Recorder of St. Joseph County, Indiana.

14.     The Mortgage also includes a Security Agreement under the terms of which 350 E Lasalle granted KeyBank a lien against all of 350 E Lasalle's personal property as more fully set forth in the Mortgage, which may include Debtors' Cash Collateral.

3

15.     To perfect its security interest in the personal property, KeyBank recorded a UCC Financing Statement with the Office of the Indiana Secretary of State as on June 6, 2022 as Instrument Number 202206062942334.

16.     Notwithstanding multiple efforts to refinance the obligations owed to KeyBank, Debtors have been unable to do so and due to in large part a law suit by the Redevelopment Commission of the City of South Bend, Indiana which is currently pending in St. Joseph County under Cause No. 71D07-2301-PL-00020 (the "**City Suit**").  Debtors have filed the instant bankruptcy case to reorganize their obligations and/or sell the Real Estate to both satisfy the obligations owed to KeyBank and certain investors of Debtors.

17.     As set forth below, Debtors property is subject to liens in the estimated amount of $35.0 million in secured and $2.6 million in unsecured debt obligations (other than amounts alleged in the City Suit).

18.     Unfortunately, due to Debtors' inability to refinance or satisfy the obligations owed to Key Bank, Debtors' primary lender has taken aggressive actions in an effort to collect on the obligations owed them and in seeking the appointment of a receiver and as a result, Debtors commenced this case in an effort to reorganize all of their obligations and restructure their debt in an attempt to pay creditors over time pursuant to a plan of reorganization.

19.     Debtor estimates that it will have approximately $275,000 in monthly revenue, $150,000 in monthly debt service, and $100,000 in monthly operating expenses in 2026.

20.     Additional information about Debtors' business, capital structure, and the circumstances leading to these chapter 11 cases is contained in the concurrently filed

*Declaration of David Matthews in Support of Debtor's Chapter 11 Petitions and First Day Motions* (the "**Declaration**")[3], which is incorporated herein by reference.

## Requested Relief

21.    As of the Petition Date, Debtors believe the value of the real estate and personal property (the "**Collatera**l") which are owned by Debtors and which may be subject to the alleged interests of the parties identified in the Declaration that have filed UCC Financing Statements, is approximately $35,000,000.

22.    Debtors base such estimation on information from an appraisal[4].  Debtors' estimation of value is a good faith estimate which may or may not be the actual value of all of the Collateral, and Debtors reserve the right to file their Schedules and Statements or Amended Schedules and Statements with differing amounts.  Debtors further reserve the right to have formal appraisals of their own conducted.

23.    Debtors have performed a preliminary investigation and analysis of the related UCC filings and based upon this preliminary investigation, believe that the assets of Debtors may serve as collateral to secure the payment of certain of the above-referenced obligations.  Debtors do not concede, however, that any asserted interest is a valid, perfected, or enforceable pre-petition lien in and to any of the assets nor do Debtors concede the priority of any one creditor's interest.  Debtors expressly retain the right to contest the validity, perfection, and enforceability of all alleged interests.

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings assigned to them in the Declaration.

[4] Upon information and belief, Debtors' creditor, KeyBank, has completed appraisals on the Debtors' property and Debtors reserve the right to seek a copy of such appraisal to help determine the value of Debtors' property.

24.     As of the Petition Date, Debtor's <u>estimated</u> outstanding indebtedness to the following creditors was as follows:

| Creditor | Collateral | Estimated Balance |
|---|---|---|
| KeyBank National Association | Real Estate and accounts | $30,132,468.79 |
| Barca Capital Holdings, Inc. | Real Estate | $1,177,152.69 |
| Forum Credit Union[5] | Real Estate | $4,541,966.18 |
| Total | | $35,851,587.66 |

(hereinafter, collectively, the "**Creditors**").

25.     Debtors believe their obligations owed to KeyBank are the only obligations which arise in part under a trade agreement or a security agreement, which grants KeyBank an interest in Debtors' Cash Collateral.

26.     In order to permit, among other things, the orderly and continued operation of Debtors' business, Debtors have an immediate need to use Cash Collateral in which the KeyBank may assert an interest.  The use of Cash Collateral is necessary to prevent immediate and irreparable harm to Debtors and their property that would otherwise result if Debtors are prevented from obtaining use of Cash Collateral for the continued operation of their business.

27.     Debtors have no present alternative borrowing source from which to secure sufficient additional funding to operate their businesses without utilizing Cash Collateral.

28.     Debtors are unable to operate their businesses without interim use of Cash Collateral.

---

[5] Neither of Debtors is a borrower on the obligations owed to Forum Credit Union.  However, Commerce Center Office Building, LLC granted a Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing to Forum Credit Union which was recorded with the Office of the Recorder of St. Joseph County on April 29, 2020 as Instrument Number 2020-10416.

6

29.     Without interim relief, Debtors will not be able to operate their business for more than a few days until a final hearing on this Motion can be held.  Accordingly, the Court, as a preliminary matter, should enter an interim order authorizing Debtors to use Cash Collateral.

30.     Certain of Debtors' Petition Date cash and cash equivalents (cash and accounts receivable) **may** constitute "cash collateral" (as that term is defined in Section 363(a) of the Bankruptcy Code).  On the Petition Date, Debtors had cash on hand or on deposit in the approximate amount of $124,000.00, which is cash collateral within the meaning of Section 363(c)(2) of the Bankruptcy Code (the "**Cash Collateral**").

### Basis for Requested Relief

31.     Under Section 363(c)(2)(B) of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure, Debtors request that the Court enter an Order authorizing their interim use of Cash Collateral for payment of their ordinary and necessary operating expenses through the date of a final hearing on this Motion.  Debtors request such use based on the proposed budget which is attached hereto as **Exhibit 1**.

32.     KeyBank may be entitled to adequate protection of its alleged interests in Debtors' Cash Collateral.  If and to the extent KeyBank has an interest in Debtors' Cash Collateral, Debtors, therefore, agree and request authority to provide adequate protection as follows:

a) KeyBank has filed UCC financing statements in relation to KeyBank's security interests granted to KeyBank in all of 350 E Lasalle's personal property, including without limitation the property that constitutes Cash Collateral in this case, and some or all of KeyBank's security interests may

be properly perfected. It is also possible that Debtors have a basis to challenge the interests asserted by Creditors. As such, until such time as the parties agree or the Court determines the relative rights of Creditors, if any, in the Cash Collateral, Debtors will grant KeyBank post-petition replacement liens in the cash and in the post-petition property of Debtors in the total aggregate amount of the value of the Cash Collateral that existed as of the Petition Date to the same extent and priority as their properly perfected, prepetition security interests; and

b) Debtors will use Cash Collateral only for the operation, maintenance, and upkeep of all of its assets and for expenses incurred in the ordinary course of business.

33. In the event the Court does not authorize the use of the Cash Collateral, Debtors believe they will not be able to maintain their current business operations.

34. Without use of Cash Collateral, Debtors will be seriously and irreparably harmed, resulting in significant losses to Debtors' estate and their creditors.

**The Requirements of Bankruptcy Rule 6003 are Satisfied**

35. Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."  Authorizing Debtors to use Cash Collateral is integral to the Debtors' ability to maintain their operations and successfully reorganize. There is a real, immediate risk that, if Debtors are not authorized to use Cash Collateral, Debtors will be unable to pay their operating expenses, thereby effectively terminating Debtors' business

8

operations.  The resulting impact on Debtors would cause the Debtors irreparable harm that would thwart Debtors' restructuring efforts.

36.     Consequently, it is critical that the Debtors are able to use Cash Collateral in the ordinary course of their business.

37.     Based on the forgoing, Debtors submit that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested in this Motion.

### Debtor's Waiver of Bankruptcy Rules 6004(a) and 6004 (h)

38.     To implement the foregoing successfully, Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Rule 6004(a) of the Bankruptcy Rules and that Debtors have established cause to exclude such relief from the 14-day stay period under Rule 6004(h) of the Bankruptcy Rules.

### Reservation of Rights

39.     Nothing contained in this Motion or any actions taken by Debtors pursuant to relief granted in the Interim Order and Final Order is intended or should be construed as: (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to Section 365 of the Bankruptcy Code; (f) a waiver or limitation of Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by Debtors or any other party in interest that any liens

9

(contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and Debtors and all other parties in interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

**WHEREFORE**, Matthews 350 E Lasalle LLC d/b/a 300 E. Lasalle d/b/a 300 East Lasalle, and Commerce Center Development, LLC, by proposed counsel, respectfully requests the Court enter an order (i) authorizing and allowing Debtors to use Cash Collateral on an interim basis pursuant to Section 363(c)(2)(B) of the Bankruptcy Code for their general ongoing business operations through the entry of a Final Order; (ii) scheduling a final hearing on Debtors' use of Cash Collateral; and (iii) granting Debtors all other relief the Court deems just and proper under the circumstances.

Respectfully submitted,

*/s/ Weston E. Overturf*
Weston E. Overturf, Attorney No. 27281-49
Anthony T. Carreri, Attorney No. 36107-49
Ryan M. Murphy, Attorney No. 38288-49
KROGER, GARDIS & REGAS, L.L.P.
111 Monument Circle, Suite 2700
Indianapolis, Indiana 46204
(317) 777-7443
wes@kgrlaw.com

*Proposed Counsel for Debtors and Debtors in Possession*

10