# EXHIBIT 1

Filed: 2/10/2026 3:31 PM
St. Joseph Superior Court 7
St. Joseph County, Indiana

## DEVELOPMENT AGREEMENT

This Development Agreement (this "Agreement"), is effective as of January 12, 2017 (the "Effective Date"), by and between the City of South Bend, Department of Redevelopment, acting by and through its governing body, the South Bend Redevelopment Commission (the "Commission"), and Commerce Center Development, LLC, an Indiana limited liability company with its registered address at 121 S. Niles Avenue, South Bend, Indiana 46617 (the "Developer") (each, a "Party," and collectively, the "Parties").

## RECITALS

WHEREAS, the Commission exists and operates under the provisions of the Redevelopment of Cities and Towns Act of 1953, as amended (I.C. 36-7-14 *et seq.*, the "Act"); and

WHEREAS, the Act provides that the clearance, replanning, and redevelopment of redevelopment areas are public uses and purposes for which public money may be spent; and

WHEREAS, the Developer and its affiliate, East Bank South Bend Development LLC (the "Affiliate"), together own certain real property and improvements described in attached **Exhibit A** (collectively, the "Developer Property"); and

WHEREAS, the Developer desires to redevelop the Developer Property (the "Project") in accordance with the project plan (the "Project Plan") attached hereto as **Exhibit B**; and

WHEREAS, under the Indiana Economic Development Corporation's Regional Cities Initiative, the Regional Development Authority for North Central Indiana (the "RDA") has preliminarily awarded the Developer a grant of Four Million Nine Hundred Thousand Dollars ($4,900,000.00) for completion of the Project, which grant is expected to be formalized under a written agreement between the Developer and the RDA (the "RDA Contract"); and

WHEREAS, the Developer Property is located within the corporate boundaries of the City of South Bend, Indiana (the "City") and within the River East Development Area (the "Area"); and

WHEREAS, the Commission has adopted (and subsequently amended, from time to time) a development plan, which contemplates development of the Area; and

WHEREAS, the Commission believes that accomplishing the Project as described herein is in the best interests of the health, safety, and welfare of the City and its residents; and

WHEREAS, the Commission desires to facilitate and assist the Project by undertaking the local public improvements stated in **Exhibit C** (the "Local Public Improvements") and the financing thereof, subject to the terms and conditions of this Agreement and in accordance with the Act.

NOW, THEREFORE, in consideration of the mutual promises and obligations stated in this Agreement, the adequacy of which is hereby acknowledged, the Parties agree as follows:

1

**EXHIBIT
1**

**SECTION 1.   <u>DEFINITIONS.</u>**

Unless otherwise defined in this Agreement, capitalized terms used in this Agreement have the following meanings:

1.1     <u>Assessed Value.</u> "Assessed Value" means the market value-in-use of a property, used for property tax assessment purposes as determined by the St. Joseph County Assessor.

1.2     <u>Board of Works.</u> "Board of Works" means the Board of Public Works of the City, a public body granted the power to award contracts for public works pursuant to I.C. 36-1-12.

1.3     <u>Funding Amount.</u>  "Funding Amount" means an amount not to exceed Five Million Dollars ($5,000,000.00) of tax increment finance revenues to be used for paying the costs associated with the construction, equipping, inspection, and delivery of the Local Public Improvements.

1.4     <u>Private Investment.</u> "Private Investment" means an amount no less than Twenty-Seven Million Dollars ($27,000,000.00) to be expended by the Developer for the costs associated with constructing the improvements set forth in the Project Plan, including architectural, engineering, and any other costs directly related to completion of the Project that are expected to contribute to increases in the Assessed Value of the Developer Property.

**SECTION 2.   <u>INTERPRETATION, TERMS, AND RECITALS.</u>**

2.1     <u>Interpretation.</u>

(a)     The terms "herein," "hereto," "hereunder," and all terms of similar import shall be deemed to refer to this Agreement as a whole rather than to any Article of, Section of, or Exhibit to this Agreement.

(b)     Unless otherwise specified, references in this Agreement to (i) "Section" or "Article" shall be deemed to refer to the Section or Article of this Agreement bearing the number so specified, (ii) "Exhibit" shall be deemed to refer to the Exhibit of this Agreement bearing the letter or number so specified, and (iii) references to this "Agreement" shall mean this Agreement and any exhibits and attachments hereto.

(c)     Captions used for or in Sections, Articles, and Exhibits of this Agreement are for convenience of reference only and shall not affect the construction of this Agreement.

(d)     The terms "include", "including" and "such as" shall each be construed as if followed by the phrase "without being limited to."

2.2     <u>Recitals.</u>  The Recitals set forth above are incorporated into and are a part of this Agreement for all purposes.

**SECTION 3.   ACCESS.**

3.1     Grant of Easement.  The Developer and the Affiliate will grant to the Commission a temporary, non-exclusive easement on, in, over, under and across any part(s) of the Developer Property (the "Easement") in the form attached hereto as **Exhibit D,** to permit the Commission to fulfill its obligations under this Agreement, including the construction, equipping, inspection, and delivery of the Local Public Improvements.  The Easement shall (a) inure to the benefit of the Commission and the Board of Works or any contractors acting on behalf of the Commission in connection with the construction, equipping, inspection, and delivery of the Local Public Improvements; (b) shall bind the Developer, the Affiliate, and their respective grantees, successors, and assigns; and (c) shall terminate no later than upon completion of the Local Public Improvements, as determined by the Board of Works.

**SECTION 4.   DEVELOPER'S OBLIGATIONS.**

4.1     Generally.  The Parties acknowledge and agree that the Commission's agreements to perform and abide by the covenants and obligations set forth in this Agreement are material consideration for the Developer's commitment to perform and abide by the covenants and obligations of the Developer contained in this Agreement.

4.2     The Project.

(a)     The Developer will perform all necessary work to complete the improvements set forth in the Project Plan attached hereto as Exhibit B and the plans and specifications delivered to the Commission pursuant to Section 4.8 of this Agreement, which improvements shall comply with all zoning and land use laws and ordinances.

(b)     The Developer will expend the Private Investment to complete the Project in accordance with the Project Plan attached hereto as Exhibit B and the plans and specifications delivered to the Commission pursuant to Section 4.8 of this Agreement.

4.3     Cooperation.  The Developer agrees to endorse and support the Commission's efforts to expedite the Local Public Improvements through any required planning, design, public bidding, construction, inspection, waiver, permitting, and related regulatory processes.

4.4     Obtain Necessary Easements.  The Developer agrees to obtain any and all easements from any governmental entity and/or any other third parties that the Developer or the Commission deems necessary or advisable in order to complete the Local Public Improvements, and the obtaining of such easements is a condition precedent to the Commission's obligations under this Agreement.  The Commission agrees to assist the Developer in obtaining any and all easements from any governmental entity and/or any other third parties that the Developer or the Commission deems necessary or advisable in order to complete the Local Public Improvements, provided, however, that the Commission will not be required to expend any money in so assisting the Developer.

4.5     Timeframe for Completion.  The Developer agrees to complete the Project and any other obligations the Developer may have under this Agreement by the completion date established in the RDA Contract or otherwise agreed between the Developer and the RDA, as

may be modified due to unforeseen circumstances and delays (the "Mandatory Project Completion Date"). Notwithstanding any provision of this Agreement to the contrary, the Developer's failure to complete the Project or any other obligations the Developer may have under this Agreement by the Mandatory Project Completion Date will constitute a default under this Agreement without any requirement of notice of or an opportunity to cure such failure.

4.6     Reserved.

4.7     <u>Reporting Obligations.</u>

(a)     Upon the letting of contracts for substantial portions of the Project and again upon substantial completion of the Project, the Developer hereby agrees to report to the Commission the number of local contractors and local laborers involved in the Project, the amount of bid awards for each contract related to the Project, and information regarding which contractor is awarded each contract with respect to the Project.

(b)     On or before June 30 and December 31 of each year until substantial completion of the Project, the Developer shall submit to the Commission a report demonstrating the Developer's good-faith compliance with the terms of this Agreement. The report shall include the following information and documents: (i) a status report of the construction completed to date, (ii) an update on the project schedule, (iii) an itemized accounting generally identifying the Private Investment to date, and (iv) a status report of the number of jobs created for employment at the Developer Property.

(c)     On or before April 15 of the year that is one year after substantial completion of the Project and on each April 15 thereafter until April 15 of the year which is ten (10) years after substantial completion of the Project, the Developer shall submit to the Commission a report with the following information: (i) the number of jobs created as a result of the Project and wage and benefit information for the jobs created; and (ii) a detailed description of the of the job and wage details for the number of people employed by the Developer in connection with the Project.

4.8     <u>Submission of Plans and Specifications for Project.</u>  Promptly upon completion of all plans and specifications for the Project, or changes thereto, the Developer shall deliver a complete set thereof to the Commission.

4.9     <u>Costs and Expenses of Construction of Project.</u>  The Developer hereby agrees to pay, or cause to be paid, all costs and expenses associated with the construction and occupancy of the Project (including all regulatory, legal, architectural, and engineering fees), exclusive of the costs to construct the Local Public Improvements (which shall be paid for by the Commission subject to the terms of this Agreement).

4.10    <u>Specifications for Local Public Improvements.</u>  The Developer will be responsible for the preparation of all bid specifications related to the Local Public Improvements, and the Developer will pay all costs and expenses of such preparation, provided, however, that if the Commission pays any costs or expenses of such preparation, then the amount paid by the Commission will be deducted from the Funding Amount. The Developer will submit all bid specifications related to the Local Public Improvements to the Director of Redevelopment

Engineering.  The Director of Redevelopment Engineering may approve or disapprove said bid specifications for the Project in his reasonable discretion and may request revisions or amendments to be made to the same.

4.11    Non-Interference.  Developer hereby agrees to use commercially reasonable efforts to minimize disruption for those living and working near the Developer Property during construction of the Project.

4.12    Insurance.  The Developer shall purchase and maintain comprehensive insurance coverage as is appropriate for the work being performed with respect to the Project.  The Developer shall provide proof of such adequate insurance to the Commission and shall notify the Commission and the City of any change in or termination of such insurance.  During the period of construction or provision of services regarding any Local Public Improvements, the Developer shall maintain insurance in the kinds and for at least the minimum amounts as described in **Exhibit E** attached hereto, and the Commission and the City shall be named as additional insureds on such policies (but not on any worker's compensation policies).

4.13    Information.  The Developer agrees to provide any and all due diligence items with respect to the Project reasonably requested by the Commission.

## SECTION 5.    **COMMISSION'S OBLIGATIONS.**

5.1    Generally.  The Parties acknowledge and agree that the Developer's agreement to perform and abide by the covenants and obligations set forth in this Agreement is material consideration for the Commission's commitment to perform and abide by the covenants and obligations of the Commission contained in this Agreement.

5.2    Completion of Local Public Improvements.

(a)    The Commission hereby agrees to complete (or cause to be completed) the Local Public Improvements described in Exhibit C attached hereto on a schedule to be reasonably determined and agreed to by the Commission and the Developer, as may be modified due to unforeseen circumstances and delays.

(b)    Before any work on the Local Public Improvements will commence, (a) the Commission will have received satisfactory plans and specifications for the Project in accordance with Section 4.8 of this Agreement, and (b) the Director of Redevelopment Engineering will have received satisfactory bid specifications for the Local Public Improvements and approved the same in accordance with Section 4.10 of this Agreement.

(c)    The Local Public Improvements will be completed in accordance with all applicable public bidding and contracting laws and will be subject to inspection by the Director of Redevelopment Engineering or his designee.

(d)    The Parties agree that the Commission will not be required to expend more than fifty percent (50%) of the Funding Amount before January 1, 2019.

(e) Notwithstanding anything contained herein to the contrary, in the event the costs associated with the Local Public Improvements are in excess of the Funding Amount, Developer, at its sole option, may determine to pay to the Commission the amount of the excess costs to permit timely completion of the Local Public Improvements by the Commission, or an agent of the Commission, which amounts shall be applied for such purpose. If Developer chooses not to pay any such excess costs of the Local Public Improvements (above the Funding Amount), the Commission may reduce the scope of the Local Public Improvements to the amount which may be funded with the Funding Amount. In no event will the Commission be required to spend more than the Funding Amount in connection with the Local Public Improvements.

5.3    Cooperation. The Commission agrees to endorse and support the Developer's efforts to expedite the Project through any required planning, design, permitting, waiver, and related regulatory processes, provided, however, that the Commission will not be required to expend any money in connection therewith.

5.4    Public Announcements, Press Releases, and Marketing Materials. The Commission agrees to coordinate all public announcements and press releases relating to the Project with the Developer.

5.5    Real Property Tax Abatement. The Developer anticipates applying to the South Bend Common Council for an abatement of real property taxes assessed against the Developer Property following the Developer's completion of the Project. The Commission agrees to endorse and support the Developer's application for a ten-year abatement not to exceed one hundred percent (100%) abatement for the first five (5) years and ninety-five percent (95%) abatement for the remaining five (5) years.

5.6    Other Incentives. As a material inducement for the Commission to enter into this Agreement and to pledge the Funding Amount to the Project, the Developer agrees that it will not request or pursue any further incentives from the City or any of the City's boards or commissions in connection with the Developer's completion of the Project, with the sole exception of the real property tax abatement described in Section 5.5 above.

## SECTION 6. COOPERATION IN THE EVENT OF LEGAL CHALLENGE.

6.1    Cooperation. In the event of any administrative, legal, or equitable action or other proceeding instituted by any person not a party to this Agreement challenging the validity of any provision of this Agreement, the Parties shall cooperate in defending such action or proceeding to settlement or final judgment including all appeals. Each Party shall select its own legal counsel and retain such counsel at its own expense, and in no event shall the Commission be required to bear the fees and costs of the Developer's attorneys nor shall the Developer be required to bear the fees and costs of the Commission's attorneys. The Parties agree that if any other provision of this Agreement, or this Agreement as a whole, is invalidated, rendered null, or set aside by a court of competent jurisdiction, the Parties agree to be bound by the terms of this Section 6.1, which shall survive such invalidation, nullification, or setting aside.

**SECTION 7.   <u>DEFAULT</u>.**

7.1     <u>Default</u>.   Any failure by either Party to perform any term or provision of this Agreement, which failure continues uncured for a period of thirty (30) days following written notice of such failure from the other Party, shall constitute a default under this Agreement.   Any notice given pursuant to the preceding sentence shall specify the nature of the alleged failure and, where appropriate, the manner in which said failure satisfactorily may be cured.   Upon the occurrence of a default under this Agreement, the non-defaulting Party may (a) terminate this Agreement, or (b) institute legal proceedings at law or in equity (including any action to compel specific performance) seeking remedies for such default.   If the default is cured within thirty (30) days after the notice described in this Section 7.1, then no default shall exist and the noticing Party shall take no further action.

7.2     <u>Reimbursement Obligation</u>.   In the event that the Developer fails (a) to complete the Project by the Mandatory Project Completion Date, or (b) to expend the full amount of the Private Investment by the Mandatory Project Completion Date, then upon the written demand of the Commission, the Developer will repay the Commission One Hundred Fifty Percent (150%) of the portion of the Funding Amount expended by the Commission in furtherance of the Local Public Improvements as of the date of the Commission's demand.

7.3     <u>Force Majeure</u>.   Notwithstanding anything to the contrary contained in this Agreement, none of the Parties shall be deemed to be in default where delays in performance or failures to perform are due to, and a necessary outcome of, war, insurrection, strikes or other labor disturbances, walk-outs, riots, floods, earthquakes, fires, casualties, acts of God, acts of terrorism, restrictions imposed or mandated by governmental entities, enactment of conflicting state or federal laws or regulations, new or supplemental environments regulations, contract defaults by third parties, or similar basis for excused performance which is not within the reasonable control of the Party to be excused (each, an event of "Force Majeure").   Upon the request of any of the Parties, a reasonable extension of any date or deadline set forth in this Agreement due to such cause will be granted in writing for a period necessitated by the event of Force Majeure, or longer as may be mutually agreed upon by all the Parties.

**SECTION 8.   <u>NO AGENCY, JOINT VENTURE, OR PARTNERSHIP;</u>**
**<u>CONFLICT OF INTEREST; INDEMNITY</u>.**

8.1     <u>No Agency, Joint Venture or Partnership</u>.   The Parties acknowledge and agree that:

(a)     The Project is a private development;

(b)     None of the Commission, the Board of Works, or the Developer has any interest or responsibilities for, or due to, third parties concerning any improvements until such time, and only until such time, that the Commission, the Board of Works, and/or the Developer expressly accepts the same; and

(c)     The Parties hereby renounce the existence of any form of agency relationship, joint venture or partnership between the Commission, the Board of Works,

7

and the Developer and agree that nothing contained herein or in any document executed in connection herewith shall be construed as creating any such relationship between the Commission, the Board of Works, and the Developer.

8.2     Conflict of Interest; Commission Representatives Not Individually Liable.  No member, official, or employee of the Commission or the City may have any personal interest, direct or indirect, in this Agreement, nor shall any such member, official, or employee participate in any decision relating to this Agreement which affects his or her personal interests or the interests of any corporation, partnership, or association in which he or she is, directly or indirectly, interested.  No member, official, or employee of the Commission or the City shall be personally liable to the Developer, or any successor in interest, in the event of any default or breach by the Commission or for any amount which may become due to the Developer, or its successors and assigns, or on any obligations under the terms of this Agreement.

8.3     Indemnity.  The Developer agrees to indemnify, defend, and hold harmless the Commission and the City from and against any claims, losses, or liabilities suffered by the Commission or the City resulting from or incurred in connection with the Local Public Improvements or the Project.

## SECTION 9.    **MISCELLANEOUS.**

9.1     Severability.  If any term or provision of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remaining terms and provisions of this Agreement shall continue in full force and effect unless amended or modified by mutual consent of the parties.

9.2     Other Necessary Acts.  Each Party shall execute and deliver to the other Parties all such other further instruments and documents as may be reasonably necessary to accomplish the Project and the Local Public Improvements contemplated by this Agreement and to provide and secure to the other Parties the full and complete enjoyment of its rights and privileges hereunder.  Notwithstanding the foregoing, the Parties understand and agree that certain actions contemplated by this Agreement may be required to be undertaken by persons, agencies, or entities that are not a party to this Agreement, including, but not limited to certain permits, consents, and/or approvals (to the extent they have not yet been obtained and completed), and that any action by such third parties shall require independent approval by the respective person, agency, entity, or governing body thereof.

9.3     Dispute Resolution; Waiver of Jury Trial.  Any action to enforce the terms or conditions of this Agreement or otherwise concerning a dispute under this Agreement will be commenced in the courts of St. Joseph County, Indiana, unless the Parties mutually agree to an alternative method of dispute resolution.  The Parties acknowledge that disputes arising under this Agreement are likely to be complex and they desire to streamline and minimize the cost of resolving such disputes.  In any legal proceeding, each Party irrevocably waives the right to trial by jury in any action, counterclaim, dispute, or proceeding based upon, or related to, the subject matter of this Agreement.  This waiver applies to all claims against all parties to such actions and proceedings.  This waiver is knowingly, intentionally, and voluntarily made by both Parties.

9.4    Attorneys' Fees.  In the event of any litigation, mediation, or arbitration between the Parties regarding an alleged breach of this Agreement, none of the Parties shall be entitled to any award of attorney's fees.

9.5    Equal Employment Opportunity.  The Developer, for itself and its successors and assigns, agrees that during the construction of the Project:

(a)    The Developer will not discriminate against any employee or applicant for employment because of race, color, religion, sex, or national origin.  The Developer agrees to post in conspicuous places, available to employees and applicants for employment, notices setting forth the provisions of this nondiscrimination clause; and

(b)    The Developer will state, in all solicitations or advertisements for employees placed by or on behalf of the Developer, that all qualified applicants will receive consideration for employment without regard to race, color, religion, sex, or national origin.

9.6    Counterparts.  This Agreement may be executed in separate counterparts, each of which when so executed shall be an original, but all of which together shall constitute one and the same instrument.  Any electronically transmitted version of a manually executed original shall be deemed a manually executed original.

9.7    Notices and Demands.  Any notice, demand, or other communication required or permitted under the terms of this Agreement may be delivered (a) by hand-delivery (which will be deemed delivered at the time of receipt), (b) by registered or certified mail, return receipt requested (which will be deemed delivered three (3) days after mailing), or (c) by overnight courier service (which will be deemed delivered on the next business day) to each Party's respective addresses and representatives stated below.

| | |
|---|---|
| Developer: | Commerce Center Development, LLC<br>121 S. Niles Avenue<br>South Bend, Indiana 46617<br>Attn:  David M. Matthews |
| With a copy to: | May Oberfell Lorber<br>4100 Edison Lakes Parkway, Suite 100<br>Mishawaka, Indiana 46545<br>Attn: Marcellus M. Lebbin |
| Commission: | South Bend Redevelopment Commission<br>1400 S. County-City Building<br>227 W. Jefferson Blvd.<br>South Bend, IN 46601<br>Attn:  Brian Pawlowski, Acting Executive Director,<br>South Bend Department of Community Investment |

9

With a copy to:    South Bend Legal Department
1200 S. County-City Building
227 W. Jefferson Blvd.
South Bend, IN 46601
Attn:  Corporation Counsel

9.8    Governing Law.  This Agreement is governed by and construed in accordance with the laws of the State of Indiana.

9.9    Authority.  Each undersigned person executing and delivering this Agreement on behalf of a Party represents and certifies that he or she is the duly authorized officer or representative of such Party, that he or she has been fully empowered to execute and deliver this Agreement on behalf of such Party, and that all necessary action to execute and deliver this Agreement has been taken by such Party.

9.10    No Third-Party Beneficiaries.  Nothing in this Agreement, express or implied, is intended or shall be construed to confer upon any person, firm, or corporation other than the Parties hereto and their respective successors or assigns, any remedy or claim under or by reason of this Agreement or any term, covenant, or condition hereof, as third-party beneficiaries or otherwise, and all of the terms, covenants, and conditions hereof shall be for the sole and exclusive benefit of the Parties herein.

9.11    Assignment.  The Developer's rights under this Agreement shall be personal to the Developer and shall not run with the land.  The Developer may not assign its rights or obligations under this Agreement to any third party without obtaining the Commission's prior written consent to such assignment, which the Commission may give or withhold in its sole discretion.  In the event the Developer seeks the Commission's consent to any such assignment, the Developer shall provide to the Commission all relevant information concerning the identities of the persons or entities proposed to be involved in and an explanation of the purposes for the proposed assignment(s).

9.12    Further Assurances.  The Parties agree that they will each undertake in good faith, as permitted by law, any action and execute and deliver any document reasonably required to carry out the intents and purposes of this Agreement.

9.13    Exhibits.  All exhibits described herein and attached hereto are incorporated into this Agreement by reference.

9.14    Entire Agreement.  No representation, promise, or inducement not included in this Agreement will be binding upon the Parties hereto.  This Agreement cannot be modified except by mutual agreement of the Parties set forth in a written instrument signed by the Parties' authorized representatives.

9.15    Time.  Time is of the essence of this Agreement.

[SIGNATURE PAGE FOLLOWS]

10

IN WITNESS WHEREOF, the Parties hereby execute this Agreement to be effective as of the Effective Date stated above.

SOUTH BEND REDEVELOPMENT
COMMISSION

David Varner, Vice President

ATTEST:

Donald E. Inks, Secretary

COMMERCE CENTER DEVELOPMENT, LLC,
an Indiana limited liability company

David M. Matthews, Member

4000.0000089 55041351.005

11

## EXHIBIT A

### Description of Developer Property

*PARCEL I: THE EAST 26.25 FEET OF THE NORTH 65 FEET OF LOT NUMBERED FOURTEEN (14) AS SHOWN ON THE RECORDED PLAT OF THE ORIGINAL PLAT OF THE TOWN OF LOWELL, NOW A PART OF THE CITY OF SOUTH BEND, RECORDED MAY 4, 1860 IN PLAT BOOK J, PAGE 455 IN THE OFFICE OF THE RECORDER OF ST. JOSEPH COUNTY, INDIANA.*

*PARCEL II: THE EAST HALF OF LOT NUMBERED FOURTEEN (14) AS SHOWN ON THE RECORDED PLAT OF THE ORIGINAL PLAT OF THE TOWN OF LOWELL, NOW WITHIN AND A PART OF THE CITY OF SOUTH BEND, RECORDED MAY 4, 1860 IN PLAT BOOK J, PAGE 455 IN THE OFFICE OF THE RECORDER OF ST. JOSEPH COUNTY, INDIANA, EXCEPTING THEREFROM THE NORTH 65 FEET.*

*PARCEL III: LOT NUMBERED THIRTEEN (13) IN THE ORIGINAL TOWN OF LOWELL, NOW A PART OF THE CITY OF SOUTH BEND, TOGETHER WITH THE VACATED ALLEY SOUTH AND ADJACENT AND ALSO THE WEST 44 FEET OF THE VACATED BRIDGE STREET LYING EAST AND ADJACENT TO LOT 13 AND THE VACATED ALLEY SOUTH.*

*PARCEL IV: THE NORTH 65.00 FEET OF LOT NUMBERED FOURTEEN (14) AS SHOWN ON THE RECORDED PLAT OF THE ORIGINAL PLAT OF THE TOWN OF LOWELL AS RECORDED IN THE OFFICE OF THE RECORDER OF ST. JOSEPH COUNTY, INDIANA, EXCEPTING THE EAST 26.5 FEET THEREOF.*

*PARCEL V: A LOT OR PARCEL OF LAND 65.00 FEET IN LENGTH NORTH AND SOUTH TAKEN OFF OF AND FROM THE ENTIRE WIDTH OF THE NORTH END OF LOT NUMBERED FIFTEEN (15) AS SHOWN ON THE RECORDED PLAT OF THE ORIGINAL PLAT OF THE TOWN OF LOWELL, NOW A PART OF THE CITY OF SOUTH BEND, EXCEPTING THEREFROM A STRIP OF LAND 2 FEET IN WIDTH, EAST AND WEST, TAKEN OFF OF AND FROM THE ENTIRE EAST END THEREOF.*

*PARCEL VI: A STRIP OF LAND 2 FEET IN WIDTH, EAST AND WEST, TAKEN OFF OF AND FROM THE EAST SIDE OF THE NORTH 65 FEET OF LOT NUMBERED FIFTEEN (15) AS SHOWN ON THE RECORDED PLAT OF THE ORIGINAL PLAT OF THE TOWN OF LOWELL, NOW A PART OF THE CITY OF SOUTH BEND.*

*PARCEL VII: LOTS NUMBERED NINETEEN (19), TWENTY (20), TWENTY-ONE (21), TWENTY-TWO (22), TWENTY-THREE (23) AND TWENTY-FOUR (24) AS SHOWN ON THE RECORDED PLAT OF THE ORIGINAL PLAT OF THE TOWN OF LOWELL, NOW A PART OF THE CITY OF SOUTH BEND. ALSO, THE FOLLOWING VACATED ALLEY: (BEGINNING AT THE NORTHWEST CORNER OF SAID LOT NUMBERED TWENTY-TWO (22); THENCE EAST ON THE NORTH LINE OF SAID LOT NUMBERED TWENTY-TWO (22), TO THE NORTHEAST CORNER OF SAID LOT; THENCE NORTH TO THE SOUTHEAST CORNER OF SAID LOT NUMBERED TWENTY-ONE (21) TO THE SOUTHWEST CORNER OF SAID LOT NUMBERED TWENTY-ONE (21); THENCE SOUTH 14 FEET TO THE PLACE OF BEGINNING. TOGETHER WITH THE EAST 22 FEET OF VACATED BRIDGE STREET LYING SOUTH OF THE SOUTH LINE OF LASALLE STREET AND NORTH OF THE NORTH LINE OF COLFAX AVENUE.*

*PARCEL VIII: A NON-EXCLUSIVE EASEMENT AS SET OUT IN A SPECIAL WARRANTY DEED BY AND BETWEEN INDIANA & MICHIGAN ELECTRIC COMPANY, AN INDIANA CORPORATION AND EAST BANK CENTER, AN INDIANA PARTNERSHIP RECORDED SEPTEMBER 29, 1980 AS DOCUMENT NUMBER 8015929 IN THE OFFICE OF THE RECORDER OF ST. JOSEPH COUNTY, INDIANA.*

*PART OF LOTS NUMBERED FOURTEEN (14) AND FIFTEEN (15) AS SHOWN ON THE RECORDED ORIGINAL PLAT OF THE TOWN OF LOWELL, NOW A PART OF THE CITY OF SOUTH BEND, ST JOSEPH COUNTY, INDIANA, DESCRIBED AS BEGINNING AT A POINT 65 FEET SOUTH OF THE NORTHWEST CORNER OF SAID LOT NUMBERED 15 ON THE WEST LINE OF SAID LOT, RUNNING THENCE SOUTH WITH SAID WEST LINE 53 FEET; THENCE EAST 99 FEET; THENCE NORTH 53 FEET; THENCE WEST 99 FEET TO THE PLACE OF BEGINNING.*

Commonly known as 401 Colfax Avenue, 230 Sycamore Street, 228 Sycamore Street, and 312 LaSalle Avenue, South Bend, Indiana

Parcel Key Nos. 018-5003-0066, 018-5003-006101, 018-5003-0060, 018-5003-006001, 018-5003-0059, and 018-5003-005901

## EXHIBIT B

### Project Plan

In accordance with the terms and conditions of this Agreement and in compliance with all applicable laws and regulations, the Developer will construct on the Developer Property a nine-story mixed-use development comprised of at least one hundred twenty-five (125) residential units, a grocery store (including a pharmacy), and street-level retail space. In addition, the Developer will construct a public plaza of approximately 4,000 square feet in area (including approximately 2,800 square feet in the northeastern corner of the Developer Property) along and abutting the East Race Waterway.

## EXHIBIT C

### Description of Local Public Improvements

The Commission will complete, or cause to be completed, the following work in accordance with the terms and conditions of this Agreement and in compliance with all applicable laws and regulations:

Site preparation, infrastructure elements, and/or other improvements to the Developer Property necessary for the Developer's completion of the Project, to be further specified by the Developer as soon as reasonably practicable.

## <u>EXHIBIT D</u>

**Form of Easement**

## GRANT OF TEMPORARY EASEMENT

This Grant of Temporary Easement (this "Easement") is made as of the 22nd day of December, 2016 (the "Effective Date"), by Commerce Center Development, LLC, an Indiana limited liability company and East Bank South Bend Development LLC, an Indiana limited liability company (together, the "Grantor"), and in favor of the South Bend Redevelopment Commission, governing body of the City of South Bend Department of Redevelopment, 1400 S. County-City Building, 227 West Jefferson Boulevard, South Bend, Indiana 46601 (the "Grantee").

WITNESSETH:

For the sum of One Dollar ($1.00) and other good and valuable consideration, the receipt of which Grantor hereby acknowledges, Grantor hereby grants, conveys, and warrants to Grantee a temporary, non-exclusive easement (the "Easement") on, in, over, under and across the real property described in attached Exhibit 1 (the "Property") for the construction, equipping, and delivery of certain improvements on the Property (the "Local Public Improvements"), together with the right of ingress to and egress from the Easement for said purposes, all pursuant to a certain Development Agreement by and between Grantor and Grantee, dated January 12, 2017 (the "Development Agreement"). Capitalized terms not otherwise defined herein shall have the meanings set forth in the Development Agreement.

The Easement granted herein shall pertain to the air, surface, and subsurface rights and interests of Grantor, for the use and benefit of Grantee, and its successors and assigns, to the extent necessary to accomplish and carry out the construction, equipping, and delivery of the Local Improvements on the Property. The Easement hereby granted includes the right and privilege for Grantee at reasonable times to clean and remove from said Easement any debris or obstructions interfering with said Easement.

The Easement granted herein, and its associated benefits and obligations, shall inure to the benefit of Grantee and Grantee's contractors acting on Grantee's behalf in connection with the Local Public Improvements.

Notwithstanding anything contained herein to the contrary, unless extended in writing by Grantor, the Easement shall terminate and be of no further force and effect on the date (hereinafter, the "Construction Termination Date") of the earliest of the following: (a) completion of the Local Public Improvements; (b) expiration or earlier termination of the Development Agreement; or (c) such earlier date as Grantor and Grantee may agree to in writing.

IN WITNESS WHEREOF, Grantor has executed this Grant of Temporary Easement on the date shown in the acknowledgment set forth below to be effective as of the Effective Date.

GRANTOR:

Commerce Center Development, LLC,
an Indiana limited liability company

David M. Matthews, Member

STATE OF INDIANA          )
                            ) SS:
COUNTY OF ST. JOSEPH    )

Before me, the undersigned, a Notary Public in and for said State, personally appeared David M. Matthews, to me known to be the Member of Commerce Center Development, LLC, and acknowledged the execution of the same as the Grantor's free and voluntary act and deed.

WITNESS my hand and Notarial Seal this 22nd day of December, 2016.

OFFICIAL SEAL
BRIGID K. BEATTIE
NOTARY PUBLIC - INDIANA
ST. JOSEPH COUNTY #687751
My Comm. Expires July 7, 2024

_____, Notary Public
Residing in St. Joseph County, IN

My Commission Expires: 7/7/2024

East Bank South Bend Development LLC,
an Indiana limited liability company

David M. Matthews, Member

| STATE OF INDIANA | ) |
| | ) SS: |
| COUNTY OF ST. JOSEPH | ) |

Before me, the undersigned, a Notary Public in and for said State, personally appeared David M. Matthews, to me known to be the Member of East Bank South Bend Development LLC, and acknowledged the execution of the same as the Grantor's free and voluntary act and deed.

WITNESS my hand and Notarial Seal this _22nd_ day of _December_, 2016.



OFFICIAL SEAL
BRIGID K. BEATTIE
NOTARY PUBLIC - INDIANA
ST. JOSEPH COUNTY #687751
My Comm. Expires July 7, 2024

_____, Notary Public
Residing in _St. Joseph_ County, IN

My Commission Expires: _7/7/2024_

This instrument was prepared by Benjamin J. Dougherty, Assistant City Attorney, 1200 S. County-City Building, 227 W. Jefferson Blvd., South Bend, Indiana 46601.

I affirm, under the penalties for perjury, that I have taken reasonable care to redact each Social Security number in this document, unless required by law. Benjamin J. Dougherty.

EXHIBIT 1

Description of Property

PARCEL I: THE EAST 26.25 FEET OF THE NORTH 65 FEET OF LOT NUMBERED FOURTEEN (14) AS SHOWN ON THE RECORDED PLAT OF THE ORIGINAL PLAT OF THE TOWN OF LOWELL, NOW A PART OF THE CITY OF SOUTH BEND, RECORDED MAY 4, 1860 IN PLAT BOOK J, PAGE 455 IN THE OFFICE OF THE RECORDER OF ST. JOSEPH COUNTY, INDIANA.

PARCEL II: THE EAST HALF OF LOT NUMBERED FOURTEEN (14) AS SHOWN ON THE RECORDED PLAT OF THE ORIGINAL PLAT OF THE TOWN OF LOWELL, NOW WITHIN AND A PART OF THE CITY OF SOUTH BEND, RECORDED MAY 4, 1860 IN PLAT BOOK J, PAGE 455 IN THE OFFICE OF THE RECORDER OF ST. JOSEPH COUNTY, INDIANA, EXCEPTING THEREFROM THE NORTH 65 FEET.

PARCEL III: LOT NUMBERED THIRTEEN (13) IN THE ORIGINAL TOWN OF LOWELL, NOW A PART OF THE CITY OF SOUTH BEND, TOGETHER WITH THE VACATED ALLEY SOUTH AND ADJACENT AND ALSO THE WEST 44 FEET OF THE VACATED BRIDGE STREET LYING EAST AND ADJACENT TO LOT 13 AND THE VACATED ALLEY SOUTH.

PARCEL IV: THE NORTH 65.00 FEET OF LOT NUMBERED FOURTEEN (14) AS SHOWN ON THE RECORDED PLAT OF THE ORIGINAL PLAT OF THE TOWN OF LOWELL AS RECORDED IN THE OFFICE OF THE RECORDER OF ST. JOSEPH COUNTY, INDIANA, EXCEPTING THE EAST 26.5 FEET THEREOF.

PARCEL V: A LOT OR PARCEL OF LAND 65.00 FEET IN LENGTH NORTH AND SOUTH TAKEN OFF OF AND FROM THE ENTIRE WIDTH OF THE NORTH END OF LOT NUMBERED FIFTEEN (15) AS SHOWN ON THE RECORDED PLAT OF THE ORIGINAL PLAT OF THE TOWN OF LOWELL, NOW A PART OF THE CITY OF SOUTH BEND, EXCEPTING THEREFROM A STRIP OF LAND 2 FEET IN WIDTH, EAST AND WEST, TAKEN OFF OF AND FROM THE ENTIRE EAST END THEREOF.

PARCEL VI: A STRIP OF LAND 2 FEET IN WIDTH, EAST AND WEST, TAKEN OFF OF AND FROM THE EAST SIDE OF THE NORTH 65 FEET OF LOT NUMBERED FIFTEEN (15) AS SHOWN ON THE RECORDED PLAT OF THE ORIGINAL PLAT OF THE TOWN OF LOWELL, NOW A PART OF THE CITY OF SOUTH BEND.

PARCEL VII: LOTS NUMBERED NINETEEN (19), TWENTY (20), TWENTY-ONE (21), TWENTY-TWO (22), TWENTY-THREE (23) AND TWENTY-FOUR (24) AS SHOWN ON THE RECORDED PLAT OF THE ORIGINAL PLAT OF THE TOWN OF LOWELL, NOW A PART OF THE CITY OF SOUTH BEND. ALSO, THE FOLLOWING VACATED ALLEY: (BEGINNING AT THE NORTHWEST CORNER OF SAID LOT NUMBERED TWENTY-TWO (22); THENCE EAST ON THE NORTH LINE OF SAID LOT NUMBERED TWENTY-TWO (22), TO THE NORTHEAST CORNER OF SAID LOT; THENCE NORTH TO THE SOUTHEAST CORNER OF SAID LOT NUMBERED TWENTY-ONE (21) TO THE SOUTHWEST CORNER OF SAID LOT NUMBERED TWENTY-ONE (21); THENCE SOUTH 14 FEET TO THE PLACE OF BEGINNING. TOGETHER WITH THE EAST 22 FEET OF VACATED BRIDGE STREET LYING SOUTH OF THE SOUTH LINE OF LASALLE STREET AND NORTH OF THE NORTH LINE OF COLFAX AVENUE.

PARCEL VIII: A NON-EXCLUSIVE EASEMENT AS SET OUT IN A SPECIAL WARRANTY DEED BY AND BETWEEN INDIANA & MICHIGAN ELECTRIC COMPANY, AN INDIANA CORPORATION AND EAST BANK CENTER, AN INDIANA PARTNERSHIP RECORDED SEPTEMBER 29, 1980 AS DOCUMENT NUMBER 8015929 IN THE OFFICE OF THE RECORDER OF ST. JOSEPH COUNTY, INDIANA.

PART OF LOTS NUMBERED FOURTEEN (14) AND FIFTEEN (15) AS SHOWN ON THE RECORDED ORIGINAL PLAT OF THE TOWN OF LOWELL, NOW A PART OF THE CITY OF SOUTH BEND, ST JOSEPH COUNTY, INDIANA, DESCRIBED AS BEGINNING AT A POINT 65 FEET SOUTH OF THE NORTHWEST CORNER OF SAID LOT NUMBERED 15 ON THE WEST LINE OF SAID LOT, RUNNING THENCE SOUTH WITH SAID WEST LINE 53 FEET; THENCE EAST 99 FEET; THENCE NORTH 53 FEET; THENCE WEST 99 FEET TO THE PLACE OF BEGINNING.

Commonly known as 401 Colfax Avenue, 230 Sycamore Street, 228 Sycamore Street, and 312 LaSalle Avenue, South Bend, Indiana

Parcel Key Nos. 018-5003-0066, 018-5003-006101, 018-5003-0060, 018-5003-006001, 018-5003-0059, and 018-5003-005901

**<u>EXHIBIT E</u>**

**Minimum Insurance Amounts**

A.  Worker's Compensation
    1.    State        Statutory
    2.    Applicable Federal    Statutory
    3.    Employer's Liability    $100,000.00

B.  Comprehensive General Liability
    1.    Bodily Injury
        a.    $5,000,000.00    Each Occurrence
        b.    $5,000,000.00    Annual Aggregate Products and Completed Operation

    2.    Property Damage
        a.    $5,000,000.00    Each Occurrence
        b.    $5,000,000.00    Annual Aggregate

C.  Comprehensive Automobile Liability
    1.    Bodily Injury
        a.    $500,000.00    Each Person
        b.    $500,000.00    Each Accident

    2.    Property Damage
        a.    $500,000.00    Each Occurrence