UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | |
| Matthews 350 E LaSalle, LLC | ) | |
| Debtor(s) | ) | Case No. 26-30288-pes |
| | ) | Chapter 11 |
| Commerce Center Development, LLC | ) | |
| Debtor(s) | ) | (Jointly Administered) |
| | ) | |
| | ) | |

**OBJECTION TO DEBTORS' MOTION TO ASSUME**
**UNEXPIRED GROUND LEASE BETWEEN DEBTORS**

The Redevelopment Commission of the City of South Bend, Indiana (the "Commission"), respectfully submits this Memorandum in Opposition to Matthews 350 E Lasalle LLC d/b/a 300 E. Lasalle d/b/a 300 E. Lasalle ("Matthews 350") and Commerce Center Development, LLC ("CCD") (collectively "Debtors"), Motion to Assume Unexpired Ground Lease Between Debtors ("Motion") filed on April 17, 2026. For the reasons set out below, Debtors' Motion must be denied.

STATEMENT OF FACTS

1. Beginning in 2014, the Commission sought to promote development in downtown South Bend, Indiana.

2.     Specifically, the Commission sought to facilitate development of a grocery store and pharmacy in downtown South Bend, Indiana. The goal of the development was to meet basic human needs for the citizens living in downtown South Bend.

3.     In 2016, representatives of CCD initiated discussions with the Commission regarding a proposed downtown development project that would include new residential units as well as a full-service grocery store and pharmacy, street-level retail, and a large public plaza in the northeast corner of the property ("Project").

4.     On January 12, 2017, the Commission entered into a Development Agreement (the "Agreement") with CCD. A copy of the Agreement is attached hereto and incorporated herein as **Exhibit 1**.

5.     Section 9.11 of the Agreement prohibited CCD from assigning its rights or obligations under the Agreement without written consent from the Commission:

> The Developer's rights under this Agreement shall be personal to the Developer and shall not run with the land. The Developer may not assign its rights or obligations under this Agreement to any third party without obtaining the Commission's prior written consent to such assignment, which the Commission may give or withhold in its sole discretion.

6.     On January 23, 2017, the Commission entered into a Memorandum of Agreement   (the "MOA") with CCD. A copy of the MOA is attached hereto and incorporated herein as **Exhibit 2**.

7.     The MOA granted CCD a ten-year real property tax abatement in connection with development of a multi-tenant mixed use projected located expansion

2

project at 401 E. Colfax Ave., South Bend, IN 46617, known as the Commerce Center Development ("Commerce Center Development").

8.      In exchange for the tax abatement, CCD committed to a capital expenditure of $35,000,000.00 for construction of 144 residential units, approximately 30,000 sq. ft. of commercial and retail space, and a parking garage with 500+ spaces, and further committed to the creation of 84 permanent full-time jobs representing an annual payroll of $2,297,568.

9.      The tax abatement granted under the MOA constitutes a core economic benefit provided to CCD in exchange for its development, investment, and job-creation commitments.

10.     Section 14 of MOA expressly provides that CCD may not assign or transfer its rights or obligations thereunder without the prior written consent of the Commission.

11.     In October 2019, CCD subdivided the developed property comprising the Project.

12.     On October 30, 2019, CCD, as Landlord, secretly executed a 99-year ground lease with Matthews 350, as Tenant (the "Ground Lease"), pursuant to which CCD transferred a parcel of the subdivided developed property (including all of the real estate upon which the Project was to be developed) for the total sum of $99.00 ($1.00 per year), prepaid. A copy of the Ground Lease is attached hereto and incorporated herein as **Exhibit 3**.

3

13. CCD did not inform the Commission about this, let alone ask the Commission for written consent to any assignment, transfer, or delegation of CCD's rights or obligations under either the Agreement or MOA to Matthews 350.

14. Following execution of the Ground Lease, responsibility for development, operation, and control of the Project was transferred to Matthews 350.

15. Article II of the Ground Lease acknowledges that the "Demised Premises" is subject to certain tax abatements approved by the Commission for a ten-year period:

> Landlord hereby acknowledges and agrees that (i) the Demised Premises is subject to certain tax abatements for a period of ten (10) years as evidenced by certain Resolution No. 4612-17 passed by the Common Counsel of the City of Soth Bend, Indiana dated January 9, 2017, and the certain Resolution No. 4613-17 passed by the Common Council of the City of South Bend, Indiana dated January 24, 2017….

16. Article II of the Ground Lease further provides that the "foregoing tax abatements shall accrue to the benefit of Tenant and any leasehold mortgagee."

17. Article VII of the Ground Lease requires Matthews 350 to assume responsibility for completing the Project. For example Section 7.04 provides:

> Tenant shall commence and pursue the Initial Construction to Substantial Completion in accordance with the contract documents as defined in the Construction Agreement (the "Contract Documents") and in accordance with the construction schedule set forth in the Construction Agreement (subject to Unavoidable Delays) (the "Schedule of Performance").

18. Taken together, the Agreement and MOA required CCD to serve as the developer responsible for the execution, financing, and completion of the Project, and

4

expressly prohibited any assignment or transfer of CCD's rights or obligations without the Commission's prior written consent.

19.     Notwithstanding these restrictions, CCD subsequently structured and implemented a transaction through which all substantive rights, obligations, control, and economic benefits associated with the Project were transferred to Matthews 350 under the Ground Lease.

20.     Pursuant to the Ground Lease, Matthews 350 assumed control over the development, operation, and management of the Project and became the recipient of the economic benefits associated with the tax abatement granted under the MOA, including the right to receive and enjoy such benefits for the duration of the lease term.

21.     As a result, CCD no longer retains meaningful control over the Project or the economic benefits of the MOA or Agreement, notwithstanding that CCD remains the nominal contracting party under both instruments.

22.     The Commission did not consent in writing to any such transfer, assignment, or delegation of CCD's rights or obligations under either the Agreement or the MOA.

23.     On March 10, 2026, the Debtors, CCD and Matthews 350, each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

24.     On April 27, 2026, CCD and Matthew 350, as Debtors filed a Motion to Assume, wherein the Debtors seek to assume the Ground Lease between the Debtors pursuant to Section 365 of the Bankruptcy Code.

25.     On April 8, 2026, CCD filed its Schedules and Statement of Financial Affairs. *D.E. 19 in case 26-30289.* These reveal:

a.  $34,457,600.00 in real property.

b.  $0.00 in any other assets of any kind.

c.  $35,851,587.66 in secured claims.

d.  $0.00 in unsecured claims.

e.  The only potential unsecured claimant is the Commission, listed as "disputed."

f.  No revenue of any kind.

26.     On May 5, 2026, CCD filed its Monthly Operating report for the period ending March 31, 2026. *D.E. 88.* This reveals:

a.  0 employees.

b.  $0 cash balance.

c.  $0 receipts.

d.  $0 disbursements.

e.  Net equity of <$1,393,988>.

27.     On April 8, 2026, Matthews 350 filed its Schedules and Statement of Financial Affairs. *D.E. 57.* These reveal:

    a.  Real property of only a "Ground Lease" with a book value of $0.00 and a current interest of "Unknown."

    b.  Total assets of $5,389,818.17, consisting primarily of $5,089,450 in Damages against the Redevelopment Commission.

    c.  Unsecured debts of $2,642,831.43, consisting primarily of $2,521,905.86 to DMTM Inc. (owned 100% by David Matthews[1]).

28.     On May 5, 2026, Matthews 350 filed its Monthly Operating report for the period ending March 31, 2026. *D.E. 87.* This reveals:

    a.  0 employees.

    b.  $49,192 in receipts.

    c.  $216,185 in disbursements.

    d.  $5,414 in net profit.

    e.  Total assets of $39,890,580.

    f.  Net equity of $7,114,183.

---

[1] Transcript from § 341 Meeting of Matthew 350 E LaSalle LLC at p.9, ll. 20-23. In response to "who owns DMTM and in what shares?," the response was "David Matthews, me, 100 percent, sole owner."

## STANDING OF THE COMMISSION

29.     The Commission has standing to object to the Debtors' Motion pursuant to 11 U.S.C. §1109(b) as a party in interest and creditor.

30.     "[A]nyone who has a legally protected interest that could be affected by a bankruptcy proceeding is entitled to assert that interest with respect to any issue to which it pertains, thus making explicit what is implicit in an in rem proceeding--that everyone with a claim to the res has a right to be heard before the res is disposed of since that disposition will extinguish all such claims. Cf. 5 *Collier on Bankruptcy* P 1109.02, at pp. 1109-16 to 1109-32 (Lawrence P. King ed., 15th ed. 1991); *United States v. Tit's Cocktail Lounge*, 873 F.2d 141, 143 (7th Cir. 1989)." *In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992).

31.     The Commission is a party in interest because it is a creditor of each Debtor and a direct counterparty to both (i) that certain Development Agreement dated January 23, 2017, and (ii) that certain MOA dated January 23, 2017, pursuant to which the Commission granted tax abatements to CCD in exchange for CCD's contractual commitments, including capital investment, development of the Project, and job creation.

32.     Both the Agreement and the MOA expressly provide that CCD may not assign or transfer its rights or obligations without the Commission's prior written consent.

8

33.     Although the Commission is not a party to the Ground Lease between CCD and Matthews 350, the Motion to Assume seeks approval of a transaction that directly affects the Commission's rights under the Agreement and the MOA.

34.     The Ground Lease reallocated control, development responsibility, and the economic benefits associated with the Project, including the benefits of the tax abatement granted under the MOA, while CCD remains the named obligor under both the Agreement and the MOA.

35.     Through the Ground Lease, CCD transferred the substantive control, operational responsibility, and economic benefits associated with the Project to Matthews 350 without the Commission's consent, notwithstanding the express non-assignment provisions contained in both the Agreement and the MOA.

36.     A creditor has standing to object to the assumption of an executory contract or unexpired lease under 11 U.S.C. § 365 where the proposed assumption would adversely affect the creditor's pecuniary interests or impair its contractual rights.

37.     Since the relief requested in the Motion directly and adversely affects the Commission's contractual rights and pecuniary interests, the Commission has a direct and substantial interest in the outcome of the Motion because it "has every right to complain if the… debtor in possession monkeys with the security in a way that endangers its claim…" *In re James Wilson Assocs.*, 965 F.2d at 171.

38.     Additionally, the Debtors have sought to remove the litigation between the Commission, the Debtors, and two additional affiliates from state court to bankruptcy court. This lease may impact the removed litigation, and assumption of it prior to any decision on remand is premature.

39.     Accordingly, the Commission has standing to object to the Motion to Assume the Ground Lease.

## BASIS FOR OBJECTION

### I.     Legal Standard.

Section 365(a) of the Bankruptcy Code grants a debtor-in-possession the authority, subject to court approval, to assume or reject any executory contract or unexpired lease of the debtor. 11 U.S.C. § 365(a). This provision is designed to allow the debtor to maximize the value of the bankruptcy estate by determining whether such contracts or leases are beneficial or burdensome to the estate.

Courts generally evaluate a debtor's decision to assume an unexpired lease under the business-judgment standard. *In re IYS Ventures, LLC*, 659 B.R. 308 (Bankr. N.D. Ill. 2024); *In re UAL Corp.*, 635 F.3d 312, 319 (7th Cir. 2011); *see also Johnson v. Fairco Corp.*, 61 B.R. 317, 320 (N.D. Ill. 1986). "[T]he decision as to whether assumption or rejection is in the best interests of the bankruptcy estate is measured by the business judgment test." *Matter of Fort Wayne Telsat, Inc.*, No. 05-12177-reg at *11 (Bankr. N.D. Ind. Jan. 28, 2008).

Under Section 365, the Court must consider whether assumption would advance the rehabilitation or liquidation of the bankruptcy estate. *In re IYS Ventures, LLC*, 659 B.R. 308. In applying that standard, the Court determines whether assumption would benefit the estate or instead burden it by diverting funds that would otherwise be available to creditors. *In re UAL Corp.*, 635 F.3d at 319. "As a result, if assumption appears to enhance the estate, court approval should only be withheld if the 'decision to assume . . . is clearly erroneous, <u>too speculative</u> or contrary to the provisions of the Bankruptcy Code.'" *Matter of Fort Wayne Telsat* at *2-3, quoting *Richmond Leasing Co. v Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985)(emphasis added).

Some courts have articulated a set of factors to guide the analysis of a debtor's business judgment in deciding whether to assume or reject an unexpired lease. These factors include: (1) the effect of the debtor's proposed assumption or rejection upon the estate; (2) how the lessor would be impacted by the assumption or rejection of the lease; (3) whether any benefit or harm to the unsecured creditors would occur from the lease assumption or rejection; and (4) the significance of the lease to the debtor's overall reorganization efforts. *Id*; *In re Washington Capital Aviation & Leasing,*156 B.R. 167, 172 (Bankr. E.D. Va. 1993) ("In deciding whether or not to allow a debtor to assume a lease the court must not only consider the impact on the other party to the lease but also potential detriment to unsecured creditors who would be subordinated to the payment of damages…"); *In re Valley View Shopping Ctr., L.P.*, 260 B.R. 10, 39 (Bankr. D. Kan.

2001) (requiring consideration of the effects of assumption on the debtor, the lessor, unsecured creditors, and the reorganization as a whole). Although courts generally defer to a debtor's business judgment, such deference is not without limits. Approval of assumption requires a showing that the proposed transaction is in the best interests of the debtor's estate. *See In re Food Barn Stores, Inc.*, 107 F.3d 558, 567 n.16 (8th Cir. 1997).

## II.  Assumption of the Ground Lease is Not a Proper Exercise of Business Judgement and is Not in the Best Interest of Either CCD or Matthews 350's Bankruptcy Estate.

In their Motion, the Debtors jointly contend that assuming the Ground Lease is a sound exercise of business judgment because it purportedly benefits both bankruptcy estates by preserving other allegedly profitable agreements, including residential leases that they claim generate significant revenue. However, the Motion does not show that assumption satisfies the business-judgment standard under 11 U.S.C. § 365 as to *each estate independently.* Although CCD and Matthews 350 are affiliated debtors, they are separate legal entities with separate bankruptcy estates and distinct fiduciary obligations to different creditor bodies.

The Court therefore must determine whether assumption of the Ground Lease serves the best interests of *each estate individually*, not whether it produces a combined net benefit to the Debtors as a single unit. For the reasons set forth below, assumption of the Ground Lease does not constitute a proper exercise of business judgment under Section 365 of the Bankruptcy Code.

### a. Assumption Is Not in the Best Interests of CCD's Estate

Assumption of the Ground Lease is not in the best interests of CCD's estate because it preserves a structure under which CCD retains contractual obligations under the Agreement and the MOA, but CCD has no income flowing in from the Project.

The Debtors assert that assumption of the Ground Lease is necessary to ensure that the Debtors' other allegedly profitable agreements remain in place, including residential leases from which the Debtors allege a significant portion of revenue is generated and which they contend will be assumed. But if the Ground Lease were rejected, CCD would have the right to assume these valuable leases and tap into the income stream they generate.

At the § 341 meeting of creditors, the sole member of CCD testified that CCD "really just holds the real estate" and does not have the ability to reduce overhead or operating expenses related to the Project. The transcript for the 341 Meeting of Commerce Center Development, on April 21, 2026 ("CCD 341"), is attached hereto and incorporated herein as **Exhibit 4.** Mr. Matthews further confirmed that CCD has no accounts receivable and that no entities owe it money. (*Id*. at 11:17-20). When asked about revenue, he testified that CCD had not generated meaningful income, aside from the prepaid 99-year Ground

13

Lease payment of $99.00. (*Id.* at 13:20-21). These admissions directly undermine the Debtors' contention that CCD's estate benefits from ongoing revenue streams associated with the residential leases or other Project operations. Instead, the record shows that CCD is not an operating entity and does not derive meaningful income from those leases.

CCD's own Monthly Operating Report and Statement of Affairs support this proposition – it has $0 revenue since filing, and has had no revenue for at least a year. It holds title to substantial value in real property, yet claims to have no unsecured debt except the lawsuit with the Commission.

Under the Ground Lease, CCD has transferred control, possession, and revenue-generating rights associated with the Project to Matthews 350, while remaining bound by its obligations under the Agreement and MOA. As a result, assumption would lock in a structure in which CCD's estate retains liabilities without corresponding economic benefit, thereby diminishing value available to creditors, including the Commission, and continue to diminish the estate. Such a result is not a proper exercise of Debtor CCD's business judgment under 11 U.S.C. § 365.

This harm to CCD's estate has already been demonstrated in the filing of Matthews 350's March Monthly Operating Report, wherein the full value of CCD's real estate was transferred to Matthews 350's assets. The intermingling of estate assets between the consolidated debtors to the benefit of Matthews 350 only underscores the lack of independent business judgment being exercised by and on behalf of CCD.

14

b. **Assumption of the Ground Lease Is Not in the Best Interests of Matthews 350's Estate**

Matthews 350 has not carried its burden to show that assumption of the Ground Lease is a sound exercise of business judgment because the record evidence identified in the Motion does not demonstrate a meaningful, estate-level benefit from assumption.

To the contrary, Matthews 350's own operating reports underscore the risk that assumption would burden its estate rather than enhance it. Matthews 350's Statement of Operations of March 2026, reflects net income of only $5,413.71 for the month. In exchange for relatively low net income, it receives exposure as the transferee of CCD's real estate obligations.

On these facts, Matthews 350 has not shown that assumption will generate sufficient incremental value to justify locking its estate into ongoing lease obligations, particularly where the Court's review includes whether assumption would take away funds available to other creditors.

Here, Matthews 350's Statement of Operations for March of 2026, demonstrated profitability is minimal. Based on the March 2026 statement of operations, assumption would not enhance the estate in any meaningful way but instead risks diverting limited cash flow toward lease obligations, thereby reducing recoveries available to the broader creditor body, including the Commission.

15

In addition, the Ground Lease expressly provides that the filing of a bankruptcy petition by Matthews 350 would constitute an "Event of Default." *See* **Exhibit 3.** Matthews 350's Chapter 11 filing therefore triggered a contractual default under the lease. Although CCD has not taken enforcement action, the record reflects no waiver of its rights or remedies arising from such default. Accordingly, assumption would require compliance with 11 U.S.C. § 365(b), including cure of any existing defaults and provision of adequate assurance of prompt cure. This further underscores that assumption is not a continuation of the status quo, but a legally and financially consequential election that increases estate obligations and risk without a corresponding demonstrated benefit.

Matthews 350 has not demonstrated that assumption of the Ground Lease satisfies the business judgment standard, and its own financial results confirm that assumption would not enhance the estate but instead risk diminishing value available to creditors. Accordingly, the Court should deny the Motion to Assume.

### III.    Impact on Unsecured Creditors

In evaluating assumption of an executory contract or unexpired lease, the Court may consider the impact of assumption on unsecured creditors and whether assumption would divert value otherwise available for distribution from the estate. As set forth above, neither CCD nor Matthews 350 has demonstrated that assumption of the Ground Lease provides a meaningful benefit to its respective bankruptcy estate, and instead,

16

assumption would be materially detrimental to unsecured creditors, including the Commission.

Here, assumption of the Ground Lease would materially prejudice the Commission, as an unsecured creditor, by preserving a structure formed by CCD in breach of two agreements with the Commission, under which CCD transferred substantially all Project-related rights, control, and economic benefits to Matthews 350. Assumption would leave little to no value in CCD's estate from which the Commission could recover, while diminishing recoveries otherwise available for distribution. As the sole unsecured creditor, the Commission is not only uniquely harmed by the ratification of a lease which re-breaches obligations to the Commission, it is the sole party which would be harmed by the removal of any funds payable to unsecured claimants.

It may be helpful to contrast the nature of the Commission's claims against CCD from those against Matthews 350.  The Commission has direct breach-of-contract claims against CCD under the Agreement and MOA. On the other hand, the Commission's claims against Matthews 350 are indirect and require the Commission to also prevail through either veil-piercing, equitable estoppel, or third-party beneficiary claims. It is therefore in the Commission's interest to, first and foremost, maximize the value of the bankruptcy estate of CCD. This matches the benefit of the Commission's original bargain with CCD – that (consistent with the non-assignment clause) the value of the Project would serve as security for CCD's obligations under the Agreement and MOA.

17

As set forth above, Matthews 350's financial performance reflects minimal profitability, with net income of only $5,413.71 for March 2026. In light of these limited returns, assumption would not enhance estate value but instead would risk diverting scarce cash flow toward ongoing lease obligations and any cure obligations. Those expenditures would directly reduce funds otherwise available for distribution to unsecured creditors, including the Commission. Accordingly, the Debtors are unable to show that assumption of the Ground Lease provides a demonstrable benefit to each respective estate and does not operate to the detriment of unsecured creditors, including the Commission. Because assumption of the Ground Lease would materially prejudice the Commission, as an unsecured creditor, and has not been shown to enhance estate value, the Court should deny the Motion to Assume.

CONCLUSION

The Debtors assert that, in the exercise of their business judgment, they seek to assume the Ground Lease. However, the Debtors have not provided sufficient evidence to demonstrate that assumption of the Ground Lease would in fact benefit each of their respective bankruptcy estates. Instead, the Debtors rely on a generalized assertion that assumption is necessary to preserve other purportedly profitable agreements, including residential leases from which they allege a significant portion of revenue is generated. Notably, however, the Debtors do not distinguish between the respective estates or

18

explain how such revenue is allocated or provides a discrete economic benefit to each estate individually, nor do they address the resulting impact on unsecured creditors, including the Commission. Accordingly, the Debtors have failed to show that assumption of the Ground Lease constitutes a sound exercise of business judgment with respect to either estate. Therefore, the Motion to Assume the Ground Lease should be denied.

Respectfully Submitted,

/s/ *Katherine E. Iskin*
Katherine E. Iskin (33679-71)
Matthew J. Anderson (27511-71)
MAY OBERFELL LORBER LLP
4100 Edison Lakes Pkwy, Suite 100
Mishawaka, IN 46545
Telephone: 574-243-4100
Email: kiskin@maylorber.com

CERTIFICATE OF SERVICE

I certify that on May 18, 2026, a copy of the foregoing was filed electronically with the Clerk using the CM/ECF System, which sent notification of such filing to all counsel of record.

/s/ *Katherine E. Iskin*
Katherine E. Iskin (33679-71)