UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | |
| Matthews 350 E LaSalle, LLC | ) | |
| Debtor(s) | ) | Case No. 26-30288-pes |
| | ) | Chapter 11 |
| Commerce Center Development, LLC | ) | |
| Debtor(s) | ) | (Jointly Administered) |
| | ) | |
| | ) | |

**OBJECTION TO DEBTOR'S MOTION TO ASSUME UNEXPIRED GROUND
LEASE WITH COMMERCE CENTER OFFICE BUILDING, LLC**

The Redevelopment Commission of the City of South Bend, Indiana (the "Commission"), respectfully submits this Memorandum in Opposition to Commerce Center Development, LLC's ("CCD" and/or "Debtor") Motion to Assume Unexpired Ground Lease with Commerce Center Office Building, LLC ("CCOB") filed on April 17, 2026. For the reasons set out below, Debtor's Motion must be denied.

STATEMENT OF FACTS

1.      Many of the facts related to this Objection overlap with those in the Commission's Objection to the assumption of a similar Ground Lease between the consolidated Debtors Commerce Center Development, LLC and Matthews 350 E LaSalle, LLC. For brevity, the Commission incorporates its Objection and exhibits, *D.E. 96*, herein and restates the factual allegations as stated therein.

2.      On or about October 30, 2019, CCD, as Landlord, secretly executed a 99-year ground lease with CCOB, as Tenant (the "Ground Lease"), pursuant to which CCD transferred a parcel of the subdivided developed property (including all of the real estate upon which the Project was to be developed) for the total sum of $99.00 ($1 per year), prepaid. A copy of the Ground Lease is attached hereto and incorporated herein as **Exhibit 1**.

3.      CCD and CCOB share ownership, as per the signature page of the Ground Lease, which can be found on page 39 of Exhibit 1 and is replicated as follows. As such, this was not an arms'-length transaction:

**LANDLORD:**
**Commerce Center Development LLC**, an Indiana LLC

By: _____
Name: David Matthews
Title: Sole Member

**TENANT: Commerce Center Office Building LLC**

By: _____
Name: David Matthews
Title: Sole Member

4.      CCD did not inform the Commission about this, let alone ask the Commission. It did not provide written consent to any assignment, transfer, or delegation of CCD's rights or obligations under either the Agreement (*Exhibit 1 of D.E. 96*) or MOA (*Exhibit 2 of D.E. 96*) to CCOB.

5.      Following execution of the Ground Lease, responsibility for operation and control of the Project was transferred to CCOB.

6.      Article II of the Ground Lease acknowledges that the "Demised Premises" is subject to certain tax abatements approved by the Commission for a ten-year period:

> Landlord hereby acknowledges and agrees that (i) the Demised Premises is subject to certain tax abatements for a period of ten (10) years as evidenced by certain Resolution No. 4612-17 passed by the Common Counsel of the City of Soth Bend, Indiana dated January 9, 2017, and the certain Resolution No. 4613-17 passed by the Common Council of the City of South Bend, Indiana dated January 24, 2017….

7.      Article II of the Ground Lease further provides that the "foregoing tax abatements shall accrue to the benefit of Tenant and any leasehold mortgagee."

8.      Taken together, the Agreement and MOA required CCD to serve as the developer responsible for the execution, financing, and completion of the Project, and expressly prohibited any assignment or transfer of CCD's rights or obligations without the Commission's prior written consent.

9.       Notwithstanding these restrictions, CCD subsequently structured and implemented a transaction through which all substantive rights, obligations, control, and economic benefits associated with the Project were transferred to CCOB under the Ground Lease.

10.     Pursuant to the Ground Lease, CCOB assumed control over the operation and management of the Project and became the recipient of the economic benefits

3

associated with the tax abatement granted under the MOA, including the right to receive and enjoy such benefits for the duration of the lease term.

11.     As a result, CCD no longer retains meaningful control over the Project or the economic benefits of the MOA or Agreement, notwithstanding that CCD remains the nominal contracting party under both instruments.

12.     The Commission did not consent in writing to any such transfer, assignment, or delegation of CCD's rights or obligations under either the Agreement or the MOA.

13.     On March 10, 2026, the Debtor, CCD, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

14.     On April 27, 2026, CCD filed a Motion to Assume, wherein CCD seeks assume the Ground Lease between CCD and CCOB pursuant to Section 365 of the Bankruptcy Code because "assumption of the Ground Lease will benefit its estate by ensuring that Debtor keeps a valuable tenant (CCOB) in place…" *D.E. 83, ¶18.*

15.     No further detail is provided as to what makes CCOB a "valuable tenant," given that the total $99.00 in rent payable under the Ground Lease has been paid in full for years prior to the filing of this chapter 11.

16.     On April 8, 2026, CCD filed its Schedules and Statement of Financial Affairs. *D.E. 19 in case 26-30289.* These reveal:

> a.   $34,457,600.00 in real property.

b. $0.00 in any other assets of any kind, including intangible assets.

c. $35,851,587.66 in secured claims.

d. $0.00 in unsecured claims.

e. The only potential unsecured claimant is the Commission, listed as "disputed."

f. No revenue of any kind.

17. On May 5, 2026, CCD filed its Monthly Operating report for the period ending March 31, 2026. *D.E. 88.* This reveals:

a. 0 employees.

b. $0 cash balance.

c. $0 receipts or rental income.

d. $0 disbursements.

e. Net equity of <$1,393,988>.

## STANDING OF THE COMMISSION

18. The Commission has standing to object to the Debtor's Motion pursuant to 11 U.S.C. §1109(b) as a party in interest and creditor.

19. "[A]nyone who has a legally protected interest that could be affected by a bankruptcy proceeding is entitled to assert that interest with respect to any issue to which it pertains, thus making explicit what is implicit in an in rem proceeding--that everyone

5

with a claim to the res has a right to be heard before the res is disposed of since that disposition will extinguish all such claims. Cf. 5 *Collier on Bankruptcy* P 1109.02, at pp. 1109-16 to 1109-32 (Lawrence P. King ed., 15th ed. 1991); *United States v. Tit's Cocktail Lounge*, 873 F.2d 141, 143 (7th Cir. 1989)." *In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992).

20.    The Commission is a party in interest because it is a creditor of Debtor and a direct counterparty to both (i) that certain Development Agreement dated January 23, 2017, and (ii) that certain MOA dated January 23, 2017, pursuant to which the Commission granted tax abatements to CCD in exchange for CCD's contractual commitments, including capital investment, development of the Project, and job creation.

21.    Both the Agreement and the MOA expressly provide that CCD may not assign or transfer its rights or obligations without the Commission's prior written consent.

22.    Although the Commission is not a signatory to the Ground Lease between CCD and CCOB, the Motion to Assume seeks approval of a transaction that directly affects the Commission's rights under the Agreement and the MOA.

23.    The Ground Lease reallocated control, development responsibility, and the economic benefits associated with the Project, including the benefits of the tax abatement granted under the MOA, while CCD remains the named obligor under both the Agreement and the MOA.

6

24. Through the Ground Lease, CCD transferred the substantive control, operational responsibility, and economic benefits associated with the Project to CCOB without the Commission's consent, notwithstanding the express non-assignment provisions contained in both the Agreement and the MOA.

25. A creditor has standing to object to the assumption of an executory contract or unexpired lease under 11 U.S.C. § 365 where the proposed assumption would adversely affect the creditor's pecuniary interests or impair its contractual rights.

26. Since the relief requested in the Motion directly and adversely affects the Commission's contractual rights and pecuniary interests, the Commission has a direct and substantial interest in the outcome of the Motion because it "has every right to complain if the… debtor in possession monkeys with the security in a way that endangers its claim…" *In re James Wilson Assocs.*, 965 F.2d at 171.

27. Additionally, the Debtor has sought to remove the litigation between the Commission, the consolidated Debtors, and two additional affiliates from state court to bankruptcy court. This lease may impact the removed litigation, and assumption of it prior to any decision on remand is premature.

28. Accordingly, the Commission has standing to object to the Motion to Assume the Ground Lease.

BASIS FOR OBJECTION

**I.      Legal Standard.**

Section 365(a) of the Bankruptcy Code grants a debtor-in-possession the authority, subject to court approval, to assume or reject any executory contract or unexpired lease of the debtor. 11 U.S.C. § 365(a). This provision is designed to allow the debtor to maximize the value of the bankruptcy estate by determining whether such contracts or leases are beneficial or burdensome to the estate.

Courts generally evaluate a debtor's decision to assume an unexpired lease under the business-judgment standard. *In re IYS Ventures, LLC*, 659 B.R. 308 (Bankr. N.D. Ill. 2024); *In re UAL Corp.*, 635 F.3d 312, 319 (7th Cir. 2011). "[T]he decision as to whether assumption or rejection is in the best interests of the bankruptcy estate is measured by the business judgment test." *Matter of Fort Wayne Telsat, Inc.*, No. 05-12177-reg at *11 (Bankr. N.D. Ind. Jan. 28, 2008).

Under Section 365, the Court must consider whether assumption would advance the rehabilitation or liquidation of the bankruptcy estate. *In re IYS Ventures, LLC*, 659 B.R. 308. In applying that standard, the Court determines whether assumption would benefit the estate or instead burden it by diverting funds that would otherwise be available to creditors. *In re UAL Corp.*, 635 F.3d at 319. "As a result, if assumption appears to enhance the estate, court approval should only be withheld if the 'decision to assume . . . is clearly erroneous, too speculative or contrary to the provisions of the Bankruptcy Code.'" *Matter*

8

*of Fort Wayne Telsat* at \*2-3, quoting *Richmond Leasing Co. v Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985)(emphasis added).

Some courts have articulated a set of factors to guide the analysis of a debtor's business judgment in deciding whether to assume or reject an unexpired lease. These factors include: (1) the effect of the debtor's proposed assumption or rejection upon the estate; (2) how the lessor would be impacted by the assumption or rejection of the lease; (3) whether any benefit or harm to the unsecured creditors would occur from the lease assumption or rejection; and (4) the significance of the lease to the debtor's overall reorganization efforts. *Id*; *In re Washington Capital Aviation & Leasing,*156 B.R. 167, 172 (Bankr. E.D. Va. 1993) ("In deciding whether or not to allow a debtor to assume a lease the court must not only consider the impact on the other party to the lease but also potential detriment to unsecured creditors who would be subordinated to the payment of damages…"); *In re Valley View Shopping Ctr., L.P.,*260 B.R. 10, 39 (Bankr. D. Kan. 2001) (requiring consideration of the effects of assumption on the debtor, the lessor, unsecured creditors, and the reorganization as a whole). Although courts generally defer to a debtor's business judgment, such deference is not without limits. Approval of assumption requires a showing that the proposed transaction is in the best interests of the debtor's estate. *See In re Food Barn Stores, Inc.*, 107 F.3d 558, 567 n.16 (8th Cir. 1997).

II.    **Assumption of the Ground Lease is Not a Proper Exercise of Business Judgment and is Not in the Best Interest of CCD's Bankruptcy Estate.**

In its Motion, CCD contends that assuming the Ground Lease is a sound exercise of business judgment because it purportedly benefits its bankruptcy estate by "keeping a valuable tenant in place." CCD further contends that assuming the Ground Lease is a sound exercise of business judgment because CCOB is "crucial" to CCD's ability to reorganize, without further explanation as to what makes it "crucial."

However, the Motion does not show that assumption satisfies the business-judgment standard under 11 U.S.C. § 365 because there is no showing of any value to the estate of CCD relative to the CCOB Ground Lease. For the reasons set forth below, assumption of the Ground Lease does not constitute a proper exercise of business judgment under Section 365 of the Bankruptcy Code.

a.    **Assumption Is Not in the Best Interests of CCD's Estate**

Assumption of the Ground Lease is not in the best interests of CCD's estate because it preserves a structure under which CCD retains contractual obligations under the Agreement and the MOA, but CCD has no income flowing in from the Project.

CCD asserts that assumption is necessary to ensure that CCOB remains a tenant because it is a "valuable tenant" and "crucial" to CCD's ability to reorganize. However, CCD has not received any revenue from CCOB since inception of the Ground Lease. At the § 341 meeting of creditors, the sole member of CCD testified that CCD "really just

10

holds the real estate" and does not have the ability to reduce overhead or operating expenses related to the Project. The transcript for the 341 Meeting of Commerce Center Development, on April 21, 2026 ("CCD 341"), is attached hereto and incorporated herein as **Exhibit 2**.

Mr. Matthews further confirmed that CCD has no accounts receivable and that no entities owe it money. (*Id.* at 11:17-20). When asked about revenue, he testified that CCD had not generated meaningful income, aside from the prepaid 99-year Ground Lease payment of $99.00. (*Id.* at 13:20-21). These admissions directly undermine CCD's contention that CCD's estate benefits from having a "valuable tenant" associated with the Ground Lease or other Project operations. Instead, the record shows that CCD is not an operating entity and does not derive any income from its lease with CCOB, as a tenant or otherwise. CCD's own Monthly Operating Report and Statement of Affairs support this proposition, given that it has $0 revenue since filing and has had no revenue for at least a year. CCD holds title to substantial real property value but reports no material unsecured debt, except the lawsuit with the Commission.

CCD further fails to demonstrate any meaningful nexus between assumption of the Ground Lease and the formulation or feasibility of a plan of reorganization. While CCD asserts that CCOB is "crucial" to its ability to reorganize, it does not explain how assumption of the Ground Lease advances reorganization, preserves estate value, or generates income for creditors. The justification offered is limited to maintaining CCOB's

occupancy, without any showing that such occupancy provides economic benefit to the estate or any entity outside of CCOB.

On these facts, CCD has not shown that assumption will generate sufficient incremental value to justify locking its estate into ongoing lease obligations, particularly where the Court's review includes whether assumption would take away funds available to other creditors. Here, assumption would not enhance the estate in any meaningful way. It would instead reduce recoveries available to the broader creditor body, including the Commission, and may well result in even further litigation in regarding the import and meaning of the Ground Lease's assumption and whether such assumption would have substantive impact on the litigation between the Commission and the assorted Matthews defendants.

Under the Ground Lease, CCD has transferred control, possession, and revenue-generating rights associated with the Project to CCOB, while remaining bound by its obligations under the Agreement and MOA. As a result, assumption would lock in a structure in which CCD's estate retains liabilities without corresponding economic benefit, resulting in ongoing diminution of value available to creditors, including the Commission. Such a result is not a proper exercise of CCD's business judgment under 11 U.S.C. § 365. Accordingly, the Court should deny the Motion to Assume.

12

### III.    Impact on Unsecured Creditors

In evaluating assumption of an executory contract or unexpired lease, the Court may consider the impact of assumption on unsecured creditors and whether assumption would divert value otherwise available for distribution from the estate. As set forth above, CCD has not demonstrated that assumption of the Ground Lease provides a meaningful benefit to its bankruptcy estate, and instead, assumption would be materially detrimental to unsecured creditors, including the Commission.

Here, assumption of the Ground Lease would materially prejudice the Commission, as an unsecured creditor, by preserving a structure formed by CCD in breach of two agreements with the Commission, under which CCD transferred away substantially all Project-related rights, control, and economic benefits for $99.00 total. Assumption would leave little to no value in CCD's estate from which the Commission could recover, while diminishing recoveries otherwise available for distribution. As the sole unsecured creditor, the Commission is not only uniquely harmed by the ratification of a lease which re-breaches obligations to the Commission, it is the sole party which would be harmed by the removal of any funds payable to unsecured claimants.

The Commission holds direct breach-of-contract claims against CCD under the Agreement and MOA. The Commission's interest in this case is therefore aligned with maximizing the value of CCD's bankruptcy estate, consistent with the parties' original

13

bargain, – that (consistent with the non-assignment clause) the value of the Project would serve as security for CCD's obligations under the Agreement and MOA.

Accordingly, CCD is unable to show that assumption of the Ground Lease provides a demonstrable benefit to its respective estate and does not operate to the detriment of unsecured creditors, including the Commission. Because assumption of the Ground Lease would materially prejudice the Commission, as an unsecured creditor, and has not been shown to enhance estate value or how such assumption is crucial to CCD's ability to restructure, the Court should deny the Motion to Assume.

CONCLUSION

CCD contends that, in the exercise of its business judgment, it should be permitted to assume the Ground Lease with CCOB.  However, CCD has not provided sufficient evidence - beyond bare, vague assertions - to demonstrate that assumption of the Ground Lease would in fact benefit its bankruptcy estate. CCD has not established that CCOB is a valuable tenant. While CCD characterizes CCOB as a "valuable tenant" and "crucial" to its ability to reorganize, until and unless adequate and quantifiable supporting facts demonstrating what value CCOB provides or how its tenancy advances reorganization, that conclusory assertion is insufficient to satisfy the business judgment standard.

CCD does not quantify or describe the economic or operational value CCOB provides, nor does it explain how CCOB's tenancy meaningfully contributes to CCD's

14

ability to reorganize under Chapter 11 of the United States Bankruptcy Code. CCD instead relies on generalized statements that assumption is necessary to preserve CCOB as a tenant, because CCOB purportedly plays a crucial role in its restructuring, without explaining what that role is or how it advances reorganization. Moreover, CCD wholly fails to address the impact of assumption on unsecured creditors, including the Commission. Accordingly, CCD has failed to show that assumption of the Ground Lease constitutes a sound exercise of business judgment with respect to its estate. Therefore, the Motion to Assume the Ground Lease should be denied.

Respectfully Submitted,

*/s/ Katherine E. Iskin*
Katherine E. Iskin (33679-71)
Matthew J. Anderson (27511-71)
MAY OBERFELL LORBER LLP
4100 Edison Lakes Pkwy, Suite 100
Mishawaka, IN 46545
Telephone: 574-243-4100
Email: kiskin@maylorber.com

CERTIFICATE OF SERVICE

I certify that on May 18, 2026, a copy of the foregoing was filed electronically with the Clerk using the CM/ECF System, which sent notification of such filing to all counsel of record.

*/s/ Katherine E. Iskin*
Katherine E. Iskin (33679-71)

15