UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

In the Matter of:

| | |
|---|---|
| Matthews 350 E LaSalle, LLC | Case No. 26-30288-pes |
| *Debtor(s)* | Chapter 11 |
| Commerce Center Development, LLC | |
| *Debtor(s)* | (Jointly Administered) |

## OBJECTION TO MOTION TO DISQUALIFY

The Redevelopment Commission of the City of South Bend, Indiana (the "Commission"), respectfully objects to and submits this Memorandum in Opposition to Matthews 350 E Lasalle LLC d/b/a 300 E. Lasalle d/b/a 300 E. Lasalle ("Matthews 350") and Commerce Center Development, LLC ("CCD")'s (collectively "Debtors") Motion to Disqualify May Oberfell Lorber LLP ("Motion") filed on April 28, 2026 (ECF No. 85). For the reasons set out below, Debtors' Motion must be denied.

## I. SUMMARY OF ARGUMENT

Having no direct or real claim to disqualify the Commission's counsel of choice, Debtors resort to a series of vague and incorrect factual assertions supported by outdated law in a misguided effort to create a specter of impropriety by the undersigned counsel. Neither Katherine Iskin nor Matthew Anderson has ever represented David Matthews, Debtors, DMTM, Inc. ("DMTM"), or Matthews, LLC. Debtors have thus resorted to a

hodgepodge of claims conflating three underlying fact patterns: 1) Marcellus Lebbin formerly represented Debtors while an attorney at May Oberfell Lorber, LLP ("MOL"); 2) Sean Towner, currently an attorney at MOL, represented 701 Niles, LLC and Ivy Quad Development, LLC in litigation; and 3) Katlyn Foust Hunneshagen represented Matthews, LLC at one point in a matter involving the City of South Bend. Unsurprisingly, Debtors attempt to frame these facts as somehow ascribing nefarious intent to MOL's attorneys. But a closer look at the facts reveals there is no ethical breach warranting disqualification, that Debtors' assertions are vague for the sole purpose of masking their ineffectual nature, and that Debtors cited law has been specifically rejected by the Seventh Circuit. Accordingly, the motion to disqualify must be denied.

## II. FACTUAL BACKGROUND

### A. Marcellus Lebbin and CCD

From the start, Debtors fail to apprise the Court of the complete facts in the background of this matter.

Mr. Lebbin was an attorney at MOL representing CCD at the time the Development Agreement was executed. He has not been an attorney at MOL since early 2018 (this date was notably omitted from Debtors' Motion). Thus, Mr. Lebbin has not been affiliated with MOL for more than eight years.

Mr. Lebbin is listed as a shareholder of Matthews 350 (ECF No. 1 at p. 8) and has filed his appearance on behalf of DMTM and Matthews, LLC in the related adversary proceeding with the Commission (s*ee* Adv. Pro. No. 26-3011-pes, ECF Nos. 17, 18).

While MOL was designated as the law firm to which notice was to be sent under the Development Agreement between CCD and the Commission, Debtors again chose to omit that such notice is to be sent to "Attn: Marcellus M. Lebbin." (*See* ECF No. 85-1 at p. 10.) Indeed, when notice pursuant to the Development Agreement did issue, it was hand-delivered to:

> Lebbin Law Office
> ATTN: Marcellus M. Lebbin
> 401 E. Colfax Ave., Suite 180, Box #2
> South Bend, IN 46617
> Commerce Center Development, LLC
> 401 E. Colfax Ave., Ste 277
> South Bend, IN 46617

(Affidavit of Jody Fraleigh, attached hereto as Exhibit A at ¶ 3.) Ms. Fraleigh also attempted delivery to Mr. Lebbin at MOL's physical address, but MOL "refused to accept the service of the letter, because Attorney Lebbin no longer works there." (*Id*. at ¶ 4.)

Debtors then hint that other attorneys at MOL were involved in the negotiation of the Development Agreement, but they fail to articulate what or who the involvement entailed. (*See* Debtors' Motion at ¶ 16 ("MOL represented CCD in the negotiations that resulted in the Development Agreement") and ¶ 19 ("a

conflict still persists . . . with respect to the Development Agreement that MOL was heavily involved in negotiating on behalf of CCD").)

Debtors then punctuate this string of innuendos by stating, "[u]pon information and belief, MOL has never formally terminated its engagement with CCD." (Motion at ¶ 20.) Yet, Debtors make no allegation that MOL has continued to represent CCD in any capacity since Mr. Lebbin's departure from the firm.

## B. Sean Towner and Katlyn Foust Hunneshagen

Debtors proceed to imply another impropriety with respect to Ms. Foust Hunneshagen and work she performed in 2016. (*See* Motion at ¶ 21; *see also* Affidavit of Ms. Foust Hunneshagen, attached hereto as Exhibit B.) Debtors state Ms. Foust Hunneshagen represented Matthews, LLC in a lease agreement with the City of South Bend. (Motion at ¶ 21.)

True to form by this point, Debtors provide no context whatsoever, carefully remaining silent on several relevant facts. While Ms. Foust worked on lease with the City of South Bend, it was on behalf of 701 Niles LLC ("701 Niles"), who is not a party to the adversary proceeding. (Ex. B.) The lease itself pertained to a dog park on Niles Avenue, in South Bend, Indiana. (*Id.*) Ms. Foust spent 2.6 hours working on the lease in 2016. (Ex. B.) While Debtors claim Ms. Foust Hunneshagen represented Matthews, LLC in this lease, the matter was only billed to Matthews, LLC for payment. (Ex. B.) Ms. Foust

Hunneshagen does not recall ever speaking with Mr. Matthews about this matter. (Ex. B.)

Mr. Towner is alleged to have represented 701 Niles and Ivy Quad Development, LLC ("Ivy Quad"), which Debtors claim are affiliates of theirs. (Motion at ¶¶ 21-22.) Mr. Towner was an attorney of record for Ivy Quad in the following lawsuit: *The Residences at Ivy Quad Unit Owners Association, Inc. v. Ivy Quad Development, LLC, Velvet Canada, David Matthews, DMTM, Inc., Matthews LLC, et al.*, Case No. 71D05-1803-PL-000105 (the "Ivy Quad Case"). In the Ivy Quad Case, MOL attorneys did not represent or appear on behalf of Mr. Matthews, Velvet Canada, DMTM, or Matthews LLC. Those parties were represented by another local law firm.

Eventually, in November 2019, Plaintiff in the Ivy Quad Case petitioned for an Involuntary Chapter Bankruptcy for Ivy Quad. (*See* Notice of Bankruptcy, attached hereto as Exhibit C.) The appointed trustee in the bankruptcy then appeared on behalf of Ivy Quad in the underlying civil case in October 2020. (*See* appearance of Trustee, attached hereto as Exhibit D.)

With regard to 701 Niles, there is no explanation as to how Mr. Towner was involved with the entity. There is furthermore no allegation that MOL attorneys have performed any act on behalf of any Matthews-related entity since 2020.

Debtors further failed to acknowledge that in the Ivy Quad bankruptcy, MOL proceeded to file a proof of claim for unpaid legal fees. MOL was represented by Ms.

Iskin in the claims litigation with Trustee Homann, and no objection to her appearance in the form of a motion to disqualify was made.

### C. Velvet Canada

Debtors' motion also offers "evidence" that MOL attorneys somehow used confidential information against them: Attorney Iskin asked questions about Velvet Canada at the 341 Meeting of Creditors. Of course, Debtors do not come out and say this outright but insinuate it thus:

> MOL obtained intimate, privileged information regarding David Matthews, individually. For example, at the 341 Meeting of Creditors held on April 21, 2026 in the above-captioned bankruptcy case, Ms. Iskin, on behalf of the Redevelopment Commission, asked pointed questions of David Matthews regarding one of the over 100 residential tenants in the building operated by Matthews 350 because Ms. Iskin had information not generally known about such tenant's connection to David Matthews, which, upon information and belief, was information Ms. Iskin obtained as a result of MOL's representation of David Matthews and his entities.

(Motion at ¶ 36.)

Calling Ms. Iskin's questions "pointed" is highly dubious. Ms. Iskin asked about Velvet Canada because she is publicly identified as Mr. Matthews's spouse. *See Residences of Ivy Quad Unit Owners Ass'n v. Ivy Quad Dev., LLC*, 164 N.E.3d 142, 145 (Ind. Ct. App. 2021) ("Velvet Canada (Velvet), David's wife, was involved in the design, construction, development, and sale of Ivy Quad units."); *see also* "Meet David Matthews" campaign video (https://www.youtube.com/watch?v=hDWydrpx-5Y) at 0:34 ("Are you married? Yes!").

As Debtors well know, Ms. Canada is not simply one tenant of many at the apartment complex but is listed as a leaseholder for four different residential units. (*See* ECF No. 57 at 38-39, filed April 8, 2026.) So, Mr. Matthews was simply asked if he was married to Ms. Canada (he isn't) and whether she pays rent on all four residential leases (she does). That was the entire line of questioning and well within the scope of standard questioning regarding business transactions with an insider. (*See* excerpted transcript of 341 Meeting of 350 Matthews, attached hereto as Exhibit E.)

Finally, it should be noted that Mr. Anderson and Ms. Iskin have never represented Mr. Matthews or any affiliated entity of his. Mr. Anderson join MOL in January 2020 and Ms. Iskin in November 2023.

### III. ARGUMENT

Debtors' Motion to Disqualify should be denied. The factual record asserted by Debtors is largely unsubstantiated and does not even constitute proper evidence. Even if it were, the record does not establish any breach of the Indiana Rules of Professional Conduct by MOL's current representation of the Commission in this matter and in the Adversary Proceeding.

Indeed, as best as the Commission can tell, the sum and substance of Debtors' argument is that none of the MOL attorneys named in the motion have represented either Debtor or Defendant DMTM; one attorney billed Matthews LLC for work done on behalf of 701 Niles on a completely unrelated lease in 2016; but because Mr. Lebbin or someone

else from CCD neglected to update the notice provision in the Development Agreement and a few routine 341 questions were asked about Velvet Canada, a breach of Indiana's Rules of Professional Conduct is afoot. All the while, Debtors appear to conflate outdated federal common law and Rule 1.10 of the Indiana Rules of Professional Conduct to achieve their desired result.

### A. Standard of Review for motions to disqualify.

The court possesses broad discretion in determining whether disqualification is required in a particular case. *Whiting Corp. v. White Machinery Corp.*, 567 F.2d 713, 715 (7th Cir. 1977) (quotations omitted).

The moving party bears the burden of establishing the facts required for disqualification. *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 794 (2d Cir. 1983). "For this purpose, naked claims that the attorney received confidential information from his prior (and now adverse) client do not suffice." *Velazquez-Velez v. Molina-Rodriguez*, 235 F. Supp. 3d 358, 361-62 (D.P.R. 2017).

Motions to disqualify are treated with "extreme caution." *See Freeman v. Chi. Musical Instrument Co.*, 689 F.2d 715, 722 (7th Cir. 1982). Caution is warranted both because disqualification motions "can be misused as techniques for harassment," and because the consequences of disqualification "destroy a relationship by depriving a party of representation of their own choosing." *Id*. "Disqualification, as a prophylactic device

for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary." *Id*. at 721.

"Lawyers representing clients in federal courts must follow federal rules, but most 'federal courts use the ethical rules of the states in which they sit.'" *Watkins v. Trans Union, LLC*, 869 F.3d 514, 519 (7th Cir. 2017) (quoting *Huusko v. Jenkins*, 556 F.3d 633, 636 (7th Cir. 2009)). The Northern District of Indiana follows the Indiana Rules of Professional Conduct and the Standards for Professional Conduct within the Seventh Federal Judicial Circuit. *See* N.D. Ind. L.R. 83-5(e). Of these two standards, only the Indiana Rules of Professional Conduct provide direction on an attorney's duty to clients and former clients.

**B.  Debtors fail to establish any relevant facts in support of their claims.**

Debtors have provided no information or facts to this Court to evaluate the validity of their claims. Instead, Debtors have merely provided statements from their counsel, which are not evidence. *See R-BOC Representatives, Inc. v. Minemyer*, 233 F. Supp. 3d 647, 666 n. 29 (N.D. Ill. 2017) ("[S]tatements of lawyers are not evidence and do not count. Nothing is simpler than to make an unsubstantiated allegation.") (internal citations omitted). Because Debtors fail to present anything more than unsubstantiated statements of counsel to the Court, they fail to meet their burden to show disqualification is warranted.

Furthermore, Debtors only provide improper conclusory statements that the entities two non-involved MOL attorneys worked with were affiliates of the Debtors or defendants in the adversary proceeding. (Motion at ¶ 22.) Whether a company is an affiliate of another is a legal determination. *See e.g., Bloombank v. United. Fid. Bank F.S.B.,* 113 N.E.3d 708, 728 n.17 (Ind. Ct. App. 2018) Thus, statements like these though are improper legal conclusions. *See Alexander Chem. Corp. v. G.S. Robins & Co.,* 852 F. Supp. 2d 1048, 1055 (N.D. Ill. 2012) (holding "[a]ffidavits (and testimony) set out facts, not law" and that an individual "got it backward" when he provided a legal conclusion without supporting facts); *see also Good Shepherd Manor Found. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003). It is the Court's role to determine whether facts support a legal conclusion, not the parties'. *See e.g., 3BTech, Inc. v. Wang*, 534 F. Supp. 3d 973, 985 (N.D. Ind. 2021) (admonishing an affiant's attempts to offer legal conclusions in lieu of facts, holding the legal conclusions were not evidence the court would consider).

It is Debtors' burden to show the Court why the extreme remedy of disqualification is proper based on evidence. Their failure to do so should subject their motion to an immediate denial.

### C. Debtors' cited legal standard has been abrogated by the Seventh Circuit.

Throughout the Motion, Debtors rely almost exclusively on the case of *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263 (7th Cir. 1983) to the exclusion of all other case law. (*See* Motion at ¶¶ 30, 37, and 39). This decision applied a federal common law

standard in determining disqualification, in conjunction with a case decided near the same time, *LaSalle Nat'l Bank v. Cty. of Lake*, 703 F.2d 252 (7th Cir. 1983). But the Seventh Circuit rejected the application of the federal common standard in these two cases almost ten years ago, opting to follow the Indiana Rules of Professional Conduct.

> In the district court, as on appeal, Trans Union relied on *LaSalle Nat'l Bank v. Cty. of Lake*, 703 F.2d 252 (7th Cir. 1983), and *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263 (7th Cir. 1983), to argue that federal common law governs the standard for disqualification. Both cases predate Indiana Rule of Professional Conduct 1.9, which, as the district court found here, governs the issue of disqualification.

*Watkins*, 869 F.3d at 518.

This is particularly important where Debtors mistakenly assert that *Analytica* renders Ind. Professional Conduct Rule 10(b)(2) an inapplicable nullity. (Motion at ¶ 39.) Under the former standard, it may have been sufficient for Mr. Lebbin's former affiliation with MOL to operate to disqualify its representation here. But Ind. Prof. Conduct R. 1.10 overruled *Analytica*, not the other way around, because the Seventh Circuit has abandoned the federal common law standard in ruling on disqualification.

This leaves as the dispositive issue whether the representation of 701 Niles or Ivy Quad by two other attorneys currently at MOL would disqualify them in the present matter. It does not.

### D. Debtors' claim still fails on the merits.

Even assuming Debtors' factual assertions have some truth to them, Debtors have failed to show how Ind. Professional Conduct Rule 1.10(b)(2) applies to these facts. The

Rule, which is used to evaluate whether a law firm can represent a party adverse to a former client in a matter, permits the representation unless two prongs are both met. First, the two matters at issue must be substantially related. *See* Ind. Prof. Conduct R. 1.10(b)(1). Second, a lawyer remaining in the firm must have confidential information "that is material to the matter." Ind. Prof. Conduct R. 1.10(b)(2).  Thus, even the second prong has two requirements in its own right: the remaining attorney(s) must have confidential information and that information must be material to the underlying matter. *Id*.

Debtors posit that Mr. Towner and Ms. Foust Hunneshagen's work with "affiliated" entities in other matters somehow meets these two requirements. But Debtors fail to allege that either attorney would have any confidential information related to this matter, outside of knowledge of other entities with which Mr. Matthews is affiliated.

Ms. Foust Hunneshagen meets neither requirement found in Rule 10(b)(2). She performed no work for Matthews LLC, had no interaction with Mr. Matthews, and worked for 2.6 hours on drafting a lease agreement for a different entity and different property ten years ago. She clearly has no confidential information, much less any that is material to this case or the adversary proceeding.

As for Mr. Towner, while he performed work for Ivy Quad and allegedly 701 Niles, there is no allegation that he represented or served as an attorney for any of the four entities named in the Adversary Proceeding, including Debtors. Thus, Debtors fail

to show how Mr. Towner has or would have any confidential information material to this matter.

The only allegations of any counsel having confidential information emanate from Debtors' "affiliates" argument, which they never explain or provide any legal support for, and the allegation that questions to Velvet Canada were the result of knowledge of confidential information.

Because the questions put to Ms. Canada have already been explained, this leaves the "affiliates" allegation. Of course, Debtors fail to show how knowledge about one entity in an entirely unrelated case would somehow convey material confidential information about other entities operated by Mr. Matthews. At best, this appears to be an assertion that knowledge as to one entity's operation would somehow shed light on another's. The Indiana Rules of Professional Conduct already address this, though, and permit representation in these circumstances. As the Seventh Circuit pointed out in *Watkins*, "in cases involving an organizational client, 'general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation.'" 869 F.3d at 522 (quoting Comment 3, Ind. Prof. Conduct R. 1.9). Like Rule 1.10(b), the attorney's knowledge of confidential information has to be material to the matter itself, not generalized knowledge about a client's operation.

Because Debtors fail to show how Mr. Towner or Ms. Foust Hunneshagen could know confidential information about entities they did not represent, the argument fails. Accordingly, the motion to disqualify must be denied.

## IV. CONCLUSION

WHEREFORE Plaintiff, the Redevelopment Commission of the City of South Bend respectfully requests that the Court deny the Motion to Disqualify and grant all other just and proper relief.

Dated: May 19, 2026

Respectfully Submitted,

*/s/ Matthew J. Anderson*
Katherine E. Iskin (33679-71)
Matthew J. Anderson (27511-71)
**MAY OBERFELL LORBER LLP**
4100 Edison Lakes Parkway, Suite 100
Mishawaka, IN 46545
Telephone: 574-243-4100
E-mail: kiskin@maylorber.com
manderson@maylorber.com

## CERTIFICATE OF SERVICE

I certify that on May 19, 2026, a copy of the foregoing was filed electronically with the Clerk using the CM/ECF System, which sent notification of such filing to all counsel of record.

*/s/ Matthew J. Anderson*
Matthew J. Anderson (27511-71)