UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MATTHEWS 350 E LASALLE LLC | ) | Case No. 26-30288 |
| d/b/a 300 E LASALLE d/b/a 300 EAST LASALLE | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| IN RE: | ) | |
| | ) | |
| COMMERCE CENTER DEVELOPMENT, LLC, | ) | |
| | ) | Case No. 26-30289 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

### DEBTORS' COMBINED CHAPTER 11 DISCLOSURE STATEMENT

This Combined Chapter 11 Disclosure Statement (the "**Disclosure Statement**") is being filed in the above-captioned voluntary bankruptcy cases filed by Matthews 350 E Lasalle LLC d/b/a 300 E Lasalle d/b/a 300 East Lasalle ("**Matthews**"), and Commerce Center Development, LLC ("**CCD**"; together, the "**Debtors**"). Debtors' cases were filed under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Northern District of Indiana (the "**Bankruptcy Court**") on March 10, 2026 (the "**Petition Date**"). Debtors have been retained as Debtors-in-Possession under the provisions of § 1101 of the Bankruptcy Code.

Debtors have filed *Debtors' Combined Chapter 11 Plan of Reorganization* (the "**Plan**"). A copy of the Plan is attached to this Disclosure Statement as **Exhibit 1**.

### GENERAL INFORMATION REGARDING CASE AND FORMULATION OF PLAN

On the Petition Date, each of the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code, and each were assigned individual case numbers as follows:

      i.    Matthews: Case No. 26-30288 ("**Matthews Bankruptcy Case**");

     ii.    CCD: Case No. 26-30289 ("**CCD Bankruptcy Case**");

On March 19, 2026, the Bankruptcy Court entered an *Order for Joint*

*Administration*, wherein the Bankruptcy Court ordered Debtors' bankruptcy cases be jointly administered under Matthews Bankruptcy Case number (hereinafter, unless otherwise indicated, all references to the "**Bankruptcy Case**" shall refer to the jointly administered bankruptcy cases of Debtors under the Matthews Bankruptcy Case). Thereafter, unless expressly required to be filed in an individual member case by the Bankruptcy Court's Local Rules, all matters in the Bankruptcy Case were to be filed in the jointly administered Bankruptcy Case (a/k/a the Matthews Bankruptcy Case).

Notwithstanding Debtors' bankruptcy cases being jointly administered, pursuant to the Bankruptcy Court's Local Rules, Creditors were still required to file their Proofs of Claim in the individual member cases for which their Claim relates. Additionally, other matters proscribed by the Bankruptcy Court's Local Rules are required to be filed in the individual member cases for which they relate.

Accordingly, (i) any reference herein to a "Filing No.", without a case designation, shall refer to filings in the jointly administered Bankruptcy Case, (ii) references to filings in the member cases, will be specifically identified as "[member case] Filing No.", and (iii) references to all Proofs of Claim will be identified as "[member case] Claim No.".

Due to the Joint Administration, some of the same claims against one Debtor were filed in both matters. This does not mean that the Claimant's claim is double the amount stated on the Proof of Claim.  For example, if Company X filed a Proof of Claim for $1,000.00 in the CCD Bankruptcy Case based on Contract Y, and Company X also filed a Proof of Claim for $1,000.00 in the Matthews Bankruptcy Case based on Contract Y, Company X does not have a total claim amount of $2,000.00, it only has a total claim amount of $1,000.00 which may be enforced against CCD and/or Matthews.

Therefore, herein Claimant's Claims will be accurately identified for all member cases in which they were filed, but duplicate Claims regarding the same dollar amount filed in more than one member case will not be multiplied by the number of member cases in which they were filed.

### PURPOSE OF THIS DOCUMENT

**Your rights may be affected. You should read this Disclosure Statement and the Plan carefully. You may wish to consult an attorney about your rights and your**

**treatment under the Plan.**

In accordance with § 1125 of the Bankruptcy Code and Rule 3017(d) of the Federal Rules of Bankruptcy Procedure, Debtors transmit this Disclosure Statement to all of its creditors, shareholders, and other parties in interest in order to disclose information deemed by Debtors to be material, important, and necessary for such parties to arrive at a reasonably informed decision in exercising their rights to vote for or against the Plan. This Disclosure Statement must be approved, after notice and a hearing, by the Bankruptcy Court as containing adequate information.

This Disclosure Statement describes:

  a. Debtors and significant events during the Bankruptcy Case;

  b. How the Plan proposes to treat Claims[1] or equity interest of the type you hold (i.e. what you will receive on your Claims or equity interest if the Plan is confirmed);

  c. Who can vote on or object to the Plan;

  d. What factors the Bankruptcy Court will consider when deciding to confirm the Plan;

  e. Why Debtors believe the Plan is feasible and how treatment of your Claim under the Plan compares to what you would receive on your Claim in a Chapter 7 liquidation; and

  f. The effect of confirmation of the Plan.

Debtors urge you to carefully read the contents of both this Disclosure Statement and the Plan before deciding to accept or reject the Plan. The Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

Finally, information contained in this Disclosure Statement has been obtained from Debtors' records, unless specifically stated to be from other sources. Debtors have attempted to furnish accurate information but are unable to represent or warrant that all of the information contained herein is totally free of any inaccuracies. Nevertheless, Debtors believe that the contents of this Disclosure Statement are accurate and complete. No representations other than those set forth herein concerning Debtors or their property

---

[1] All capitalized terms used but not otherwise defined herein shall have the meaning assigned to them in the Plan.

are authorized by Debtors or the Bankruptcy Court.

## DEADLINE FOR VOTING AND OBJECTING; DATE OF PLAN CONFIRMATION HEARING

The Bankruptcy Court has not yet confirmed the Plan described in this Disclosure Statement. A separate order will be entered setting:

a.  The time and place of the hearing to approve this Disclosure Statement and to confirm the Plan;

b.  The deadline for voting to accept or reject the Plan; and

c.  The deadlines for objection to the adequacy of the Disclosure Statement and confirmation of the Plan.

It is not necessary for creditors or shareholders to appear before the Bankruptcy Court to vote on the Plan. Only the desires of those creditors who actually vote on the Plan will be taken into consideration by the Bankruptcy Court in determining whether or not the Plan will be approved and therefore confirmed by the Bankruptcy Court. The terms of the Plan will be binding upon **all** creditors, whether or not they have cast a ballot.

If you want additional information about the Plan or the voting procedure, you should contact counsel for the Debtors using the contact information located at the end of this Disclosure Statement.

## DISCLAIMER

**The Bankruptcy Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Bankruptcy Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Bankruptcy Court or a recommendation that it be accepted.**

## HISTORY

Debtors are affiliates of one another. CCD is the owner of, among other parcels, the following parcels of real property located in St. Joseph County, Indiana, which is subject to a mortgage by KeyBank National Association and more particularly described as follows:

Parcel I: Lot Numbered Three (3) in Commerce Center Minor Subdivision, as per plat thereof recorded December 30, 2019 as Instrument Number 2019-34703 in the Office of the Recorder of Saint Joseph County, Indiana.

Parcel II: Non-exclusive Easement for access as set forth in an instrument by and between Commerce Center Development, LLC and Matthews 350 E LaSalle LLC dated April 2, 2020 and recorded April 29, 2020 in Instrument Number 2020-10418 in the Office of the Recorder of Saint Joseph County, Indiana.

(the "**Real Estate**").

Matthews has a leasehold interest in the Real Estate pursuant to a lease with CCD dated October 30, 2019 (the "**Ground Lease**").

The Real Estate is a 144-unit multi-family mid/high rise property located at 300 East Lasalle Avenue in South Bend, Indiana, with commercial and residential tenants. The property consists of a single, 10-story apartment building. Improvements thereon were constructed in 2022 and are situated on a 0.79-acre site. The improved residential units were 84.7% leased as of March 9, 2026.  The Real Estate also has 14,507 square feet of street-level retail space and 14,323 square feet of fourth-floor office space, and 202 structured parking spaces on multiple levels.

Prior to the Petition Date, Debtors each executed and delivered certain loan documents to KeyBank National Association ("**KeyBank**"), under the terms of which KeyBank made a loan to Matthews in the original principal sum of $33,000,000.00.

To secure the obligations to KeyBank, on June 3, 2022, Matthews executed and delivered to KeyBank a Mortgage, Assignment of Lease and Rents, Assignment of Contracts, Security Agreement and Fixture Filing (the "**Mortgage**"), which was recorded on June 7, 2022 as Instrument Number 2022-10416 in the Office of the Recorder of St. Joseph County, Indiana.

The Mortgage also includes a Security Agreement under the terms of which Matthews granted KeyBank a lien against all of Matthews's personal property as more fully set forth in the Mortgage.

To perfect its security interest in the personal property, KeyBank recorded a UCC Financing Statement with the Office of the Indiana Secretary of State on June 6, 2022 as Instrument Number 202206062942334.

To further secure the obligations to KeyBank, on June 3, 2022, CCD executed and delivered to KeyBank a Joinder and Subordination ("**Joinder and Subordination**") for the purpose of subjecting and subordinating CCD's fee title in the Real Estate to the Mortgage.

Notwithstanding multiple efforts to refinance the obligations owed to KeyBank, Debtors were unable to do so in large part due to a lawsuit filed by the Redevelopment Commission of the City of South Bend, Indiana that was pending in St. Joseph County under Cause No. 71D07-2301-PL-00020 (the "**City Suit**") prior to the Petition Date, which Debtors removed to the Bankruptcy Court and is currently pending as Adversary Proceeding No. 26-03011.   Debtors filed the Bankruptcy Case to reorganize their obligations and to both satisfy the obligations owed to KeyBank and certain investors of Debtors.

## FINANCIAL INFORMATION

Plan Projections.  Attached as Attachment A to the Plan is a cash flow projection reflecting the financial forecast for Debtors' continuing operations demonstrating that the payments required under the Plan are feasible.

Liquidation Analysis.  Attached as Attachment B to the Plan is a liquidation analysis reflecting the result if Debtors ceased operations and surrendered or sold their Assets and which reflect Debtors' best estimate of the value of their Assets and amounts owed to Creditors. In a liquidation scenario, there would be no funds remaining to pay any Unsecured Creditors.

## THE PLAN OF REORGANIZATION

As required by the Bankruptcy Code, the Plan places Claims in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

**Claims Bar Date.**  Pursuant to the *Notice of Chapter 11 Bankruptcy Case* [Filing No. 19] (the "**Notice of Bankruptcy**") entered by the Bankruptcy Court on March 11, 2026, to the extent that Creditors (i) were not scheduled, (ii) were scheduled and designated as disputed, contingent, or unliquidated, or (iii) assert they are owed a different amount, Creditors were required to file a Proof of Claim by the applicable bar date for their Claim. The general claims bar date was June 29, 2026. The governmental unit claims bar date is September 8, 2026. Only timely filed Claims are being treated by the Plan. Any late filed claim shall be deemed disallowed and such holder shall not receive any distribution, unless otherwise ordered by the Bankruptcy Court in this matter.

**Disputed Claims.**  No distribution will be made to the holder of a Disputed Claim unless such Claim is allowed by a final non-appealable order. Debtors shall have the power and authority to settle and compromise a Disputed Claim with Bankruptcy Court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**Claims Not Being Treated in the Plan.**  Claims that were filed but that are not being treated in the Plan, and the reason therefore, are as follows:

Redevelopment Commission of the City of South Bend, Indiana ("**Redevelopment Commission**") [CCD Claim No. 3 and Matthews Claim No. 5]: Redevelopment Commission filed a Proof of Claim in both Bankruptcy Cases for an alleged unsecured claim in the amount of $10,879,877.00 (the "**Redevelopment Commission Claim**"). Debtors have filed an objection to the Redevelopment Commission Claim seeking to have the Redevelopment Commission Claim disallowed in its entirety.

In the event the Redevelopment Commission Claim, or any portion thereof, becomes an Allowed Unsecured Claim, such Allowed Unsecured Claim of the Redevelopment Commission will be added to, and treated as set forth in, Class 7 (Unsecured Claims) and the Redevelopment Commission will be entitled to vote on the Plan pursuant to such Allowed Unsecured Claim as Class 7 Claims are impaired.

**Classes of Claims.**  The Plan divides Claims against Debtors into nine (9) classes. A description of each class and its treatment is as follows:

### *Class 1: Administrative Expenses*

Class 1 consists of Professionals, whose retention was previously approved by the Bankruptcy Court, and the United States Trustee's Office with respect to quarterly fees

that have accrued and remain unpaid at the time of confirmation and/or have yet to accrue.

Unless otherwise stated in the Plan, Administrative Expenses shall be paid in full within thirty (30) days of being incurred or Bankruptcy Court approval, whichever is later.

Payment to Professionals for compensation and reimbursement of expenses will be made in accordance with the procedures provided for in the Bankruptcy Code and in any order of the Court relating to the payment of interim and final compensation and expenses. The Bankruptcy Court will review and determine all requests from Professionals for compensation and reimbursement of expenses.

**All other entities seeking payment of an Administrative Expense shall file their request for allowance and/or payment <u>no later than thirty (30) days after the date the Bankruptcy Court enters the Confirmation Order</u>. Only those parties who timely file a request for an Administrative Expense shall be eligible to be paid under the Plan. Any request for an Administrative Expense not timely filed, unless otherwise authorized by the Bankruptcy Court, shall be immediately disallowed and expunged.** Upon the timely filing of a request for an Administrative Expense, Debtors shall review the request and the supporting documents. If Debtors disagree with any Administrative Expense sought, then Debtors shall file an appropriate objection. If no objection is filed, then the Administrative Expense shall be allowed and treated as an Administrative Expense under the Plan. Such allowed Administrative Expense shall not accrue interest and shall be paid within thirty (30) days of the date of Confirmation or the allowance of the Administrative Expense, whichever is later.

<u>*Class 2: Priority Unsecured Claims*</u>

Class 2 currently does not include any Claims and is designated solely as a placeholder in the event any Priority Unsecured Claim is filed and becomes an Allowed Priority Unsecured Claim.

Priority Unsecured Claims are unsecured claims which are entitled to priority treatment pursuant to § 507 of the Bankruptcy Code. Unless the holder of a Priority Unsecured Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding five (5) years.

In the event any Allowed Priority Unsecured Claim is filed, such Allowed Priority

8

Unsecured Claim shall be paid by Debtors in full over the life of the Plan in equal monthly installments commencing on the first day of the month following the Effective Date of the Plan and continuing on the first day of every month thereafter during the life of the Plan.

In the event there are no Allowed Priority Unsecured Claims, there will be no distributions made under this Class and this Class will effectively cease to exist for purposes of the Plan.

*Class 3: Secured Claim of KeyBank*

Class 3 consists of the Secured Claim of KeyBank.

KeyBank has a security interest in the Real Estate and Matthews' personal property. The Mortgage and the Joinder and Subordination secure the obligations of KeyBank.

**Value of KeyBank's Secured Claim.**  KeyBank filed Proofs of Claim in each of the Bankruptcy Cases [CCD Claim No. 4 and Matthews Claim No. 4], asserting a Secured Claim in the amount of $30,132,468.79 ("**KeyBank's Proof of Claim Amount**"). Pursuant to multiple interim Orders entered in the Bankruptcy Case, KeyBank received monthly payments throughout the pendency of the Bankruptcy Case, as adequate protection, which shall be applied towards KeyBank's Proof of Claim Amount. KeyBank shall have an Allowed Secured Claim, based on the value of the Assets securing its claim, in the amount of $30,008,048.00 ("**KeyBank Allowed Secured Claim Amount**").

**Payments to KeyBank Under the Plan.** KeyBank shall be paid the KeyBank Allowed Secured Claim Amount of $30,008,048.00 under the Plan as follows:

> **Term:** 3 Years from the Effective Date of an order confirming Debtors Joint Chapter 11 Plan.
>
> **Payment Frequency:**  Monthly payments of principal and interest
>
> **Interest Rate:**  5.0%
>
> **Amortization:**  30 Years
>
> **Estimated Monthly Payments:** $161,089.69

Additional terms and obligations regarding the payments to KeyBank are set forth in the Plan.

*Class 4: Secured Claim of Sheins*

Class 4 consists of the Secured Claim of Barry S. Shien and Cari Groman Shein ("**Sheins**").

**Value of Sheins Secured Claim.**   Sheins filed a Proof of Claim in the CCD Bankruptcy [CCD Claim No. 1] asserting a Secured Claim in the amount of $838,268.49.

Sheins shall have an Allowed Secured Claim, based on the value of the Assets securing its Claim, in the amount of $838,268.49 ("**Sheins Allowed Secured Claim Amount**").

**Payments to Sheins Under the Plan.**   Sheins shall be paid the Sheins Allowed Secured Claim Amount of $838,268.49 under the Plan.   As set forth in the Proof of Claim filed by the Sheins [CCD Claim No. 1], the payments required under Secured Promissory Note were not current as of the Petition Date in the amount of $38,268.49 (the "**Sheins Prepetition Past Due Payments**").   Additionally, Debtors have not been making post-petition payments (the "**Sheins Post-Petition Past Due Payments**"; together with the Sheins Prepetition Past Due Payments, the "**Sheins Past Due Payments**").

The Sheins Past Due Payments and all payments coming due prior to the Effective Date of the Plan shall be due as a final balloon payment at the maturity date of the Secured Promissory Note.

All other terms of the Secured Promissory Note and Mortgage, Assignment of Rents, Security Agreement and Fixture Filing and all documents executed and delivered in connection therewith shall remain in full force and effect.

*Class 5: Secured Claim of Sheins Trust*

Class 5 consists of the Secured Claim of the Barry Shein Revocable Trust ("**Shein Trust**").

**Value of Shein Trust Secured Claim.**   Shein Trust filed a Proof of Claim in the CCD Bankruptcy [CCD Claim No. 2] asserting a Secured Claim in the amount of $338,884.20.

Shein Trust shall have an Allowed Secured Claim, based on the value of the Assets securing its Claim, in the amount of $338,884.20 ("**Shein Trust Allowed Secured Claim Amount**").

**Payments to Shein Trust Under the Plan.**   Shein Trust shall be paid the Shein

10

Trust Allowed Secured Claim Amount of $338,884.20 under the Plan.  As set forth in the Proof of Claim filed by Shein Trust [CCD Claim No. 2], the payments required under Demand Promissory Note were not current as of the Petition Date in the amount of $36,827.00 (the "**Shein Trust Prepetition Past Due Payments**").  Additionally, Debtors have not been making post-petition payments (the "**Shein Trust Post-Petition Past Due Payments**"; together with the Shein Trust Prepetition Past Due Payments, the "**Shein Trust Past Due Payments**").

The Shein Trust Past Due Payments and all payments coming due prior to the Effective Date of the Plan shall be due as a final balloon payment at the maturity date of the Demand Promissory Note.

All other terms of the Demand Promissory Note and Mortgage, Assignment of Rents, Security Agreement and Fixture Filing and all documents executed and delivered in connection therewith shall remain in full force and effect.

### *Class 6: Secured Claim of FORUM*

Class 6 consists of the Secured Claim of FORUM Credit Union ("**FORUM**").

**Value of FORUM Secured Claim.**  FORUM filed a Proof of Claim in each of the Bankruptcy Cases [CCD Claim No. 7 and Matthews Claim No. 5] asserting a Secured Claim in the amount of $4,561,402.16.

FORUM shall have an Allowed Secured Claim, based on the value of the Assets securing its Claim, in the amount of $4,561,402.16 ("**FORUM Allowed Secured Claim Amount**").

**Payments to FORUM Under the Plan.**  FORUM shall be paid the FORUM Allowed Secured Claim Amount of $4,561,402.16 under the Plan pursuant to the terms of the Amended and Restated Promissory Note dated April 8, 2021 and the Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing dated April 2, 2020 and all documents executed and delivered in connection therewith.

### *Class 7: General Unsecured Claims*

Class 7 consists of the following Unsecured Claims:

| Basis for Claim | Claimant | Unsecured Claim Amount | Pro-Rata Share |
|---|---|---|---|
| CCD Claim No. 3 and Matthews Claim No. 5 | Redevelopment Commission of the City of South Bend, Indiana | EXCLUDED[2] | N/A |
| Matthews Claim No. 1 | Chikol Equities, LLC | $34,425.10 | 13.22% |
| Matthews Claim No. 2 | Winthrop & Weinstine, P.A. | $7,469.00 | 2.87% |
| Matthews Claims No. 3 | F.E. Moran, Inc. Fire Protection | $690.00 | 0.27% |
| Matthews Claim No. 6 | Schindler Elevator Corporation | $6,532.45 | 2.51% |
| KeyBank Unsecured | KeyBank National Association | $124,420.79 | 47.79% |
| Matthews Schedules 3.1 | A/Ccelerated Services, LLC | $5,765.19 | 2.21% |
| Matthews Schedules 3.2 | Aladdin's Inc | $390.00 | 0.15% |
| Matthews Schedules 3.4 | Conley Brothers Painting LLC | $7,280.00 | 2.80% |
| Matthews Schedules 3.5 | Cressy Commercial Real Estate | $6,201.64 | 2.38% |
| Matthews Schedules 3.8 | Greater New York Mutual | $10.00 | 0.00% |
| Matthews Schedules 3.9 | LaPlace Plumbing | $660.00 | 0.25% |
| Matthews Schedules 3.10 | Lebbin Law Office | $1,460.00 | 0.56% |
| Matthews Schedules 3.11 | Lisa Williams | $7,203.90 | 2.77% |
| Matthews Schedules 3.12 | Luke Uttley | $200.00 | 0.08% |
| Matthews Schedules 3.13 | Mary Hipp | $643.78 | 0.25% |
| Matthews Schedules 3.14 | Paul's Generators Sales & Service | $946.26 | 0.36% |
| Matthews Schedules 3.16 | Roy Conrad | $966.32 | 0.37% |
| Matthews Schedules 3.17 | Schindler Elevator Corporation | $878.57 | 0.34% |
| Matthews Schedules 3.18 | Steuerwald, Witham & Youngs | $6,547.03 | 2.51% |
| Matthews Schedules 3.19 | The Shermin Williams Co. | $3,275.06 | 1.26% |
| Matthews Schedules 3.20 | Tuohy Bailey & Moore | $2,345.00 | 0.90% |
| Matthews Schedules 3.21 | Winthrop & Weinstine, PA | $7,469.00 | 2.87% |
| Matthews Schedules 3.22 | Wipfli LLP | $34,568.72 | 13.28% |
| | Total: | $260,347.81 | 100.00% |

The Claimants holding the above Unsecured Claims shall receive a pro-rata share from Debtors' Disposable Income over the three (3) year term of the Plan, an annual payment of **$25,000.00**, beginning on the first day of the twelfth (12th) month following the Effective Date and annually thereafter (the "**Annual Payment**"), at which time the remaining amount of their Claim shall be discharged. In addition to the Annual Payment, Claimants holding Unsecured Claims shall also receive the net proceeds, after payment of attorneys' fees and costs, of any recovery actions pursued under §§ 547 through 550

---

[2] As set forth below and in Article 4 of the Plan, the claim of the Redevelopment Commisssion of the City of South Bend, Indiana is not being treated because Debtors have filed an objection to the Redevelopment Commission Claim seeking to have the Redevelopment Commission Claim disallowed in its entirety.

of the Bankruptcy Code.

Each Annual Payment shall be funded by the Shareholders which shall provide the new value to Debtors in exchange for retaining their equity interests in Debtors which are set forth in the List of Equity Security Holders filed on the Petition Date.  [*See* Matthews Bankruptcy Case Filing No. 1, p. 8].

<u>*Class 8: Subordinated Unsecured Claim*</u>

Class 8 consists of the Unsecured Claim of DMTM Inc. ("**DMTM**").

In Matthews' Schedules, DMTM is scheduled as holding an unsecured claim in the amount of $2,521,905.86 (the "**DMTM Unsecured Claim**"). DMTM did not file a Proof of Claim. The DMTM Unsecured Claim shall be an Allowed Unsecured Claim.

As indicated in Matthews' Schedules, DMTM holds a 6.9749% interest in Matthews. Therefore, the DMTM Unsecured Claim is not substantially similar to the other Unsecured Claims contained in the Class 7 General Unsecured Claims and must be separately classified pursuant to § 1122 of the Bankruptcy Code. Additionally, if the DMTM Unsecured Claim were not separately classified in the Plan, the DMTM Unsecured Claim would significantly dilute the distribution to the other Unsecured Claimants due to the size of the DMTM Unsecured Claim and the pro rata nature of distribution to Unsecured Claims.

Furthermore, due to DMTM's ownership stake in Matthews, the DMTM Unsecured Claim is subject to equitable subordination in relation to the Class 7 General Unsecured Claims pursuant to § 510(c) of the Bankruptcy Code.

Accordingly, DMTM Unsecured Claim's, which constitutes the entirety of Class 8, shall have a subordinate priority to the Class 7 General Unsecured Claims and shall not receive any distributions under the Plan. DMTM consents to this treatment of the DMTM Unsecured Claim.

<u>*Class 9: Equity Security Holders*</u>

Class 9 consists of the Equity Ownership Interests of Shareholders. The Equity Ownership of the Shareholders shall be maintained based on their contribution of new value to fund each Annual Payment to the unsecured creditors.  The Shareholders shall

be entitled to distributions based on their equity interest after the Effective Date.

## IMPAIRMENT AND VOTING

*Class 1: Administrative Expenses.*  Class 1 is unimpaired and not entitled to vote to accept or reject the Plan.

*Class 2: Priority Unsecured Claims.*  Class 2, to the extent any Allowed Priority Unsecured Claims arise, is unimpaired and not entitled to vote to accept or reject the Plan.

*Class 3: Secured Claim of KeyBank.*  Class 3 is impaired by the Plan. The Class 3 Claimant, KeyBank, is entitled to vote to accept or reject the Plan.

*Class 4: Secured Claim of Sheins.*  Class 4 is impaired by the Plan. The Class 4 Claimant, the Sheins, are entitled to vote to accept or reject the Plan.

*Class 5: Secured Claim of Shein Trust.*  Class 5 is impaired by the Plan. The Class 5 Claimant, Shein Trust, is entitled to vote to accept or reject the Plan.

*Class 6: Secured Claim of FORUM.*  Class 6 is unimpaired and not entitled to vote to accept or reject the Plan.

*Class 7: General Unsecured Claims.*  Class 7 is impaired by the Plan. The Class 7 Claimants that are not excluded are entitled to vote to accept or reject the Plan.

*Class 8: Subordinated Unsecured Claim.*  Class 8 is impaired by the Plan. The Class 8 Claimant, DMTM, is entitled to vote to accept or reject the Plan, provided, however, DMTM's vote pursuant to the DMTM Unsecured Claim shall not be considered for purposes of determining confirmation of the Plan under § 1129(a)(10) of the Bankruptcy Code.

*Class 9: Equity Security Interests.*  Class 9 is impaired by the Plan. The Class 9 Equity Ownership Interests holders are entitled to vote to accept or reject the Plan.

## CLAIMS OBJECTIONS

Except to the extent that a Claim is already allowed pursuant to a final order, Debtors reserve the right to object to Claims. Therefore, even if your Claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your Claim is later upheld.

## TREATMENT OF EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES

**East Race Market, LLC ("Market").** Matthews entered into a certain Lease with Market, on or about October 29, 2020, to lease approximately 15,000 square feet of space in the Real Estate (the "**Market Lease**"). Debtors filed a motion to reject the Market Lease [Filing No. 8] which was granted on June 3, 2026 [Filing No. 111]. Market is entitled to an Unsecured Claim for rejection damages. However, because Market has not been paying rent as required under the Lease, Market's claim is substantially offset, if not entirely exhausted, by the amount of rent it has failed to pay. As a result, Market is not treated as an unsecured creditor under the Plan.

**All Other Executory Contracts and/or Unexpired Leases.**

Debtors filed their First Omnibus Motion to Assume Unexpired Leases [Filing No. 10] regarding Residential Leases on the Real Estate which was granted on June 3, 2026 [Filing No. 113].

Debtors also filed a Motion to Assume Unexpired Ground Lease Between Debtors [Filing No. 81] and a Motion to Assume Unexpired Ground Lease with Commerce Center Office Building LLC [Filing No. 83], both of which have not yet been granted.

Debtors are unaware of any other executory contracts or unexpired leases, but if any exist, they shall be deemed rejected upon the entry of an Order confirming the Plan.

## MEANS OF EFFECTUATING THE PLAN

The source of funds used in the Plan for payments to Creditors shall be the net monthly income of Debtors for three (3) years resulting from continued, normal business operations of Debtors. Attached to the Plan as Attachment A are projections through December 31, 2029, which reflect Debtors' ability to maintain operations and make the payments required under the Plan.

## FEASIBILITY OF THE PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of Debtors or any successor to Debtors, unless such liquidation or reorganization is proposed in the Plan.

**Ability to Initially Fund Plan.**  Debtors believe that Debtors will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date.

**Ability to Make Future Plan Payments and Operate Without Further Reorganization.**  Debtors have provided projected financial information. Those projections are attached to the Plan as Attachment A.  Debtors' operations prior to the Petition Date were under the management of David Matthews and that has continued after the Petition Date as debtors-in-possession.  Following the confirmation of the Plan, David Matthews will continue to manage Debtors' operations which will provide consistency and permit Debtors to continue to operate and fund future plan payments.

*You should consult with your accountant or other financial advisor if you have any questions pertaining to the projections.*

## TAX CONSEQUENCES OF THE PLAN

**Creditors concerned with how the Plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.**

## REQUIREMENTS FOR PLAN CONFIRMATION

In order for the Plan to be confirmed, it must meet the requirements listed in § 1129 of the Bankruptcy Code, which requirements include but are not limited to the following:

a.  The Plan must be proposed in good faith;

b.  If a Class of Claims is impaired under the Plan, at least one impaired Class of Claims must accept the Plan, without counting votes of Insiders;

16

c. The Plan must distribute to each Creditor at least as much as the Creditor would receive in a Chapter 7 liquidation case, unless the Creditor votes to accept the Plan; and

d. The Plan must be feasible.

These requirements are **not** the only requirements listed in § 1129 of the Bankruptcy Code, and they are not the only requirements for confirmation of the Plan. However, Debtors believe the Plan meets all requirements of § 1129 of the Bankruptcy Code such that the Plan should be confirmed.

## VOTES NEEDED TO CONFIRM A PLAN

If impaired Classes exist, the Bankruptcy Court cannot confirm a Plan unless:

a. All impaired Classes have voted to accept the Plan; or

b. At least one impaired Class of Creditors has accepted the Plan, without counting the votes of any Insiders within that Class, and the Plan is eligible to be confirmed by "cram down" of the non-accepting Classes.

### A. Votes Necessary for a Class to Accept the Plan.

A Class of Claims accepts the Plan if both of the following occur:

a. The holders of more than 1/2 of the Allowed Claims in the Class, who vote, cast their votes to accept the Plan; and

b. The holders of at least 2/3 in dollar amount of the Allowed Claims in the Class, who vote, cast their votes to accept the Plan.

### B. Treatment of Non-Accepting Class of Secured Claims, Unsecured Claims, and Interest.

Even if one or more impaired Classes reject the Plan, the Bankruptcy Court may nonetheless confirm the Plan upon the request of Debtors if the non-accepting Classes are treated in the manner prescribed by § 1129(b) of the Bankruptcy Code. A plan that binds non-accepting Classes is commonly referred to as a cram down plan. The Bankruptcy Code allows the Plan to bind non-accepting Classes of Claims if it meets all the requirements for a consensual confirmation except the voting requirements of § 1129(a)(8) of the Bankruptcy Code, does not discriminate unfairly, and is fair and equitable toward each impaired Class that has not voted to accept the Plan.

17

Debtors will request the Bankruptcy Court confirm the Plan if it is not accepted by all Classes of Creditors.

**You should consult your own attorney if a cram down confirmation will affect your Claim, as the variations on this general rule are numerous and complex.**

## FAILURE OF CONFIRMATION

If Debtors' Plan is not confirmed by the Bankruptcy Court, Debtors will either dismiss this case or convert the case to a straight liquidation bankruptcy under Chapter 7 of the Bankruptcy Code. Under straight Chapter 7 liquidation, the property of Debtors would be sold by a Trustee appointed by the Bankruptcy Court. The proceeds would first be used to pay the Administrative Expenses, which are entitled to priority under the Bankruptcy Code. To the extent property is subject to Claims of Secured Creditors, property would first be used to satisfy the secured Claims of Secured Creditors. In addition, any Claims entitled to Priority, would be paid prior to any distribution to Unsecured Creditors.

Debtors believe that if Debtors were forced to liquidate under Chapter 7 of the Bankruptcy Code, the Unsecured Creditors would receive significantly less, if anything at all, than they would receive under the Plan, due to increased Administrative Expense costs in a Chapter 7, including the hypothetical Chapter 7 Trustee's statutory compensation. Therefore, Debtors believe the proposed Plan is in the best interest of all Creditors and should be approved.

## SUMMARY

Debtors believe that the Plan affords all Creditors, including the Unsecured Creditors, the best opportunity to share in the estate and maximize the return for their Claims. Debtors urge you to vote to accept the Plan.

Respectfully submitted,

**Matthews 350 E Lasalle LLC d/b/a**
**300 Lasalle d/b/a 300 East Lasalle**

David Matthews
Manager

**Commerce Center Development, LLC**

David Matthews
Sole Member

*/s/ Weston E. Overturf*
Weston E. Overturf, Attorney No. 27281-49
Anthony T. Carreri, Attorney No. 36107-49
KROGER, GARDIS & REGAS, L.L.P.
111 Monument Circle, Suite 900
Indianapolis, Indiana 46204
(317) 777-7443
WOverturf@kgrlaw.com

*Attorneys for Debtors*