# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MATTHEWS 350 E LASALLE LLC | ) | Case No. 26-30288 |
| d/b/a 300 E LASALLE d/b/a 300 EAST LASALLE | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| IN RE: | ) | |
| | ) | |
| COMMERCE CENTER DEVELOPMENT, LLC, | ) | |
| | ) | Case No. 26-30289 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

## DEBTORS' COMBINED CHAPTER 11 PLAN OF REORGANIZATION
### July 28, 2026

Debtors, Matthews 350 E Lasalle LLC d/b/a 300 E Lasalle d/b/a 300 East Lasalle ("**Matthews**"), and Commerce Center Development, LLC ("**CCD**"; together, the "**Debtors**"), as debtors and debtors-in-possession, hereby submit *Debtors' Combined Chapter 11 Plan of Reorganization* (the "**Plan**"), pursuant to Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

**Counsel for Debtors:**
Weston E. Overturf, Attorney No. 27281-49
Anthony T. Carreri, Attorney No. 36107-49
KROGER, GARDIS & REGAS, L.L.P.
111 Monument Circle, Suite 900
Indianapolis, Indiana 46204
(317) 777-7443
WOverturf@kgrlaw.com

# ARTICLE 1
## INTRODUCTION

This Plan of Reorganization is presented to you to inform you of the proposed Plan for restructuring Debtors' debt and to seek your vote to accept the Plan, if applicable. You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document. **Your rights may be affected by this Plan. You should consider discussing this document with an attorney.**

Debtors' Plan must describe how Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code.

As required by the Bankruptcy Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable, or contractual rights to which the Claimants are otherwise entitled.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

The length of the Plan is three (3) years.


# ARTICLE 2
## GENERAL INFORMATION REGARDING CASE AND FORMULATION OF PLAN

On March 10, 2026 (the "**Petition Date**"), each of the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code, and each were assigned individual case numbers as follows:

  i.    Matthews: Case No. 26-30288 ("**Matthews Bankruptcy Case**");

2

ii.    CCD: Case No. 26-30289 ("**CCD Bankruptcy Case**");

On March 19, 2026, the Bankruptcy Court entered an *Order for Joint Administration*, wherein the Bankruptcy Court ordered Debtors' bankruptcy cases be jointly administered under Matthews Bankruptcy Case number (hereinafter, unless otherwise indicated, all references to the "**Bankruptcy Case**" shall refer to the jointly administered bankruptcy cases of Debtors under the Matthews Bankruptcy Case). Thereafter, unless expressly required to be filed in an individual member case by the Bankruptcy Court's Local Rules, all matters in the Bankruptcy Case were to be filed in the jointly administered Bankruptcy Case (a/k/a the Matthews Bankruptcy Case).

Notwithstanding Debtors' bankruptcy cases being jointly administered, pursuant to the Bankruptcy Court's Local Rules, Creditors were still required to file their Proofs of Claim in the individual member cases for which their Claim relates. Additionally, other matters proscribed by the Bankruptcy Court's Local Rules are required to be filed in the individual member cases for which they relate.

Accordingly, (i) any reference herein to a "Filing No.", without a case designation, shall refer to filings in the jointly administered Bankruptcy Case, (ii) references to filings in the member cases, will be specifically identified as "[member case] Filing No.", and (iii) references to all Proofs of Claim will be identified as "[member case] Claim No.".

Due to the Joint Administration, some of the same claims against one Debtor were filed in both matters. This does not mean that the Claimant's claim is double the amount stated on the Proof of Claim.  For example, if Company X filed a Proof of Claim for $1,000.00 in the CCD Bankruptcy Case based on Contract Y, and Company X also filed a Proof of Claim for $1,000.00 in the Matthews Bankruptcy Case based on Contract Y, Company X does not have a total claim amount of $2,000.00, it only has a total claim amount of $1,000.00 which may be enforced against CCD and/or Matthews.

Therefore, herein Claimant's Claims will be accurately identified for all member cases in which they were filed, but duplicate Claims regarding the same dollar amount filed in more than one member case will not be multiplied by the number of member cases in which they were filed.

## ARTICLE 3
### HISTORY

Debtors are affiliates of one another. CCD is the owner of, among other parcels, the following parcels of real property located in St. Joseph County, Indiana, which is subject to a mortgage by KeyBank National Association and more particularly described as follows:

Parcel I: Lot Numbered Three (3) in Commerce Center Minor Subdivision, as per plat thereof recorded December 30, 2019 as Instrument Number 2019-34703 in the Office of the Recorder of Saint Joseph County, Indiana.

Parcel II: Non-exclusive Easement for access as set forth in an instrument by and between Commerce Center Development, LLC and Matthews 350 E LaSalle LLC dated April 2, 2020 and recorded April 29, 2020 in Instrument Number 2020-10418 in the Office of the Recorder of Saint Joseph County, Indiana.

(the "**Real Estate**").

Matthews has a leasehold interest in the Real Estate pursuant to a lease with CCD dated October 30, 2019 (the "**Ground Lease**").

The Real Estate is a 144-unit multi-family mid/high rise property located at 300 East Lasalle Avenue in South Bend, Indiana, with commercial and residential tenants. The property consists of a single, 10-story apartment building. Improvements thereon were constructed in 2022 and are situated on a 0.79-acre site. The improved residential units were 84.7% leased as of March 9, 2026.  The Real Estate also has 14,507 square feet of street-level retail space and 14,323 square feet of fourth-floor office space, and 202 structured parking spaces on multiple levels.

Prior to the Petition Date, Debtors each executed and delivered certain loan documents to KeyBank National Association ("**KeyBank**"), under the terms of which KeyBank made a loan to Matthews in the original principal sum of $33,000,000.00.

To secure the obligations to KeyBank, on June 3, 2022, Matthews executed and delivered to KeyBank a Mortgage, Assignment of Lease and Rents, Assignment of Contracts, Security Agreement and Fixture Filing (the "**Mortgage**"), which was recorded

4

on June 7, 2022 as Instrument Number 2022-10416 in the Office of the Recorder of St. Joseph County, Indiana.

The Mortgage also includes a Security Agreement under the terms of which Matthews granted KeyBank a lien against all of Matthews's personal property as more fully set forth in the Mortgage.

To perfect its security interest in the personal property, KeyBank recorded a UCC Financing Statement with the Office of the Indiana Secretary of State on June 6, 2022 as Instrument Number 202206062942334.

To further secure the obligations to KeyBank, on June 3, 2022, CCD executed and delivered to KeyBank a Joinder and Subordination ("**Joinder and Subordination**") for the purpose of subjecting and subordinating CCD's fee title in the Real Estate to the Mortgage.

Notwithstanding multiple efforts to refinance the obligations owed to KeyBank, Debtors were unable to do so in large part due to a lawsuit filed by the Redevelopment Commission of the City of South Bend, Indiana that was pending in St. Joseph County under Cause No. 71D07-2301-PL-00020 (the "**City Suit**") prior to the Petition Date, which Debtors removed to the Bankruptcy Court and is currently pending as Adversary Proceeding No. 26-03011.  Debtors filed the Bankruptcy Case to reorganize their obligations and to both satisfy the obligations owed to KeyBank and certain investors of Debtors.

## ARTICLE 4

## CLASSIFICATION, ALLOWANCE, AND TREATMENT OF CLAIMS AND EXPENSES

**Introduction.**  All Claims arising from the past or present debt of the Debtors shall be bound by the provisions of this Plan. This Plan combines the classification, allowance, and treatment of Claims as provided below.

**General Rules of Classification.**  Unless otherwise provided by the Plan, a Claim is classified in a particular Class for distribution purposes only to the extent the Claim has not been paid, released, or otherwise satisfied and qualifies within the description of that Class, and is classified in another Class or Classes to the extent any remainder of the Claim qualifies with the description of such other Class or Classes.

5

**Claims Bar Date.**  Pursuant to the *Notice of Chapter 11 Bankruptcy Case* [Filing No. 19] (the "**Notice of Bankruptcy**") entered by the Bankruptcy Court on March 11, 2026, to the extent that Creditors (i) were not scheduled, (ii) were scheduled and designated as disputed, contingent, or unliquidated, or (iii) assert they are owed a different amount, Creditors were required to file a Proof of Claim by the applicable bar date for their Claim. The general claims bar date was June 29, 2026. The governmental unit claims bar date is September 8, 2026. Only timely filed Claims are being treated by this Plan. Any late filed claim shall be deemed disallowed and such holder shall not receive any distribution, unless otherwise ordered by the Bankruptcy Court in this matter.

**Disputed Claims.**  No distribution will be made to the holder of a Disputed Claim unless such Claim is allowed by a final non-appealable order. Debtors shall have the power and authority to settle and compromise a Disputed Claim with Bankruptcy Court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**Classes of Claims Under the Plan.**  Claims are classified in the Plan based on the distinct legal rights attributable to each Class, and the distinct business interest of the members of each Class. The Classes of Claims treated under the Plan are as follows:

| Class | Description | Impairment | Voting |
|---|---|---|---|
| 1 | Administrative Expenses | Unimpaired | Deemed to Accept |
| 2 | Priority Unsecured Claims | Unimpaired | Deemed to Accept |
| 3 | Secured Claim of KeyBank | Impaired | Entitled to Vote |
| 4 | Secured Claim of Sheins | Impaired | Entitled to Vote |
| 5 | Secured Claim of Sheins Trust | Impaired | Entitled to Vote |
| 6 | Secured Claim of FORUM | Unimpaired | Deemed to Accept |
| 7 | General Unsecured Claims | Impaired | Entitled to Vote |
| 8 | Subordinated Unsecured Claim | Impaired | Entitled to Vote |
| 9 | Equity Security Holders | Impaired | Entitled to Vote |

**Treatment in Complete Satisfaction.**  Unless otherwise provided by the Plan, the treatment in this Plan is in full and complete satisfaction of all of the legal, contractual, and equitable rights that each holder of a Claim may have against the Debtors, the Estates, or any of Debtors' assets. This treatment supersedes and replaces any agreements or rights those holders of claims have in or against any of the Debtors, the Estates, or any of Debtors' assets. All distributions under the Plan will be tendered to the Person holding the Claim.

6

**Claims Not Being Treated in this Plan.**  Claims that were filed but that are not being treated in this Plan, and the reason therefore, are as follows:

Redevelopment Commission of the City of South Bend, Indiana ("**Redevelopment Commission**") [CCD Claim No. 3 and Matthews Claim No. 5]: Redevelopment Commission filed a Proof of Claim in both Bankruptcy Cases for an alleged unsecured claim in the amount of $10,879,877.00 (the "**Redevelopment Commission Claim**"). Debtors have filed an objection to the Redevelopment Commission Claim seeking to have the Redevelopment Commission Claim disallowed in its entirety.

In the event the Redevelopment Commission Claim, or any portion thereof, becomes an Allowed Unsecured Claim, such Allowed Unsecured Claim of the Redevelopment Commission will be added to, and treated as set forth in, Class 7 (Unsecured Claims) and the Redevelopment Commission will be entitled to vote on this Plan pursuant to such Allowed Unsecured Claim as Class 7 Claims are impaired.

## ARTICLE 5
## DETAILED DESCRIPTION OF TREATMENT OF EACH CREDITOR CLASS
### 5.1    Class 1: Administrative Expenses

**General.**  Administrative Expenses include the costs and expenses associated with this Bankruptcy Case allowable under § 503 of the Bankruptcy Code and entitled to priority under § 507(a)(2) of the Bankruptcy Code. Further included in this Class are the fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930.

**Kroger, Gardis & Regas, L.L.P.**  Counsel for the Debtors shall receive cash in an amount equal to such allowed Administrative Expense on the later of the Effective Date and the date such Administrative Expense claim is allowed, or as soon thereafter as is practicable.

**Ordinary Course.**  Expenses arising in the ordinary course after the Petition Date shall be paid in full by Debtors in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

**Administrative Tax Claims.**  Taxes arising in the ordinary course after the Petition Date shall be paid in full by Debtors in accordance with governing statutes.

**Reclamation Claims.**  Each holder of an allowed Reclamation Claim, if any, shall receive cash in an amount equal to such allowed Reclamation Claim on the later of the Effective Date and the date such Reclamation Claim is allowed, or as soon thereafter as is practicable. Debtors do not believe any such claims exist.

**Class 1 Voting**. The Class 1 Claims are unimpaired and, therefore, Class 1 claimants are not entitled to vote on, and are deemed to accept, the Plan.

## 5.2    Class 2: Priority Unsecured Claims

**General.**  Priority Unsecured Claims are unsecured claims which are entitled to priority treatment pursuant to § 507 of the Bankruptcy Code. Unless the holder of a Priority Unsecured Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding five (5) years.

**Placeholder.**  At the time of the filing of this Plan, there are no Priority Unsecured Claim.

Accordingly, no Priority Unsecured Claims are being treated in this Plan, but this class is being set forth as a placeholder in the event any Priority Unsecured Claim is filed and becomes an Allowed Priority Unsecured Claim.

In the event any Allowed Priority Unsecured Claim is filed, such Allowed Priority Unsecured Claim shall be paid by Debtors in full over the life of the Plan in equal monthly installments commencing on the first day of the month following the Effective Date of the Plan and continuing on the first day of every month thereafter during the life of the Plan.

Any Allowed Priority Unsecured Claim is unimpaired and the holder thereof will not be entitled to vote on this Plan pursuant thereto.

In the event there are no Allowed Priority Unsecured Claims, there will be no distributions made under this Class and this Class will effectively cease to exist for purposes of this Plan.

## 5.3    Secured Claims

**General.**  Allowed Secured Claims are Claims secured by property of the Debtors' bankruptcy estate (or that are determined to be subject to setoff) to the extent allowed as secured Claims under § 506 of the Bankruptcy Code. If the value of the collateral or

setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim.

There are four (4) secured claimants that are to be treated in this Plan: KeyBank National Association ("**KeyBank**"), Barry S. Shein and Cari Groman Shein ("**Sheins**"), Barry Shein Revocable Trust ("**Shein Trust**"), and FORUM Credit Union ("**FORUM**").

### Class 3 Secured Claim of KeyBank

KeyBank has a security interest in the Real Estate and Matthews' personal property. The Mortgage and the Joinder and Subordination secure the obligations to KeyBank.

**Value of KeyBank's Secured Claim.** KeyBank filed Proofs of Claim in each of the Bankruptcy Cases [CCD Claim No. 4 and Matthews Claim No. 4], asserting a Secured Claim in the amount of $30,132,468.79 ("**KeyBank's Proof of Claim Amount**"). Pursuant to multiple interim Orders entered in the Bankruptcy Case, KeyBank received monthly payments throughout the pendency of the Bankruptcy Case, as adequate protection, which shall be applied towards KeyBank's Proof of Claim Amount. KeyBank shall have an Allowed Secured Claim, based on the value of the Assets securing its claim, in the amount of $30,008,048.00 ("**KeyBank Allowed Secured Claim Amount**"). The KeyBank Allowed Secured Claim Amount was calculated as follows:

| Property | Value |
| --- | --- |
| Mid-Rise Building | $29,810,000 |
| KeyBank Checking (as of 6/30/26) | $72,396 |
| Accounts Receivable (as of 6/30/26) | $122,652 |
| Decorations and Furniture | $3,000 |
| **Total** | **$30,008,048.00** |

**Payments to KeyBank Under this Plan.** KeyBank shall be paid the KeyBank Allowed Secured Claim Amount of $30,008,048.00 under this Plan as follows:

**Term:** 3 Years from the Effective Date of an order confirming Debtors Joint Chapter 11 Plan.

**Payment Frequency:** Monthly payments of principal and interest

**Interest Rate:** 5.0%

**Amortization:** 30 Years

**Estimated Monthly Payments:** $161,089.69

- **Continuation of Loan Documents/Execution of Loan Documents:** Except as set forth herein, all of the Loan Documents shall continue in full force and effect. Debtors shall execute any loan documents that KeyBank deems necessary to adequately document the agreement above and confirm the full amount of the Indebtedness will be paid by Debtors; provided that Debtors shall receive a credit against the principal balance for any adequate protection payments made in the Bankruptcy Case prior to entry of a Confirmation Order.

- **Stay of Collection Efforts as to Guarantor:** All collection efforts against guarantor shall be stayed and KeyBank shall not take any actions as to guarantor seeking to collect the KeyBank indebtedness unless and until the occurrence of an event of default (as defined below) that remains uncured.

- **Event of Default and Opportunity to Cure:** In the event Debtors default by failing to make the payments required herein above to KeyBank, on or before the due date, or any other default under the Loan Documents or Debtors' Plan, and in the event of Debtors' failure to cure such default within ten (10) days from the date KeyBank gives notice of the default (the "**Cure Period**"), the following shall occur:
  - o The collateral securing the KeyBank Allowed Secured Claim Amount shall be abandoned from the bankruptcy estate and any applicable stay or injunction provided for under the Plan or by operation of law, including under Section 362 of the Bankruptcy Code shall be terminated and the fourteen (14) day stay provided under Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure shall be waived.
  - o KeyBank shall be permitted to auction said collateral and shall apply the proceeds thereof to the KeyBank Allowed Secured Claim Amount.
  - o All of the foregoing shall become effective upon the expiration of the Cure Period without further notice, a hearing, or any order of the Court, and KeyBank shall thereafter be permitted to enforce all rights and remedies available to it herein, under its Loan Documents, and at law.

- **Inspection of Collateral:** Debtors agree that KeyBank may inspect the collateral securing the obligations to it, upon notice given a minimum of 72 hours in advance

10

of any such inspection.

- **Financial Reporting:** Debtors shall provide to KeyBank the following items:

  o All federal and state tax returns, including all associated schedules, within 14 days after the returns are filed.

  o Quarterly Reports, in a form acceptable to KeyBank, itemizing revenue and expenses for Debtors' operations.

  o An income and expense statement for each year ending December 31st, to be provided not later than February 1st of the following year.

  o A balance sheet for the preceding year as of December 31st, to be provided not later than February 1st of the following year.

  o Itemized list of all accounts receivable for the preceding year for Debtors as of December 31st, to be provided not later than February 1st of the following year.

  o A detailed income and expenses projection for each calendar year in a format and detail acceptable to KeyBank, to be provided not later than January 15th of each year.

  o Upon request by KeyBank, Debtors shall cooperate with and permit KeyBank to perform physical inventories of all assets in the Debtors' facilities at any reasonable times requested by KeyBank. The Debtors shall further provide KeyBank with detailed information as to the extent and composition of the Collateral and any collections thereon.

- **Efforts to Refinance:** Beginning six (6) months after the Effective Date of this Plan and every six (6) months thereafter, Debtors shall submit applications to qualified lenders to refinance their obligations owed to KeyBank and submit copies of such applications to KeyBank. In the event that Debtors are unable to refinance on or before the end of the 3-year term of this Plan, Debtors shall market the property for sale using a commercial real estate broker approved by KeyBank for 180 days. In the event that such marketing efforts to not result in a signed purchase agreement with a confirmed closing date during the 180-day period, Debtors shall retain an auctioneer and the Real Estate subject to KeyBank's Mortgage shall be auctioned at an absolute auction.

11

**Class 3 Voting**. The Class 3 Claim is impaired. KeyBank is entitled to vote on this Plan pursuant to the KeyBank Allowed Secured Claim Amount.

### Class 4 Secured Claim of Sheins

**Value of Sheins Secured Claim.** Sheins filed a Proof of Claim in the CCD Bankruptcy [CCD Claim No. 1] asserting a Secured Claim in the amount of $838,268.49.

Sheins shall have an Allowed Secured Claim, based on the value of the Assets securing its Claim, in the amount of $838,268.49 ("**Sheins Allowed Secured Claim Amount**").

**Payments to Sheins Under this Plan.** Sheins shall be paid the Sheins Allowed Secured Claim Amount of $838,268.49 under this Plan. As set forth in the Proof of Claim filed by the Sheins [CCD Claim No. 1], the payments required under Secured Promissory Note were not current as of the Petition Date in the amount of $38,268.49 (the "**Sheins Prepetition Past Due Payments**"). Additionally, Debtors have not been making post-petition payments (the "**Sheins Post-Petition Past Due Payments**"; together with the Sheins Prepetition Past Due Payments, the "**Sheins Past Due Payments**").

The Sheins Past Due Payments and all payments coming due prior to the Effective Date of this Plan shall be due as a final balloon payment at the maturity date of the Secured Promissory Note.

All other terms of the Secured Promissory Note and Mortgage, Assignment of Rents, Security Agreement and Fixture Filing and all documents executed and delivered in connection therewith shall remain in full force and effect.

**Class 4 Voting**. The Class 4 Claim is impaired. Sheins is entitled to vote on this Plan pursuant to the Sheins Allowed Secured Claim Amount.

### Class 5 Secured Claim of Shein Trust

**Value of Shein Trust Secured Claim.** Shein Trust filed a Proof of Claim in the CCD Bankruptcy [CCD Claim No. 2] asserting a Secured Claim in the amount of $338,884.20.

Shein Trust shall have an Allowed Secured Claim, based on the value of the Assets securing its Claim, in the amount of $338,884.20 ("**Shein Trust Allowed Secured Claim**

12

Amount").

**Payments to Shein Trust Under this Plan.**  Shein Trust shall be paid the Shein Trust Allowed Secured Claim Amount of $338,884.20 under this Plan.  As set forth in the Proof of Claim filed by Shein Trust [CCD Claim No. 2], the payments required under Demand Promissory Note were not current as of the Petition Date in the amount of $36,827.00 (the "**Shein Trust Prepetition Past Due Payments**").  Additionally, Debtors have not been making post-petition payments (the "**Shein Trust Post-Petition Past Due Payments**"; together with the Shein Trust Prepetition Past Due Payments, the "**Shein Trust Past Due Payments**").

The Shein Trust Past Due Payments and all payments coming due prior to the Effective Date of this Plan shall be due as a final balloon payment at the maturity date of the Demand Promissory Note.

All other terms of the Demand Promissory Note and Mortgage, Assignment of Rents, Security Agreement and Fixture Filing and all documents executed and delivered in connection therewith shall remain in full force and effect.

**Class 5 Voting**. The Class 5 Claim is impaired. Shein Trust is entitled to vote on this Plan pursuant to the Shein Trust Allowed Secured Claim Amount.

### Class 6 Secured Claim of FORUM

**Value of FORUM Secured Claim.**  FORUM filed a Proof of Claim in each of the Bankruptcy Cases [CCD Claim No. 7 and Matthews Claim No. 5] asserting a Secured Claim in the amount of $4,561,402.16.

FORUM shall have an Allowed Secured Claim, based on the value of the Assets securing its Claim, in the amount of $4,561,402.16 ("**FORUM Allowed Secured Claim Amount**").

**Payments to FORUM Under this Plan.**  FORUM shall be paid the FORUM Allowed Secured Claim Amount of $4,561,402.16 under this Plan pursuant to the terms of the Amended and Restated Promissory Note dated April 8, 2021 and the Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing dated April 2, 2020 and all documents executed and delivered in connection therewith.

**Class 6 Voting**. The Class 6 Claim of FORUM is unimpaired and therefore Class

13

claimant is deemed to accept the Plan.

### 5.4    Unsecured Claims

**General.**  Unsecured Claims are not secured by property of the Estate and are not entitled to priority treatment under § 507(a) of the Bankruptcy Code.

### Class 7 General Unsecured Claims

The Claimants holding the following Unsecured Claims shall receive a pro-rata share from Debtors' Disposable Income over the three (3) year term of this Plan, an annual payment of **$25,000.00**, beginning on the first day of the twelfth (12th) month following the Effective Date and annually thereafter (the "**Annual Payment**"), at which time the remaining amount of their Claim shall be discharged. In addition to the Annual Payment, Claimants holding Unsecured Claims shall also receive the net proceeds, after payment of attorneys' fees and costs, of any recovery actions pursued under §§ 547 through 550 of the Bankruptcy Code.

Each Annual Payment shall be funded by the Shareholders which shall provide the new value to Debtors in exchange for retaining their equity interests in Debtors which are set forth in the List of Equity Security Holders filed on the Petition Date.  [*See* Matthews Bankruptcy Case Filing No. 1, p. 8].

**Unsecured Claimants.**  The following Claimants have Unsecured Claims and shall receive their indicated pro-rata share from Debtors' Disposable Income:

| Basis for Claim | Claimant | Unsecured Claim Amount | Pro-Rata Share |
|---|---|---|---|
| CCD Claim No. 3 and Matthews Claim No. 5 | Redevelopment Commission of the City of South Bend, Indiana | EXCLUDED[1] | N/A |
| Matthews Claim No. 1 | Chikol Equities, LLC | $34,425.10 | 13.22% |
| Matthews Claim No. 2 | Winthrop & Weinstine, P.A. | $7,469.00 | 2.87% |
| Matthews Claims No. 3 | F.E. Moran, Inc. Fire Protection | $690.00 | 0.27% |
| Matthews Claim No. 6 | Schindler Elevator Corporation | $6,532.45 | 2.51% |
| KeyBank Unsecured | KeyBank National Association | $124,420.79 | 47.79% |
| Matthews Schedules 3.1 | A/Ccelerated Services, LLC | $5,765.19 | 2.21% |
| Matthews Schedules 3.2 | Aladdin's Inc | $390.00 | 0.15% |

---

[1] As set forth in Article 4 above, the claim of the Redevelopment Commisssion of the City of South Bend, Indiana is not being treated because Debtors have filed an objection to the Redevelopment Commission Claim seeking to have the Redevelopment Commission Claim disallowed in its entirety.

| | | | |
|---|---|---|---|
| Matthews Schedules 3.4 | Conley Brothers Painting LLC | $7,280.00 | 2.80% |
| Matthews Schedules 3.5 | Cressy Commercial Real Estate | $6,201.64 | 2.38% |
| Matthews Schedules 3.8 | Greater New York Mutual | $10.00 | 0.00% |
| Matthews Schedules 3.9 | LaPlace Plumbing | $660.00 | 0.25% |
| Matthews Schedules 3.10 | Lebbin Law Office | $1,460.00 | 0.56% |
| Matthews Schedules 3.11 | Lisa Williams | $7,203.90 | 2.77% |
| Matthews Schedules 3.12 | Luke Uttley | $200.00 | 0.08% |
| Matthews Schedules 3.13 | Mary Hipp | $643.78 | 0.25% |
| Matthews Schedules 3.14 | Paul's Generators Sales & Service | $946.26 | 0.36% |
| Matthews Schedules 3.16 | Roy Conrad | $966.32 | 0.37% |
| Matthews Schedules 3.17 | Schindler Elevator Corporation | $878.57 | 0.34% |
| Matthews Schedules 3.18 | Steuerwald, Witham & Youngs | $6,547.03 | 2.51% |
| Matthews Schedules 3.19 | The Shermin Williams Co. | $3,275.06 | 1.26% |
| Matthews Schedules 3.20 | Tuohy Bailey & Moore | $2,345.00 | 0.90% |
| Matthews Schedules 3.21 | Winthrop & Weinstine, PA | $7,469.00 | 2.87% |
| Matthews Schedules 3.22 | Wipfli LLP | $34,568.72 | 13.28% |
| | **Total:** | **$260,347.81** | **100.00%** |

Class 7 Claims are impaired, and holders of the above Unsecured Claims that are not excluded are entitled to vote on this Plan.

## Class 8 Subordinated Unsecured Claim

In Matthews' Schedules, DMTM Inc. ("**DMTM**") is scheduled as holding an unsecured claim in the amount of $2,521,905.86 (the "**DMTM Unsecured Claim**"). DMTM did not file a Proof of Claim. The DMTM Unsecured Claim shall be an Allowed Unsecured Claim.

As indicated in Matthews' Schedules, DMTM holds a 6.9749% interest in Matthews. Therefore, the DMTM Unsecured Claim is not substantially similar to the other Unsecured Claims contained in the Class 7 General Unsecured Claims and must be separately classified pursuant to § 1122 of the Bankruptcy Code. Additionally, if the DMTM Unsecured Claim were not separately classified in this Plan, the DMTM Unsecured Claim would significantly dilute the distribution to the other Unsecured Claimants due to the size of the DMTM Unsecured Claim and the pro rata nature of distribution to Unsecured Claims.

Furthermore, due to DMTM's ownership stake in Matthews, the DMTM Unsecured Claim is subject to equitable subordination in relation to the Class 7 General Unsecured

15

Claims pursuant to § 510(c) of the Bankruptcy Code.

Accordingly, DMTM Unsecured Claim's, which constitutes the entirety of Class 8, shall have a subordinate priority to the Class 7 General Unsecured Claims and shall not receive any distributions under this Plan. DMTM consents to this treatment of the DMTM Unsecured Claim.

The Class 8 Claim is impaired and DMTM is entitled to vote on this Plan pursuant to the DMTM Unsecured Claim; provided, however, DMTM's vote pursuant to the DMTM Unsecured Claim shall not be considered for purposes of determining confirmation of this Plan under § 1129(a)(10) of the Bankruptcy Code.

## ARTICLE 6

### Class 9 Equity Security Holders

**General.** Class 9 consists of the Equity Ownership Interests of Shareholders. The Equity Ownership of the Shareholders shall be maintained based on their contribution of new value to fund each Annual Payment to the unsecured creditors.  The Shareholders shall be entitled to distributions based on their equity interest after the Effective Date.

**Class 9 Voting**. Class 9 is impaired. Each of the Shareholders are entitled to vote on this Plan.

## ARTICLE 7
### TERMS COMMON TO ALL SECURED AND UNSECURED CLASSES

**Retention of Liens and Insurance.**  All loan documents executed prior to the Petition Date, and all other financing statements, mortgages, and assignments of rents and leases executed prior to the Petition Date shall remain effective, but only to the extent they secure payments under the Plan; provided, however, any default clause contained therein is superseded by the terms of this Plan. Debtors have the right to unilaterally terminate any financing statements, mortgages, and assignments of rents and leases executed prior to the Petition Date that are inconsistent with the terms of this Plan.

**Payments.**  Regardless of whether the Plan is confirmed under § 1129(a) or (b) of the Bankruptcy Code, payments to Creditors provided for in this Plan will be made by

16

Debtors.

**Exclusion of Fees and Costs.** Each Creditor waives and is excluded from collecting: (i) default interest and penalties under any contract or other agreement; (ii) any and all rights to accelerate payment except as provided herein; (iii) contractual attorneys' fees unless the contract giving rise to the claim so provides and the claim is an allowed secured claim, in which such fees may be allowed only to the extent of over-security as it existed on the Petition Date.

**Payment of Creditors' Attorneys' Fees.** Attorneys' fees included as a Claim or part of a Claim by a Creditor shall by paid only if the amount of the fees is itemized and reasonable as determined by Debtors. If the Creditor disagrees with the Debtors' determination, then the recovery of fees shall be determined by the Bankruptcy Court. Any Creditor seeking the payment of attorneys' fees shall supply Debtors with requested information sufficient for Debtors to determine fee reasonableness.

**Payment Provisions Applicable to All Classes.** The following payment provisions are applicable to all classes unless otherwise specifically provided in this Plan:

(i) The payments, distributions, and other treatments provided with respect to each Class shall be in complete satisfaction, discharge, and release of the Claims and allowed interest in such Class except as otherwise expressly provided with respect to a Class.

(ii) Payment owed by Debtors under this Plan may be prepaid at any time on or after the Confirmation Date, in whole or in part, without premium, penalty, or discount.

## ARTICLE 8
## TREATMENT OF EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES

**East Race Market, LLC ("Market").** Matthews entered into a certain Lease with Market, on or about October 29, 2020, to lease approximately 15,000 square feet of space in the Real Estate (the "**Market Lease**"). Debtors filed a motion to reject the Market Lease [Filing No. 8] which was granted on June 3, 2026 [Filing No. 111]. Market is entitled to an Unsecured Claim for rejection damages. However, because Market has not been paying rent as required under the Lease, Market's claim is substantially offset, if not entirely

17

exhausted, by the amount of rent it has failed to pay.  As a result, Market is not treated as an unsecured creditor under the Plan.

**All Other Executory Contracts and/or Unexpired Leases.**

Debtors filed their First Omnibus Motion to Assume Unexpired Leases [Filing No. 10] regarding Residential Leases on the Real Estate which was granted on June 3, 2026 [Filing No. 113].

Debtors also filed a Motion to Assume Unexpired Ground Lease Between Debtors [Filing No. 81] and a Motion to Assume Unexpired Ground Lease with Commerce Center Office Building LLC [Filing No. 83], both of which have not yet been granted.

Debtors are unaware of any other executory contracts or unexpired leases, but if any exist, they shall be deemed rejected upon the entry of an Order confirming this Plan.

## ARTICLE 9
## MEANS OF EFFECTUATING THE PLAN

**Source of Funds to Effectuate Plan.**  The source of funds used in this Plan for payments to Creditors shall be the net monthly income of Debtors for three (3) years resulting from continued, normal business operations of Debtors. Attached hereto as **Attachment A** are projections through December 31, 2029 which reflect Debtors' ability to maintain operations and make the payments required under this Plan.

## ARTICLE 10
## TAX CONSEQUENCES OF THE PLAN

*Creditors and Equity Interest holders concerned with how the Plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.*

The income tax laws applicable to receiving distributions from a bankruptcy estate are complex. Creditors and interest holders should consult their tax advisors in order to fully understand the federal, state, and local tax consequences to them of this Plan.

To the best of Debtors' ability to do so, the primary tax ramification to Debtors is the reduction of tax attributes for debt forgiven as a result of the treatment of Creditor Claims under this Plan; and upon confirmation of this Plan, trade creditors who receive distributions hereunder may recognize income to the extent the debts due from Debtors

18

were declared uncollectible and deducted on prior tax returns.

## ARTICLE 11
### FEASIBILITY OF THE PLAN

**General.**  The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of Debtors or any successor to Debtors, unless such liquidation or reorganization is proposed in the Plan.

**Ability to Initially Fund Plan.**  Debtors believe that Debtors will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date.

**Ability to Make Future Plan Payments and Operate Without Further Reorganization.**  Debtors have provided projected financial information. Those projections are attached hereto as **Attachment A**.  Debtors' operations prior to the Petition Date were under the management of David Matthews and that has continued after the Petition Date as debtors-in-possession.  Following the confirmation of this Plan, David Matthews will continue to manage Debtors' operations which will provide consistency and permit Debtors to continue to operate and fund future plan payments.

*You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.*

## ARTICLE 12
### LIQUIDATION ANALYSIS

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached hereto as **Attachment B**.

## ARTICLE 13
### DISCHARGE

Pursuant to § 1141(d) of the Bankruptcy Code, unless after notice and a hearing

19

the Bankruptcy Court orders otherwise for cause, Confirmation of the Plan does not discharge any debt provided for in the Plan until the Bankruptcy Court grants a discharge upon completion of all payments under the Plan.

## ARTICLE 14
## MISCELLANEOUS PROVISIONS

**Effective Date.**  The Effective Date of this Plan shall be the date the Confirmation Order becomes final.  A statement shall be filed with the Bankruptcy Court within three (3) business days after the Effective Date, advising the Bankruptcy Court and all parties in interest of the occurrence of the Effective Date.

**Jurisdiction Retention.**  The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under § 1127 of the Bankruptcy Code; (iii) to hear and allow all applications for compensation of professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases; and (v) to adjudicate any cause of action which may exist in favor of Debtors.

**Governing Law**.  Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the State of Indiana.

**Modification of Plan.**  Debtors may modify the Plan at any time before Confirmation of the Plan pursuant to § 1127(a) of the Bankruptcy Code. However, the Bankruptcy Court may require additional items including re-voting on the Plan.

Debtors or Reorganized Debtors may modify the Plan at any time after Confirmation of the Plan and before substantial consummation of the Plan pursuant to § 1127(b) of the Bankruptcy Code. However, the Plan as modified under § 1127(b) of the Bankruptcy Code becomes the Plan only if circumstances warrant such modification and the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified.

**Vesting.**  Pursuant to §§ 1123(a)(5) and 1141(b) of the Bankruptcy Code, except

20

as otherwise provided in the Plan or the Confirmation Order, the Confirmation of the Plan vests all of the property of the estate in the Debtors.

Notwithstanding anything herein, prepetition creditors shall not be permitted to garnish, levy, lien, encumber, or liquidate assets of Debtors necessary to implement the terms of the confirmed Plan or make the payments provided by the confirmed Plan.

**Confirmation Standard.**  Debtors are seeking confirmation under § 1129(a) of the Bankruptcy Code, and in the alternative, § 1129(b) of the Bankruptcy Code.

**Continued Employment of Counsel**.   Kroger, Gardis & Regas, L.L.P. shall continue to be engaged by Debtors as may be necessary for the purposes of rendering services in connection with implementing the Plan, resolving claims, and performing other routine post-confirmation Chapter 11 administration duties, including but not limited to pursuing adversary proceedings previously filed in this case, as well as any actions under Chapter 5 of the Bankruptcy Code.

**Notice of Reservation**. All creditors and other parties in interest are hereby expressly advised and notified that the Reorganized Debtors shall have the right to investigate, prosecute, enforce, settle, adjust or otherwise dispose of claims to avoid and recover preferential, fraudulent, or otherwise voidable transfers under the Bankruptcy Code and other applicable law. **ALL CREDITORS AND OTHER PARTIES WHO RECEIVED PAYMENTS OR TRANSFERS OF PROPERTY FROM ANY OF THE REORGANIZED DEBTORS WITHIN THE FOUR (4) YEAR PERIOD PRECEDING THE PETITION DATE, OR WITHIN SUCH LONGER PERIOD OF TIME AS MAY APPLY UNDER APPLICABLE LAW, MAY BE SUBJECT TO SUIT BY THE DEBTORS TO RECOVER ANY PREFERENTIAL, FRAUDULENT, OR OTHERWISE VOIDABLE TRANSFERS MADE BY THE DEBTORS TO SUCH PERSONS PRIOR TO OR AFTER THE PETITION DATE**. It is anticipated that the Reorganized Debtors will review the Debtors' books and records and other available information to determine whether any claims for preferential, fraudulent, or otherwise voidable transfers should be filed by the Reorganized Debtors. The Reorganized Debtors may seek recovery and shall be entitled to seek recovery from any Person and all such Persons are hereby warned that they are susceptible to prosecution of all claims under Chapter 5 of the Bankruptcy Code.

**Right to Prosecute**.   The Reorganized Debtors may seek recovery of such

Causes of Action against any Person and against any Unsecured Creditor by adversary action filed in the Bankruptcy Court. Counsel, or such other attorney(s) designated by Counsel with the Reorganized Debtors' approval, or designated by the Reorganized Debtors, shall prosecute the Causes of Action. In accordance with § 502(d) of the Bankruptcy Code, the Reorganized Debtors shall seek an Order from the Bankruptcy Court disallowing any Claim of an Unsecured Creditor who has a prosecutable Claim asserted against such Unsecured Creditor unless said Unsecured Creditor has paid to the Reorganized Debtors the amount agreed to or adjudged by the Bankruptcy Court as a prosecutable Claim liability.

**Closing or Dismissal of Case**. Upon completion of the Plan Payments or as soon after the Effective Date as practicable, Reorganized Debtors shall expeditiously move to close their respective Bankruptcy Cases or shall seek dismissal thereof, if either are so allowed by the Bankruptcy Court, provided, however, that any dismissal shall be subject to the following conditions authorized by § 349(b) of the Bankruptcy Code: (a) said dismissal or closing shall not alter, amend, revoke or supersede the terms of the confirmed Plan; (b) all rights of the Reorganized Debtors, creditors, or any other Person treated under the Plan shall remain unaffected by said dismissal; (c) the terms of the confirmed Plan shall be binding on all Persons; (d) all orders previously entered by the Bankruptcy Court, unless altered by the Plan or a Bankruptcy Court order, shall remain in full force and effect; (e) the extension of the limitation period for the prosecution of the Causes of Action shall survive conversion, closing or dismissal; and (f) the Bankruptcy Court shall retain all jurisdiction as set forth herein.

## ARTICLE 15
### DEFINITIONS

The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan. The definitions that follow that are found in the Bankruptcy Code are for convenience of reference only, and are superseded by the definitions found in the Bankruptcy Code.

22

**Administrative Claimant:**  Any person entitled to payment of an Administrative Expense.

**Administrative Expense:**   Any cost or expense of administration of the Bankruptcy Case entitled to priority under § 507(a)(2) of the Bankruptcy Code and allowed under § 503(b) of the Bankruptcy Code, including without limitation, any actual and necessary expenses of preserving the Debtors' estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtors-in-Possession, allowances for compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and any fees or charges assessed against any of the Debtors' estate.

**Administrative Tax Claim:**  Any tax incurred pursuant to § 503(b)(1)(B) of the Bankruptcy Code.

**Allowed Claim:**  Any claim against Debtors pursuant to § 502 of the Bankruptcy Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by Debtors, and (b) as to which either (i) a party in interest, including Debtors, does not timely file an objection, or (ii) is allowed by a Final Order.

**Allowed Priority Tax Claim:**  A Priority Tax Claim to the extent that it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which Debtors or Debtors-in-Possession shall be entitled on the Confirmation Date.

**Allowed Secured Claim:**   Allowed Secured Claims are Claims secured by property of Debtors' bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Bankruptcy Code.

**Allowed Unsecured Claim:**   An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which Debtors or Debtors-in-Possession shall be entitled on the Confirmation Date.

**Bankruptcy Code:**  Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*, and any amendments thereto.

23

**Bankruptcy Court:**  The United States Bankruptcy Court for the Northern District of Indiana.

**Bankruptcy Rules:**  The Federal Rules of Bankruptcy Procedure.

**Cash:**  Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtors, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**Claim:**  Any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." 11 U.S.C. § 101(5).

**Class:**  A category of holders of Claims or interest which are substantially similar to the other Claims or interest in such class.

**Confirmation:**  The entry by the Bankruptcy Court of an order confirming this Plan.

**Confirmation Date:**  The date upon which the Bankruptcy Court shall enter the Confirmation Order; provided, however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**Confirmation Hearing:**  The hearing to be held to consider confirmation of the Plan.

**Confirmation Order:**  An order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

**Creditor:**  Any person who has a Claim against Debtors that arose on or before the Petition Date.

**Debtors and Debtors-in-Possession:**  Matthews 350 E LaSalle d/b/a 300 E LaSalle d/b/a 300 East LaSalle ("**Matthews**"), and Commerce Center Development, LLC ("**CCD**"; together with Matthews, the "**Debtors**").

24

**Disputed Claim:**  Any claim against Debtors pursuant to § 502 of the Bankruptcy Code that Debtors have in any way objected to, challenged, or otherwise disputed.

**Distributions:**  The property required by the Plan to be distributed to the holders of Allowed Claims.

**Effective Date:**  The effective date of a Chapter 11 plan is thirty (30) days after entry of the order confirming the Plan unless the Plan or Confirmation Order provides otherwise.

**Equity Interest:**  An ownership interest in Debtors' property.

**Executory Contracts:**  All unexpired leases and executory contracts as described in § 365 of the Bankruptcy Code.

**Final Order:**  An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified, or amended and as to which (i) any appeal that has been taken has been finally determined or dismissed, or (ii) the time for appeal has expired and no notice of appeal has been filed.

**Insider:**  Any (i) relative of the Debtors or of a general partner of the Debtors; (ii) partnership in which the Debtors are a general partner; (iii) general partner of the Debtors; or (iv) corporation of which the Debtors are a director, officer, or person in control. 11 U.S.C. § 101(31)(A).

**Petition Date:**  March 10, 2026, the date the Chapter 11 petition for relief was filed by Debtors.

**Plan:**  This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**Priority Tax Claim:**  Any Claim entitled to priority in payment under § 507(a)(8) of the Bankruptcy Code.

**Reclamation Claim:**  A claim under § 503(b)(9) of the Bankruptcy Code.

**Reorganized Debtors:**  Debtors after the Effective Date.

**Schedules:**  Schedules and Statement of Financial Affairs, as may be amended, filed by Debtors with the Bankruptcy Court listing liabilities and assets.

**Secured Creditor:**  Any Creditor that holds a Claim that is secured by property of Debtors.

**Shareholders:**  The list of shareholders set forth in Filing No. 1 in the Matthews Bankruptcy Case on page 8.

**Unsecured Creditor:**  Any Creditor that holds a Claim in the Bankruptcy Case which is not a Secured Claim.

## ARTICLE 16
## FREQUENTLY ASKED QUESTIONS

**What are Debtors attempting to do in Chapter 11?**  Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the Claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of Claims against a debtor will be treated.

**Why am I receiving this Plan?**  In order to confirm a plan of reorganization, the Bankruptcy Court requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtors, the Bankruptcy Court may confirm the Plan as proposed by Debtors.

**How do I determine which Class I am in?**  To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by Debtors in which there is equity to attach to. If you do not have any collateral, your claim is unsecured. Article 3 will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed.

**Why is confirmation of a plan of reorganization important?**  Confirmation of the Plan is necessary because if the Plan is confirmed, Debtors and all of its creditors are

26

bound by the terms of the Plan. If the Plan is not confirmed, Debtors may not pay creditors as proposed in the Plan while Debtors remain in bankruptcy.

**What is necessary to confirm a plan of reorganization?**  Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds (2/3) in total dollar amount and majority in number of Claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of Claims or interest that is impaired under, and has not accepted, the Plan.

**Am I entitled to vote on this Plan?**  Any Creditor of Debtors whose Claim is impaired under the Plan is entitled to vote, if the Creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any Claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the Creditor to vote upon the Creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How do I determine whether I am in an impaired class?**  The Plan identifies the classes of creditors whose Claims are impaired. If your Claim is impaired, your vote will be considered by the Bankruptcy Court.

**When is the deadline by which I need to return my ballot?**  The Plan is being distributed to all Claim holders for their review, consideration and approval. The deadline by which ballots must be returned will be contained in an order/notice from the Bankruptcy Court/Clerk.

**How do I determine when and how much I will be paid?**  Debtors have provided both written and financial summaries of what they anticipate each class of creditors will receive under the Plan.

Respectfully submitted,

**Matthews 350 E Lasalle LLC d/b/a**
**300 Lasalle d/b/a 300 East Lasalle**

David Matthews
Manager

**Commerce Center Development, LLC**

David Matthews
Sole Member

*/s/ Weston E. Overturf*
Weston E. Overturf, Attorney No. 27281-49
Anthony T. Carreri, Attorney No. 36107-49
KROGER, GARDIS & REGAS, L.L.P.
111 Monument Circle, Suite 900
Indianapolis, Indiana 46204
(317) 777-7443
WOverturf@kgrlaw.com

*Attorneys for Debtors*

28