UNITED STATES BANKRUPTCY COURT
NOTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | |
| Matthews 350 E LaSalle, LLC | ) | Case No. 26-30288-pes |
| Debtor(s) | ) | Chapter 11 |
| | ) | |
| Commerce Center Development, LLC | ) | (Jointly Administered) |
| Debtor(s) | ) | |
| | ) | |

**<u>Redevelopment Commission's Response to CCD's Objection to the Redevelopment Commission's Proof of Claim</u>**

The Redevelopment Commission of the City of South Bend, Indiana (the "Commission"), by counsel, respectfully submits its Response to Commerce Center Development, LLC's ("CCD" or "Debtor") Objection to the Redevelopment Commission's Proof of Claim (the "Objection"), filed on June 26, 2026, and in support thereof states as follows:

<u>Preface</u>

The Commission has been engaged in state court litigation against CCD, Matthews 350, and related non-debtor parties for damages resulting from breach of contract and alter-ego liability (the State Action). The State Action has been pending for several years prior to the commencement of this bankruptcy proceeding. Shortly after filing for bankruptcy, Debtors removed the State Action to this court. The Commission, in response, requested this court to remand the state action. That issue has been fully briefed

and is awaiting decision. The Commission contends that the decision regarding remand must be decided prior to claims adjudication. This filing – as all filings in this chapter 11 case and the associated adversary proceeding thus far – is done in response to actions taken by the Debtor and its associated entities in order to preserve the Commission's rights.

As explained in the Commission's Reply to Debtor's Response Objecting to the Commission's Motion to Remand, the Commission was compelled to file a Proof of Claim against CCD pursuant to F.R.B.P 3003 and also to preserve its rights in the bankruptcy proceeding, particularly its right to vote on the Debtor's Plan and retain standing as a creditor. Accordingly, neither the Commission's Proof of Claim nor the Commission's Response to Debtor's Objections to the Proof of Claim should be taken as the Commission's consent to the jurisdiction of this Court over the state-law issues in the removed State Action. The Commission maintains, consistent with its stance in all of its filings in this proceeding, that the only court with proper jurisdiction over the state-law issues in the State Action is the state court in which that matter has been pending for quite some time.

<u>Statement of Relevant Facts</u>

1.      On January 12, 2017, the Commission and CCD entered into a Development Agreement for a project at 401 E. Colfax Avenue, South Bend, Indiana (the "Project"). The parties subsequently executed an Addendum to the Development Agreement on January

27, 2017 (the "Addendum"). The Development Agreement and Addendum set forth CCD's obligations to complete the Project and imposed mandatory completion deadlines (the "Mandatory Projection Completion Date").

2.      CCD failed to complete the Project by the Mandatory Project Completion Date as required by the Development Agreement. On March 10, 2026, CCD filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

3.      On or about June 26, 2026, the Commission filed its Proof of Claim (the "Claim" or the "Proof of Claim") asserting an unsecured claim against CCD in the amount of $10,879,877.00 (the "Claim Amount") for "Breach of Contract and Associated Damages" (the "Claim Basis").

4.      On July 2, 2026, CCD filed its Objection to the Commission's Claim asserting four grounds: (1) the Commission failed to substantiate the Claim Amount; (2) the Commission failed to attach the "RDA Contract"; (3) the unenforceability of the unsigned Memorandum of Agreement (the "MOA"); and (4) denial of liability, including the argument that the Commission is not the proper party to assert tax abatement claims as a separate legal entity from the City of South Bend.

5.      The Commission disputes each of CCD's objections and submits this Response in support of allowance of its Claim.

3

Legal Standard

A "claim" is generally defined as a "right to payment" from a debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. 11 U.S.C. § 101(5). A creditor may file a proof of claim pursuant to 11 U.S.C. § 501, and a claim that is filed under Section 501 is deemed "allowed" against the debtor unless a party in interest objects and the claim falls within one of the grounds for disallowance set forth in 11 U.S.C. § 502(b).

A proof of claim executed and filed in accordance with the Bankruptcy Rules constitutes prima facie evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). The requirements governing the form and content of a proof of claim are set forth in the Bankruptcy Code and Bankruptcy Rules, including Bankruptcy Rule 3001, and are not subject to the pleading standards applicable to a complaint or other civil action. Rather, a proof of claim is intended to provide notice of the nature and amount of a creditor's claim and to establish the basis for allowance of the claim.

The party objecting to a claim bears the burden of providing sufficient evidence or information to overcome the prima facie weight of validity given to the creditor's proof of claim. *In re Smith*, 249 B.R. 328 (Bankr. S.D. Ga. 2000); 9A Collier on Bankruptcy ¶ 3001.09[2] (16th ed. 2026). If the proof of claim sets forth facts sufficient to support a legal basis for liability, the claimant has satisfied its initial burden, and the burden shifts to the

objecting party to produce <u>evidence</u> sufficient to negate the prima facie validity of the claim. This is consistent with the traditional approach to the burden of proof which holds that "the party that asserts the affirmative of an issue has the burden of proving the facts essential to its claim." *Auburndale State Bank v. Dairy Farm Leasing Corp.*, 890 F.2d 888, 893 (7th Cir. 1989). Mere allegations or unsupported assertions contained in an objection are insufficient to overcome the prima facie validity afforded to a properly filed proof of claim.

An objection to a claim should, at a minimum, allege those facts necessary to support the objection: "Conclusory allegations do not suffice; instead, the underlying facts that justify the conclusion must be pleaded." *In re Tieman*, No. 25-11188, 2026 Bankr. LEXIS 1610, at *2 (Bankr. N.D. Ind. Apr. 20, 2026). The objecting party must produce evidence which, if believed, would refute at least one essential element of the claim. If the objecting party successfully rebuts the claim, the burden shifts back to the claimant to establish the validity and amount of the claim by a preponderance of the evidence. Here, the Commission's attempt to establish the amount which CCD and its related entities owes due to the breach of contract has spanned years and has been met by challenges at every turn. In turn, in the Objection CCD has provided no substantiated facts or evidence refuting the Commission's claim.

Argument

The Commission's Proof of Claim satisfies the requirements for allowance under the Bankruptcy Code and Bankruptcy Rules and, therefore, is prime facie valid. CCD, as the objecting party, bears the burden of establishing a legally sufficient basis for disallowance under 11 U.S.C. § 502(b) and producing evidence sufficient to rebut the prima facie validity afforded to the Commission's Proof of Claim. CCD's Objection does not establish a statutory basis for disallowance, nor does it provide sufficient evidence to overcome the presumptive validity of the Commission's claim.

Accordingly, the Commission's Proof of Claim should be allowed as filed.

A. <u>The Commission's Proof of Claim Satisfies the Bankruptcy Rules and Is Prima Facie Valid</u>.

The Commission's Claim satisfies the requirements governing the filing of proofs of claim. The Claim identifies the creditor, the debtor, the amount, and the basis of the Claim (breach of contract and associated damages). CCD acknowledges that the Commission attached the Development Agreement and Addendum, the tax abatement resolutions, and the MOA to the Claim. These documents are the writings that form the basis of the Commission's Claim.

Rule 3001 requires substantial conformity with the official proof-of-claim form. F.R.B.P. 3001. When a claim is based on a writing, Rule 3001(c)(1) requires the claimant to attach the writing on which the claim is based. The Commission did so by attaching the Development Agreement and Addendum. CCD does not show that the Claim fails to

6

substantially conform to the applicable form established by Rule 3001, nor that the Commission was not authorized to file it, or that the Development Agreement and Addendum are not the writings on which the Claim is based.

CCD's argument incorrectly assumes that a proof of claim must, akin to a civil complaint, plead every element, attach every potentially relevant document, and pre-prove damages at the filing stage. This standard is not the law. Rather, a proof of claim is a written statement of the creditor's claim and is governed by claim filing rules. It is not a complaint nor a motion for summary judgment and is not subject to civil pleading standards. Once the Commission filed its Proof of Claim alleging a right to payment and attached the principal writings on which the Claim is based, in conformance with the claim filing rules, the Claim was entitled to a prima facie presumption of validity under Rule 3001(f), shifting the burden to CCD to produce sufficient evidence to overcome this presumption. Claim objectors carry the initial burden to produce some evidence to overcome this rebuttable presumption. *In re O'Malley*, 252 B.R. 451, 455-56 (Bankr. N.D. Ill. 1999). CCD has provided none, arguing only that the Commission's Claim did not conform to an inapplicable standard.

B. <u>CCD Has Not Carried Its Burden to Rebut the Claim's Prima Facie Validity or Establish A Section 502(b) Basis for Disallowance</u>.

CCD's Objection fails to establish a basis for disallowance under Section 502(b). Section 502(a) deems a proof of claim "allowed" unless a party in interest objects. Upon objection by a party of interest, Section 502(b) directs the Court to allow the proof of claim

7

except to the extent a specified ground for disallowance applies. 11 U.S.C. § 502. The objector must, therefore, do more than demand additional substantiation or deny liability, but rather "…has the burden of presenting evidence to rebut the claim's prima facie validity…" *In re McCoy*, 355 B.R. 69, 72 (Bankr. N.D. Ill. 2006) or establish that any grounds for disallowance under Section 502(b) apply.

In the Objection, CCD has not produced evidence equal in probative force to the Commission's Claim and supporting documents. In fact, it has not submitted evidence of any kind, nor anything that supports its position that the Development Agreement is invalid, that CCD did not owe the obligations reflected in the Development Agreement, that the Commission lacks *any right to payment whatsoever*, or that the Claim falls within one of the exceptions for disallowance in Section 502(b). Instead, CCD asserts that it needs more information, speculates about the basis for the Claim Amount, and raises defenses in the alternative.

This is insufficient for disallowance. CCD, as the objecting party, has failed to produce evidence that, if believed, would refute at least one allegation essential to the Claim's legal sufficiency. The mere filing of the Objection does not overcome the Claim's presumed validity. General denials, speculation, and requests for further detail do not satisfy CCD's burden—the "mere denial of the validity or amount is not sufficient to sustain an objection to a claim." *In re Nejedlo*, 324 B.R. 697, 699 (Bankr. E.D. Wis. 2005). Indeed, CCD's actions in removing the State Action to bankruptcy court for adjudication

8

after years of litigation as well as its position that *something* should be decided in this forum is an implied admission that the debt owed to the Commission has non-zero value at present.

C. <u>CCD's Demand for a Damages Breakdown Imposes a Pleading Standard That Does Not Apply to Proof of Claim</u>.

In the Objection, CCD argues that the Claim should be disallowed because it does not include a calculation, breakdown, or supporting documentation showing how the Claim Amount was determined. This argument misstates the filing-stage requirements for proofs of claim.

Rule 3001 does not require every proof of claim to attach a full damages model, expert analysis, or litigation-style itemization of damages. The Bankruptcy Rules require substantial conformity with Official Form 410 and, for claims based on a writing, attachment of the writing on which the claim is based. Additional itemization requirements apply in specific contexts, such as certain individual-debtor claims and claims involving interest, fees, expenses, or other charges—requirements that CCD has not established apply here.

The rule requiring documentation with a proof of claim exists mainly to create a presumption of validity, but the perceived absence of documentation does not warrant forfeiture of a valuable claim in full unless there is prejudice or bad faith. *In re Stoecker*, 5 F.3d 1022, 1028 (7th Cir. 1993). A bankruptcy court should not disallow a proof of claim for lack of documentation without leave to amend, as nothing in the principles or

9

practicalities of bankruptcy or in the language of any rule or statute justifies so disproportionate a sanction for a harmless error. *In re Stoecker* at 1028.

The Commission's Claim is for breach of contract and associated damages stemming from the Development Agreement and Addendum. CCD acknowledges that these documents were attached to the Claim. This is sufficient at the filing stage to allege a right to payment and to provide prima facie support for the Claim. CCD may contest the Claim Amount through the claims-objection process, but it must do so by producing evidence or legal arguments sufficient to negate the Claim's prima facie validity and establish a veritable basis for disallowance. It cannot shift the burden back to the Commission merely by arguing that the Claim should have looked more like a complaint, summary-judgment motion, or trial submission. CCD's request for disallowance in full, without evidence of any kind offered in support, is not sufficient.

D. <u>The Absence of the RDA Contract Does Not Require Disallowance of the Claim</u>.

CCD argues that the Development Agreement references an "RDA Contract" establishing the Mandatory Project Completion Date and that the Commission's failure to attach the RDA Contract deprives the Claim of prima facie validity. This argument fails.

Rule 3001(c)(1) requires a creditor to attach the writing on which the claim is based. As explained above, the Commission's Claim is based on CCD's obligations to the Commission under the Development Agreement and Addendum, writings which CCD

acknowledges were attached. A proof of claim does not lose prima facie validity simply because the contract attached to the claim references another document that may provide additional factual context or a date relevant to performance.

Nor does CCD establish disallowance under Section 502(b) by speculating that the RDA Contract may be necessary to determine the Mandatory Project Completion Date. CCD does not produce the RDA Contract, does not identify a different completion date, does not provide evidence that the completion date was modified by the RDA or some other document, and does not show that the Claim is unenforceable under the Development Agreement. CCD's argument lacks any evidence sufficient to rebut the Claim's prima facie validity as a result of the absence of the RDA Contract.

CCD's notice argument is likewise unavailing. CCD acknowledges that Section 4.5 of the Development Agreement provides that CCD's failure to complete the Project by the Mandatory Project Completion Date constitutes a default without any requirement of notice or opportunity to cure. CCD's reliance on Section 7.1, therefore, does not defeat the allowance of the entire Claim based on failure to meet the Mandatory Project Completion Date. To the extent CCD contends that the Claim is based on some other breach requiring notice, CCD must identify that breach and produce evidence supporting its objection. It has not done so.

11

E. CCD's MOA Argument Undermines CCD's Position, Not the Commission's Claim.

In the Objection, CCD argues that the Memorandum of Agreement ("MOA") is unsigned, was never signed by CCD, and, therefore, is unenforceable. CCD additionally asserts that any reliance on the MOA is improper. However, CCD's arguments do not defeat the Commission's Claim for at least three reasons.

First, the Claim is based on breach of contract and associated damages, and CCD acknowledges that the Development Agreement and Addendum were attached to the Claim. The Development Agreement and Addendum, not the MOA alone, supply the contractual framework for the Commission's right to payment. CCD's assertion that the MOA is unenforceable does not negate the validity or enforceability of Development Agreement or the Addendum, does not disprove breach, and does not establish any Section 502(b) ground for disallowance.

Second, CCD's argument improperly converts an attachment into an admission that the attachment is an exclusive basis for the Claim. The Commission attached multiple documents to its Claim: the Development Agreement, the Addendum, two tax-abatement resolutions, and the MOA. The presence of the MOA among the attachments does not mean the Claim rises or falls *solely* on the enforceability of the MOA, but that the MOA is one of the writings upon which the Claim is based.

Third, CCD's position creates a dispositive problem for CCD under the tax-abatement framework. The resolutions attached to the Claim concern the designation of

12

the property as an economic revitalization area for purposes of a ten-year real property tax abatement for CCD. Under the applicable municipal code framework, the MOA was not merely an ancillary document; rather, it was an integral component of the tax-abatement arrangement and the obligations undertaken by CCD in exchange for receiving the abatement.

The South Bend Municipal Code expressly contemplates the use of a memorandum of agreement as part of the tax-abatement process. Section 2-76.4 provides that, in evaluating whether to grant an add-on abatement, the City Council may consider, among other things, the public benefit commitments included in an applicant's memorandum of agreement. See South Bend Municipal Code § 2-76.4. Additionally, Section 2-84.14(a) provides that "the granting of a request for real and/or personal property tax abatement under the terms and conditions of this article and the memorandum of agreement constitutes a contractual arrangement between the Council and the property owner granted abatement." See South Bend Municipal Code § 2-84.14(a).

The Municipal Code further provides that failure to comply with obligations contained in the memorandum of agreement and related tax-abatement documents may result in fines, termination of the economic revitalization designation, and repayment of taxes previously abated. *See* South Bend Municipal Code § 2-84.14(b)-(d). The declaratory resolution and confirming resolution adopted in connection with CCD's tax abatement

13

likewise reference the MOA as part of the approved tax-abatement arrangement. Accordingly, if CCD's position is that no MOA exists or is unenforceable because the MOA was never signed, then it necessarily calls into question the basis upon which CCD received the tax-abatement benefits and the commitments upon which those benefits were granted.

CCD cannot rely upon the benefits of the tax-abatement framework while simultaneously asserting that the agreement governing that framework is unenforceable. Doing so either admits that CCD was never entitled to the tax abatement and must repay the improper abatement or jeopardizes the continuing abatement.[1]

At a minimum, CCD's argument regarding the MOA raises factual and legal issues concerning CCD's obligations under the Development Agreement and the tax-abatement arrangement. It does not establish that the Commission lacks a right to payment, does not rebut the prima facie validity of the Commission's Proof of Claim, and does not provide a basis for disallowance under Section 502(b).

F.  CCD's Alternative Defenses Do Not Justify Disallowance.

In the Objection, CCD asserts that Section 7.2 of the Development Agreement is an unenforceable penalty, that force majeure may excuse certain breaches, and that the Commission may not be the proper party to assert a claim based on tax abatement. These

---

[1] The City of South Bend, including but not limited to the Redevelopment Commission, explicitly does not consent to jurisdiction in this forum of anything relating to CCD's past or future eligibility for any tax abatement, or any related municipal proceeding.

arguments do not warrant disallowance. At most, they raise the specter of questions of fact—a defense that a contractual damages provision is an unenforceable penalty requires legal and factual support. CCD provides neither. At best, it appears to be attempting to splice arguments that belong as responsive pleadings in the State Action into its objection.

CCD does not provide evidence concerning the anticipated or actual damages and does not show that the provision is unenforceable as applied. A bare assertion that a contractual remedy is a penalty does not rebut the prima facie validity of a proof of claim. CCD's force majeure assertion is similarly undeveloped. CCD states only that force majeure may excuse certain breaches, while also asserting that it cannot expand on that defense without further substantiation from the Commission. However, the burden at this stage is on CCD to produce sufficient evidence to rebut the Claim's prima facie validity. If CCD contends that force majeure excuses performance, CCD must identify the event, the contractual provision, the performance excused, and the evidentiary basis for the defense. CCD has not done so.

CCD's challenge to the Commission as the proper claimant also fails. The Development Agreement identifies the contracting party as "the City of South Bend, Department of Redevelopment, acting by and through its governing body, the South Bend Redevelopment Commission." Thus, the Commission is not a separate and unrelated entity from the party to the Development Agreement; rather, it is the governing body acting on behalf of the City's Department of Redevelopment.

15

The Commission's Claim against CCD arises from the same contractual relationship identified in the Development Agreement, which is the same matter that is the subject of the State Action. The fact that the Commission's name is shortened in the litigation and Claim documents to "Redevelopment Commission of the City of South Bend" does not change the identity of the contracting party or the Commission's authority to enforce the rights and obligations arising from the Development Agreement.

Accordingly, CCD's assertion that the Commission is not the proper claimant because it is allegedly separate from the City is without merit. The record establishes that the Commission is the governmental body identified in the Development Agreement and the party authorized to assert claims arising from CCD's alleged breach. Requiring the "City of South Bend" to file its own separate claim will only add layers of inevitable additional filings, expense, and confusion.

## CONCLUSION

The Commission filed its Proof of Claim against CCD asserting a right to payment for breach of contract and associated damages. The Claim identifies the amount and basis of the debt and attaches the Development Agreement, the Addendum, the tax-abatement resolutions, and the MOA. Under the Bankruptcy Code and Rules, the Claim and attachments as presented are sufficient to establish prima facie validity under Rule 3001(f). CCD's Objection applies the wrong standard. A proof of claim is neither a complaint nor a motion subject to civil pleading standards. Rather, it is governed by the

Bankruptcy Code and Bankruptcy Rules 3001, 3002, and 3003. Further, CCD, as objector, must produce evidence or legal arguments sufficient to negate the Claim's prima facie validity and establish grounds for disallowance under Section 502(b). CCD has failed to meet this burden.

CCD's MOA argument is particularly unavailing. If CCD contends that no MOA exists, then CCD undermines the premise of the tax abatement it seeks to invoke. Under the applicable municipal framework, absent an MOA there is no tax abatement. CCD cannot use the alleged absence of an MOA  as a shield against the Commission's Claim and at the same time rely on it as a means to preserve the benefits of the tax-abatement arrangement. Lastly, the Redevelopment Commission is part of the City of South Bend. It does not exist absent the City and its governmental authority.

CCD's arguments regarding the Commission are circular and are all self-generated: CCD should not pay the Commission anything because it filed for bankruptcy and because it filed for bankruptcy the lawsuit to liquidate the contract damages should be stayed in perpetuity and because the lawsuit is stayed the Commission should not get paid anything, ever. CCD's attempted removal of the lawsuit between itself and the Commission to litigate it on the merits in bankruptcy court, is consent to liquidating the lawsuit on its merits rather than simply disallowing the claim in full. CCD's Objection to the Commission's claim, which was responsively filed because of how CCD scheduled it, is simply an attempt at an end-run around the remand issue.

Ultimately, even if CCD is correct in its allegation that documentation or itemization is missing from the Proof of Claim, disallowance is not the correct result. "If the documentation is missing, the creditor cannot rest on the proof of claim. It does not follow that he is forever barred from establishing the claim. Nothing in the principles or practicalities of bankruptcy or in the language of any rule or statute justifies so disproportionate a sanction for a harmless error. Forfeitures of valuable claims, and other heavy sanctions, should be reserved for consequential or easily concealed wrongs. *Prussner v. United States*,896 F.2d 218, 224 (7th Cir. 1990) (en banc); *Lorenzen v. Employees Retirement Plan*, 896 F.2d 228, 232 (7th Cir. 1990)." *In re Stoecker*, 5 F.3d 1022, 1028 (7th Cir. 1993).

Rather than disallowing the Claim in full, the litigation between the Commission and CCD should be remanded to state court, to liquidate the amount due from all Defendants in that action. Substituting federal claims litigation for state property rights is contrary to established law. "Creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code." *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20, 120 S. Ct. 1951, 1955 (2000). "Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to

18

reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.'" *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 918 (1979), citing *Lewis v. Mfrs. Nat'l Bank*, 364 U.S. 603, 609, 81 S. Ct. 347, 350 (1961).

Finally, as stated above, the Commission does not consent to this Court's jurisdiction over the state-law issues of the State Action and again contends that the remand issue must be decided prior to any claims litigation. The Commission primarily seeks to preserve its assorted rights as a Creditor while the State Action is decided.

**WHEREFORE**, the Redevelopment Commission of the City of South Bend, Indiana respectfully requests that this Court overrule CCD's Objection to Claim and allow the Commission's Proof of Claim in the full amount of $10,879,877.00 and grant such other and further relief as the Court deems just and proper.

Dated: August 3, 2026

Respectfully Submitted,

*/s/ Katherine Iskin*

Katherine E. Iskin (33679-71)
Matthew J. Anderson (27511-71)
**MAY OBERFELL LORBER LLP**
4100 Edison Lakes Parkway, Suite 100
Mishawaka, IN 46545
Telephone: 574-243-4100
E-mail: kiskin@maylorber.com
            manderson@maylorber.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 3, 2026, a copy of the foregoing was filed electronically with the Clerk using the CM/ECF System, which sent notification of such filing to all counsel of record.

/s/ *Katherine Iskin*
Katherine Iskin (33679-71)