UNITED STATES BANKRUPTCY COURT
NOTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | |
| Matthews 350 E LaSalle, LLC | ) | Case No. 26-30288-pes |
| Debtor(s) | ) | Chapter 11 |
| | ) | |
| Commerce Center Development, LLC | ) | (Jointly Administered) |
| Debtor(s) | ) | |
| | ) | |

**Redevelopment Commission's Response to Matthews 350's Objection to the Redevelopment Commission's Proof of Claim**

The Redevelopment Commission of the City of South Bend, Indiana (the "Commission"), by counsel, respectfully submits its Response to Matthews 350 E LaSalle LLC d/b/a 300 E LaSalle d/b/a 300 East LaSalle's ("Matthews 350" or "Debtor") Objection to the Redevelopment Commission's Proof of Claim (the "Objection"), filed on June 26, 2026, and in support thereof states as follows:

Preface

The Commission has been engaged in state court litigation against CCD, Matthews 350, and related non-debtor parties for damages resulting from breach of contract and alter-ego liability (the State Action). The State Action has been pending for several years prior to the commencement of this bankruptcy proceeding. Shortly after filing for bankruptcy, Debtors removed the State Action to this court. The Commission, in response, requested this court to remand the state action. That issue has been briefed and

1

is awaiting decision. The Commission contends that the decision regarding remand must be decided prior to claims adjudication. This filing – as all filings in this chapter 11 case and the associated adversary proceeding thus far – is done in response to actions taken by the Debtor and its associated entities in order to preserve the Commission's rights.

As explained in the Commission's Reply to Debtor's Response Objecting to the Commission's Motion to Remand, the Commission was compelled to file a Proof of Claim against Matthews 350 pursuant to F.R.B.P 3003 and also to preserve its rights in the bankruptcy proceeding, particularly its right to vote on the Debtor's Plan and retain standing as a creditor. Accordingly, neither the Commission's Proof of Claim nor the Commission's Response to Debtor's Objections to the Proof of Claim should be taken as the Commission's consent to the jurisdiction of this Court over the state-law issues in the removed State Action. The Commission maintains, consistent with its stance in all of its filings in this proceeding, that the only court with proper jurisdiction over the state law issues in the State Action is the state court in which that matter has been pending for quite some time.

Statement of Relevant Facts

1.      On January 12, 2017, the Commission and Commerce Center Development, LLC ("CCD") entered into a Development Agreement governing the redevelopment of real property located at 350 E. LaSalle Avenue in South Bend, Indiana (the "Development Agreement"). *See* **Claim 5** beginning at Page 4.

2.     The Development Agreement prohibited CCD from assigning its rights or obligations under the Agreement without the consent of the Commission. *See* **Claim 5**.

3.     In connection with the Development Agreement, the Commission approved certain tax abatements and redevelopment incentives through Resolution Nos. 4612-17 and 4613-17. In exchange for the tax abatement, CCD committed to a capital expenditure of $35,0000,000.00 for the construction of 144 residential units, approximately 30,000 sq. ft. of commercial and retail space, and a parking garage with 500+ spaces, and further committed to the creation of 84 permanent, full-time jobs representing an annual payroll of $2,297,568.00 (the "Project"). *See* **Claim 5.**

4.     On January 23, 2017, the Commission entered into a Memorandum of Agreement ("MOA") with CCD.  Section 14 of the MOA expressly provided that CCD may not assign or transfer its rights or obligations thereunder without the prior written consent of the Commission.

5.     The Development Agreement was subsequently amended by an Addendum dated January 27, 2017 (the "Addendum"). *See* **Claim 5** beginning at Page 33.

6.     On October 30, 2019, CCD, as Landlord, secretly executed a 99-year ground lease with Matthews 350, as Tenant (the "Ground Lease"), pursuant to which CCD transferred a parcel of the subdivided developed property (including all of the real estate upon which the Project was to be developed) for the total sum of $99.00 ($1.00 per year),

3

prepaid. A copy of the Ground Lease is attached hereto and incorporated herein as **Exhibit 1.**

7. CCD did not inform the Commission about the Ground Lease, let alone ask the Commission for its written consent to any assignment, transfer, or delegation of CCD's rights or obligations under either the Agreement or MOA to Matthews 350.

8. Following execution of the Ground Lease, responsibility for the development, operation, and control of the Project was transferred to Matthews 350.

9. On March 10, 2026, Matthews 350 filed a voluntary petition for relief under Chapter 11 of Title 11 of the Bankruptcy Code ("Petition").

10. On June 26, 2026, the Commission timely filed Proof of Claim asserting a general unsecured claim against Matthews 350 ("Claim" or "Proof of Claim") in the amount of $10,879,877.00 (the "Claim Amount"). The Commission's Claim arises from Matthews 350's liability for damages resulting from breach of contract and related alter ego liability.

11. In support of its Proof of Claim, the Commission attached copies of the Development Agreement, the Addendum, Resolution Nos. 4612-17 and 4613-17, and the Memorandum of Agreement.

12. On July 2, 2026, Matthews 350 filed its objection to the Commission's Proof of Claim (the "Objection").

13.     In the Objection, Matthews 350 asserts that: (a) the Commission failed to substantiate the amount of its Claim; (b) the Commission improperly relied upon documents not attached to its Proof of Claim; (c) the Commission seeks to enforce an agreement that it allegedly lacks authority to enforce; and (d) Matthews 350 is not a party to the Development Agreement and therefore cannot be liable under either the Agreement or any alter ego theory.

14.     Matthews 350 seeks disallowance of the Commission's Proof of Claim in its entirety. The Commission disputes each of the grounds asserted in the Objection and submits that the Proof of Claim is entitled to prima facie validity under the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. Given the procedural posture of the litigation between the Commission and the Debtors, as well as the thousand-plus page record at the state court level, disallowance of the Claim in full is premature and not supported by law.

15.     For brevity, the Commission references and incorporates its response to CCD's Objection to Claim as many of the legal arguments are the same.

Legal Standard

I. A Properly Filed Proof of Claim Is Entitled to Prima Facie Validity

A "claim" is generally defined as a "right to payment" from a debtor, regardless of whether such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. 11

5

U.S.C. § 101(5)(emphasis added). A creditor may file a proof of claim pursuant to 11 U.S.C. § 501, and a properly filed claim under § 501 is deemed "allowed" against the debtor unless a party in interest objects and the claim falls within one of the grounds for disallowance set forth in 11 U.S.C. § 502(b). 11 U.S.C. § 501(a); 11 U.S.C. § 502(b). Disallowance of a claim can be based only on the grounds set forth in 11 U.S.C. § 502(b). None of the grounds for disallowance set out in § 502(b) involve a failure to attach documents to a proof of claim. 11 U.S.C. § 502(b); *see also In re Guidry*, 321 B.R. 712 (Bankr. N.D. Ill. 2005).

A properly filed proof of claim constitutes prima facie evidence of the validity and the amount of the claim. Fed. R. Bankr. P. Rule 3001(f); S*ee also In re Salem*, 465 F.3d 767, 779 (7th Cir. 2006). Bankruptcy Rule 3001 requires a proof of claim to be a written statement that substantially conforms to Form 410. Fed. R. Bankr. P. 3001(a). Additionally, pursuant to Bankruptcy Rule 3001(c), if the claim or interest in the debtor's property securing the claim is based on a writing, the creditor must file a copy of such writing with the proof of claim. Fed. R. Bankr. P. 3001(c). Once a creditor files a proof of claim that satisfies the requirements of Rule 3001, the burden shifts to the objecting party to produce sufficient evidence to rebut the claim's *prima facie* validity. *In re Pierport Dev. & Realty, Inc.*, 491 B.R. 544, 547 (Bankr. N.D. Ill. 2013); *In re Neely*, 608 B.R. 806 (Bankr. N.D. Ill. 2019) ("A proof of claim executed and filed in accordance with the Bankruptcy Rules shall constitute prima facie evidence of the validity and **amount** of

6

the claim…Once a creditor has filed a claim of prima facie validity, the court must allow the claim unless a party in interest objects and produces evidence sufficient to rebut the claim.") (emphasis added).

A mere objection containing unsupported allegations, legal conclusions, or denials are insufficient to overcome the presumption of validity afforded to a properly filed proof of claim. *In re Taylor*, 289 B.R. 379, 384 (Bankr. N.D. Ind. 2003)("an objection to a proof of claim must allege facts which, if accepted as true, would trigger one of the statutory reasons for denying a claim. If it does not, the objection should not be sustained…even if the creditor lacks sufficient interest to respond."); *see also In re Grabill*, 121 B.R. 983, 992 (Bankr. N.D. Ill. 1990)("To overcome this presumption, an objecting party must present evidence with probative force equal to the allegations contained in the proof of claim or otherwise establish a basis for disallowance.").

II. <u>Contingent and Unliquidated Claims Are Expressly Recognized and Estimated Under Section 502(c)</u>

The Bankruptcy Code expressly provides for the allowance of contingent and unliquidated claims. Section 502(c) requires that contingent or unliquidated claims be estimated for purpose of allowance under 11 U.S.C § 502. Specifically, section 502(c)(1) provides: "There shall be estimated for purpose of allowance under this section—(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case."

Unlike the treatment afforded contingent or unliquidated claims under the 1898 Bankruptcy Act, section 502(c) of the 1978 legislation provides for an estimate of the amount of a contingent or unliquidated claim for purpose of its allowance, where the actual liquidation of the claim or its actual amount as determined by the court, would unduly delay the closing of the case. This provision remains largely unchanged to date.

Where a claim is contingent and must be further liquidated in accordance with underlying proceedings, the Bankruptcy Code requires the court to conduct a hearing to make the required claim estimate. Raw disallowance of the claim is not contemplated under law or equity.

Argument

The Commission's Proof of Claim satisfies the requirements for allowance under the Bankruptcy Code and Bankruptcy Rules. Matthews 350, as the objecting party, bears the burden of establishing a legally sufficient basis for disallowance under 11 U.S.C. § 502(b) and producing evidence sufficient to rebut the *prima facie* validity afforded to the Commission's Proof of Claim. Matthews 350's Objection does not establish a statutory basis for disallowance, nor does it provide sufficient evidence to overcome the presumptive validity of the Commission's Proof of Claim. Accordingly, the Commission's Proof of Claim should be allowed as filed.

A. <u>The Commission's Proof of Claim Complies with Rule 3001 and is Entitled to Prima Facie Validity.</u>

The Commission filed a written Proof of Claim on Official Form 410 identifying the claim amount ($10,879,877.00), the basis for the claim (damages from breach of contract and alter ego liability), and attached copies of the written agreements and supporting documents upon which the Claim is based, including the Development Agreement, Addendum, MOA, and related resolutions. Accordingly, the Commission's Proof of Claim satisfies the requirements of Bankruptcy Rule 3001. Fed. R. Bankr. P. 3001.

Bankruptcy Rule 3001 requires that a proof of claim be a written statement substantially conforming to Official Form 410 and, where the claim is based on a writing, that the claimant attach the writing upon which the claim is based. Fed. R. Bankr. P. 3001(a), (c)(1). The Commission satisfied both requirements. The attached documents to the Commission's Proof of Claim establish the contractual relationship between the Commission and the debtors, Matthews 350 and CCD, the obligations undertaken by Matthews 350, the redevelopment incentives approved by the Commission, and the factual and legal basis for the Commission's claim. Since the Commission's Proof of Claim was executed and filed in accordance with Rule 3001, it constitutes prima facie evidence of both the validity and the amount of the Claim. Fed. R. Bankr. P. 3001. Consequently, the burden shifted to Matthews 350 to produce sufficient evidence to rebut that presumption.

9

B. <u>The Presumption of Claim Validity Extends to the Proof of Claim Amount.</u>

Having established that the Commission's Proof of Claim is entitled to prima facie validity, the burden shifted to Matthews 350 to produce evidence sufficient to rebut the presumption of validity afforded to the Claim. Matthews 350 has failed to meet this burden.

In its Objection, Matthews 350 first challenges the amount of the Claim by stating, that "the Claim fails to include any calculation, breakdown, or supporting documentation showing how the asserted Claim Amount was determined," and that the Commission has not provided an itemization of damages or evidence demonstrating the Claim Amount. *Id*. As such, Matthews 350 quickly concludes that "a proof of claim that fails to include sufficient documentation to establish both validity and the amount of the claim is not entitled to prima facie validity."

A proof of claim is not stripped of its *prima facie* validity simply because the objector demands more documentation. *In re Chapman*, 132 B.R. 132 (Bankr. N.D. Ill. 1991). Rather, the objecting party must introduce evidence demonstrating that the Claim is invalid, inaccurate, or otherwise subject to disallowance. *Id*. Matthews 350's blanket objection to the Claim Amount by stating that the Commission did not file additional documentation showing the Claim Amount, does not demonstrate that the Claim is invalid, inaccurate, or otherwise subject to disallowance. The litigation underlying the

10

Claim is ongoing; the fact that pending litigation exists does not reduce the Claim Amount to zero.

Further, Matthews 350's argument improperly conflates a request for additional documentation with a substantive basis for disallowance under 11 U.S.C. § 502(b). In *In re Yankey*, No. 24-10022, 2025 Bankr. LEXIS 311784 (Bankr. N.D. Ind. Sept. 10, 2025), the court recognized that insufficient documentation alone does not provide a basis to deny a claim as unenforceable under 11 U.S.C. § 502(b)(1). The court noted that where an objecting party fails to explain why the documentation provided is insufficient or what additional information would establish that the claim is unenforceable, the objection does not provide a basis for disallowance. *Id.* at 4 ("…her only complaints involve the sufficiency of the information in the claim or the lack of unidentified documentation. As explained above, those objections are insufficient…").

Likewise, Matthews 350 has failed to identify why the documents attached to the Commission's Proof of Claim are insufficient or what additional information would demonstrate that the Commission's Claim is invalid or unenforceable. Matthews 350 has not established that the Commission lacks *any basis* for the Claim, that the asserted Claim Amount is incorrect, or that any grounds for disallowance under 11 U.S.C. § 502(b) exist. Accordingly, Matthews 350 has failed to rebut the prima facie validity of the Commission's Proof of Claim, and the Claim should be allowed.

C. <u>Alternatively, the Amount in the Commission's Contingent Proof of Claim Is Sufficient as an Estimated Claim and Entitled to Prima Facie Validity</u>

Matthews 350 challenges the sufficiency of the Claim Amount, arguing that the Commission failed to provide calculation, breakdown, or supporting documentation showing how the asserted Claim Amount was determined. This objection fundamentally misunderstands the nature of contingent and unliquidated claims under the Bankruptcy Code and improperly attempts to deny prima facie validity to a claim that complies with all statutory requirements.

The Commission's Claim is contingent upon the outcome of ongoing litigation which includes non-debtors and is unliquidated to the extent that damages have not been finally determined by the state court. The Bankruptcy Code expressly contemplates and provides for such claims. Section 502(c)(1) requires estimation of "any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case."

A claim does not lose its prima facie validity merely because it is contingent or unliquidated and requires estimation. The statutory framework requires that all claims against the debtor be converted into dollar amounts through the estimation process. Courts have expressly recognized that a proof of claim may properly state an estimated amount even where the claim remains contingent and subject to further liquidation. *See generally Carlson v. United States (In re Carlson)*, 126 F.3d 915 (7th Cir. 1997); *In re Hydrox Chem. Co.*, 194 B.R. 617, 623 (Bankr. N.D. Ill. 1996).

12

The Commission's Proof of Claim states the amount of $10,879,877.00 based on the damages arising from the breach of the Development Agreement, including the value of lost tax revenue, the cost of unfulfilled redevelopment obligations, and related damages stemming from Matthews 350's alter ego liability. The Claim is supported by the Development Agreement, which establishes the contractual obligations, the capital expenditure commitments, the employment commitments, and the tax abatement incentives approved by the Commission. The underlying litigation includes a thousand-plus page record documenting the factual and legal basis for the Commission's damages.

Matthews 350's demand for itemized calculations and breakdowns attempts to impose a burden that the Bankruptcy Code does not require. A proof of claim is not stripped of its prima facie validity simply because the objector wishes for more documentation. Rather, the objecting party must introduce evidence demonstrating that the claim is invalid, inaccurate, or otherwise subject to disallowance. "Instead, there must be some **production of evidence** by the debtor to rebut the presumption favoring the claimant." *In re Hollars*, 198 B.R. 270, 271 (Bankr. S.D. Ohio 1996)(emphasis added). Debtor has produced nothing.

Matthews 350's blanket objection to the Claim Amount by stating that the Commission did not file additional documentation showing the Claim Amount does not demonstrate that the Claim is invalid, inaccurate, or otherwise subject to disallowance. The litigation underlying the Claim is ongoing; the fact that pending litigation exists does

13

not reduce the Claim Amount to zero. Moreover, the Bankruptcy Code's estimation mechanism contemplates precisely this scenario: a claim that requires further liquidation through an evidentiary hearing. If Matthews 350 contends that this estimate is inaccurate, the proper remedy is not summary disallowance but rather an evidentiary hearing at which the court can estimate the Claim pursuant to section 502(c).

D. <u>The Commission Was Not Required to Attach the RDA Contract to Its Proof of Claim.</u>

Matthews 350 contends that the Commission's Proof of Claim is deficient because the Commission allegedly relies upon the "RDA Contract" to establish the Mandatory Project Completion Date but did not attach the RDA Contract to its Proof of Claim. Matthews 350's argument relies upon an overly broad interpretation of Federal Rule of Bankruptcy Procedure 3001(c)(1).

Rule 3001(c)(1) requires that, "[i]f a claim or an interest in the debtor's property securing the claim is based on a writing, the creditor must file a copy with the proof of claim." Fed. R. Bankr. P. 3001(c)(1). The Rule requires a creditor to attach the writing upon which the claim is based; it does not require a creditor to attach every document referenced within that writing, every agreement incorporated into the contractual relationship, or every document that might possibly be relevant to establishing the factual circumstances giving rise to the claim.

Here, the Commission's Claim is based upon the liability stemming from the Development Agreement, which was attached to the Proof of Claim. The Development

Agreement establishes the contractual relationship between the Commission and CCD, sets forth the obligations imposed upon the parties, identifies the circumstances constituting a default, and provides the basis for the remedies available upon breach. The Claim clearly references that liability stems from CCD's breach and Matthews 350's alter ego liability. These documents establish the legal and equitable framework giving rise to the Commission's Claim against Matthews 350.

Although the Development Agreement references the RDA Contract in connection with the Mandatory Project Completion Date, the requirement to complete the Project in accordance with the applicable completion date arises from the Development Agreement itself. Specifically, the Development Agreement requires completion of the Project by the Mandatory Project Completion Date established through the RDA Contract or otherwise agreed upon by the parties. *See* Development Agreement § 4.5. Thus, the obligation allegedly breached is not created independently by the RDA Contract; rather, the obligation arises from the Development Agreement, which incorporates the applicable completion requirement as a contractual obligation.

Put differently, absent the Development Agreement, there would be no obligation requiring compliance with the Mandatory Project Completion Date, no obligation relating to the RDA Contract, and no basis for the Commission's breach of contract claim against Matthews 350. The RDA Contract is not the writing upon which the

15

Commission's Proof of Claim is based for purposes of Rule 3001(c)(1).  Fed. R. Bankr. P. Rule 3001(c)(1).

Matthews 350's interpretation of Rule 3001(c)(1) would improperly expand the Rule beyond its plain language by requiring creditors to attach every document referenced by, incorporated into, or related to the writing giving rise to a claim. Nothing in Rule 3001(c)(1) imposes such a requirement. Fed. R. Bankr. P. 3001(c). The Rule requires attachment of *the* writing upon which the Claim is based, and the Commission satisfied this requirement by attaching the Development Agreement and related supporting documents. Accordingly, Matthews 350's assertion that the Commission was required to attach the RDA Contract does not demonstrate any failure to comply with Rule 3001(c)(1), does not rebut the *prima facie* validity of the Commission's Proof of Claim, and does not provide a basis for disallowance under 11 U.S.C. § 502(b).  Fed. R. Bankr. P. 3001(c); 11 U.S.C. § 502(b).

E. Matthews 350's Challenge to the Enforceability of the Memorandum of Agreement Does Not Defeat the Commission's Proof of Claim.

Matthews 350 contends that the Memorandum of Agreement ("MOA") attached to the Commission's Proof of Claim cannot support the Commission's Proof of Claim because the MOA was never executed by Commerce Center Development, LLC, and therefore cannot serve as a basis for the Commission's Proof of Claim against Matthews 350.

16

The Commission's arguments on this point are largely the same as those in the response to CCD's objection. Given the intermingled nature of the finances between CCD and Matthews 350 (indeed, they have consolidated their bankruptcy) as well as the Ground Lease which functionally passes the benefit of the tax abatement to Matthews 350, the allegation that the MOA's status as being unsigned precludes any and all liability by Matthews 350 ignores the realities of the operations between the two entities.

Matthews 350's argument improperly isolates the MOA from the broader transaction between the parties and ignores the relationship between the MOA, the Development Agreement, the tax abatement incentives, and the redevelopment obligations that form the basis of the Commission's Proof of Claim. The MOA is one of several documents evidencing the parties' relationship, the commitments made in connection with the redevelopment project, and the circumstances giving rise to the Commission's Proof of Claim.

A properly filed proof of claim is presumed valid unless the objector produces evidence or legal authority of probative force equal to the allegations contained in the proof of claim. *In re Rosebud Farm, Inc.*, 660 B.R. 222; *In re Chapman*, 132 B.R. 132. Here, Matthews 350's contention that the MOA was unsigned does not overcome the validity of the Commission's Proof of Claim or establish that the Claim should be disallowed. While the lack of execution may be relevant to the ultimate enforceability of the MOA as

a contract, it does not establish that the MOA has no evidentiary value or that the Commission's Proof of Claim should be disallowed.

F. <u>Matthews 350's Disputes Regarding Liability, the Amount of the Claim, and Potential Defenses Do Not Warrant Disallowance</u>.

Matthews 350 denies any liability to the South Bend Redevelopment Commission and asserts that the Commission has failed to adequately substantiate the amount of its Proof of Claim. Matthews 350 contends that, because it disagrees with the basis and calculation of the Claim Amount, it is left to speculate as to the theories of liability upon which the Commission relies. However, Matthews 350's disagreement with the Claim Amount and the legal theories supporting it does not render the Commission's Proof of Claim deficient or subject to disallowance. This also ignores the intertwined nature of the consolidated debtors and their shared majority owner.

The Commission's Proof of Claim identifies the basis for the claim, including the Development Agreement, related project obligations, and the documents supporting the redevelopment transaction. Matthews 350's assertion that it is uncertain as to the precise theories supporting the Claim does not overcome the prima facie validity of the Commission's Proof of Claim. It is essentially asking the Commission to litigate the basis of its Second Amended Complaint preemptively in order to even be permitted to have a Claim.

Matthews 350's remaining arguments likewise raise merits defenses, including challenges to the enforceability of certain Development Agreement provisions,

compliance with notice and cure requirements, the applicability of force majeure provisions, the Commission's authority to assert claims related to tax abatement obligations, and the Commission's alter ego theory of liability. These issues require factual and legal determinations regarding the parties' rights and obligations under the Development Agreement and cannot be resolved through summary disallowance of the Commission's Proof of Claim. The correct method to litigate the Commission's Second Amended Complaint on the merits is to file an answer in the state court. Whether the Commission's Claim is ultimately allowed, and in what amount, requires adjudication of those issues on the merits, in the proper venue, after the remand issue has been ruled upon. Such complex disputes cannot be resolved through summary disallowance at the proof of claim stage in an attempt to evade remand or a ruling on the merits.

CONCLUSION

The Commission filed a Proof of Claim that fully complies with the requirements of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure. The Commission's claim was defensively filed because of how Matthews 350 scheduled it. The Commission attached the Development Agreement, Addendum, and related documents establishing the basis for the claim, the nature of the Claim, and specified the amount claimed. The Proof of Claim is entitled to prima facie validity. Matthews 350 has failed to produce any evidence sufficient to rebut that presumption.

19

The Debtor's objection consists of unsupported speculation, bare denials, and demands for documentation that Rule 3001 does not require. It entirely ignores § 502(c). Matthews 350's merits defenses, including denial of alter ego liability, challenges to contractual enforceability, and assertions of force majeure, are not matters to be decided through summary claim disallowance, particularly when the remand issue has been fully briefed and is awaiting adjudication.

Finally, as stated above, the Commission does not consent to this Court's jurisdiction over the state-law issues of the State Action and again contends that the remand issue must be decided prior to any claims litigation. The Commission primarily seeks to preserve its assorted rights as a Creditor while the State Action is decided.

**WHEREFORE**, the Redevelopment Commission of the City of South Bend, Indiana respectfully requests that this Court overrule Matthews 350's Objection to Claim and allow the Commission's Proof of Claim in the full amount of $10,879,877.00 and grant such other and further relief as the Court deems just and proper.

Dated: August 3, 2026

Respectfully Submitted,

/s/ *Katherine Iskin*
Katherine E. Iskin (33679-71)
Matthew J. Anderson (27511-71)
**MAY OBERFELL LORBER LLP**
4100 Edison Lakes Parkway, Suite 100
Mishawaka, IN 46545
Telephone: 574-243-4100
E-mail: kiskin@maylorber.com
          manderson@maylorber.com

20

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 3, 2026, a copy of the foregoing was filed electronically with the Clerk using the CM/ECF System, which sent notification of such filing to all counsel of record.

/s/ *Katherine Iskin*
Katherine Iskin (33679-71)

21