UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| In the Matter of:<br><br>Matthews 350 E LaSalle, LLC<br>*Debtor(s)*<br>Commerce Center Development, LLC<br>*Debtor(s)* | Case No. 26-30288-pes<br>Chapter 11<br><br>(Jointly Administered) |

**BRIEF IN SUPPORT OF MOTION TO TEMPORARILY ALLOW CLAIM FOR VOTING ON DEBTORS' PLAN**

The Redevelopment Commission of the City of South Bend (the "Commission"), Creditor in the above-entitled bankruptcy proceeding, submits this Brief in Support of its Motion to Temporarily Allow Claims for Voting on Debtors' Plan. Temporary allowance of the Commission's claims is necessary to preserve the Commission's voting rights with respect to the Debtors' Proposed Plan of Reorganization.

## I. Summary of Argument

On June 26, 2026, the Commission filed Proofs of Claim against Debtor Commerce Center Development, LLC ("CCD") and Debtor Matthews 350 E LaSalle, LLC ("Matthews 350"), Claim No. 3 and Claim No. 5, respectively (collectively, the "Claims"). The Claims are each unsecured claims for $10,879,877.00. Each Debtor filed an Objection to the Commission's claim against it on July 3, 2026. The Commission, in turn, filed Responses

to each of the Debtors' Objections on August 3, 2026. Since that time, however, the Objections to the Claims have not been resolved, although they are likely subjects of mediation.

Almost concurrently with the filing of the Claims and Objections, the Debtors filed their Combined Chapter 11 Plan of Reorganization (the "Plan") and their Combined Chapter 11 Disclosure Statement (the "Disclosure Statement") on July 28, 2026. By an order entered on September 9, 2026, the Court set October 28, 2026, as the deadline for submitting objections to the Plan and set November 18, 2026, as the date for a hearing to consider the confirmation of the Plan (the "Confirmation Hearing").

Under the 11 U.S.C § 1126(a), only the holders of claims allowed under 11 U.S.C. § 502 can vote to accept or reject a plan of reorganization. The effect, therefore, of an unresolved objection to a proof of claim is to disenfranchise the claimant of its voting rights until such time as the objection can be resolved.

The Commission fears that the Debtors' unresolved Objections to the Claims have stripped the Commission of its right to participate in accepting or rejecting the Plan and, accordingly, moves the Court to temporarily allow the Claims under F.R.B.P. 3018(a) for the sole purpose of voting on the Plan. Temporary allowance under F.R.B.P. 3018(a) is appropriate in this instance because the Objections to the Claims will not be resolved prior to the voting deadline and limited relief is necessary to prevent the Debtors from unilaterally disenfranchising the Commission of its right to vote.

## II. Statement of Facts

In 2017, the Commission and CCD entered into an agreement (the "Development Agreement") in which CCD agreed to undertake the development of a parcel in downtown South Bend. The factual allegations have been recited at length in several pleadings in this case and the related adversary proceeding, and are incorporated herein.

In their initial bankruptcy filings, the Debtors scheduled the Commission as having a "disputed" claim for an "unknown" amount based on the pending state court litigation. On June 26, 2026, the Commission timely filed Claim No. 3 against CCD in the amount of $10,879,877.00 and Claim No. 5 against Matthews 350 in the amount of $10,879,877.00. The Claims are based on the pending State Action[1] between the Debtors and the Commission. As support for each claim, the Commission attached a copy of the Development Agreement, an Addendum to the Development Agreement, and two Resolutions and a Memorandum of Agreement related to a tax abatement.

On July 28, 2026, the Debtors filed their Combined Plan of Reorganization. Under the Plan, the Debtors classified the Commission's Claims as general unsecured in Class 7. Under the Plan, claims in Class 7 are impaired. However, the Plan does not provide any treatment for the Commission's Claims because of the Debtors' Objections. The Commission's claims are the only ones which the Debtors have objected to and the only

[1] Redevelopment Commission of the City of South Bend, Indiana v. Commerce Center Development, LLC, Matthews, LLC, Matthews 350 E LaSalle LLCet al, 71D07-2301-PL-000020.

claims that are not afforded any treatment in the Plan. Debtors further state in the Plan that the Commission does not have any voting rights because its Claims have not yet been allowed by the Court. If allowed, the Plan states that the Commission's claims will be treated consisted with the other claims in Class 7.

## III. Argument

Temporary allowance is necessary to preserve the Commission's right to vote to accept or reject the Debtors' Plan. As it stands, the Debtors' unresolved Objections to the Claims threaten to disenfranchise the Commission of its voting rights.

A properly filed proof of claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). Once an objection to a claim is made, a claim can only be allowed by order of the Court. 11 U.S.C. § 502(b). Only holders of claims allowed under 11 U.S.C. § 502 may vote to accept or reject a plan. 11 U.S.C § 1126(a). An objection to a proof of claim, therefore, has the effect of stripping the claimant of its voting rights until the objection to the claim can be resolved by the Court.

Federal Rule of Bankruptcy Procedure 3018 allows for limited relief to claimants whose voting rights have been stripped by an unresolved objection. A determination for temporary allowance is left to the Court's discretion. *In re Zolner*, 173 B.R. 629, 633 (Bankr. N.D. Ill. 1994), *aff'd*, 249 B.R. 287 (N.D. Ill. 2000).

Rule 3018(a) is silent as to which party bears the burden of proof in a motion for the temporary allowance of claims for purposes of voting. Courts have, consequently, established differing opinions as to which party bears the burden of proof for the temporary allowance of a claim. *See Armstrong v. Rushton (In re Armstrong)*, 292 B.R. 678, 681 (B.A.P. 10th Cir. 2003). There is no clearly established standard in the 7th Circuit on this point.

If the Court places the burden of proof on the Commission to produce sufficient evidence to show that it has a colorable claim capable of temporary allowance in an amount that is reasonable and that temporary allowance is appropriate, the Commission will meet this burden. The amount the Commission seeks for temporary allowance and voting is reasonable as it is the only amount for which either party has presented any evidence. Temporary allowance is also appropriate because the Debtors' objections lack merit and are based on questionable arguments. Finally, the relief that the Commission seeks via this motion is not extraordinary, but rather limited, and if granted, will have no bearing on the final determination of the Commission's claims.

**a. The Commission has a colorable claim against the Debtors that is capable of estimation.**

The Commission's Claims against the Debtors are both colorable and capable of temporary evaluation. The Claims are based on the State Action which, as detailed above, the Commission brought against the Debtors for breach of the Development Agreement.

The Debtors both failed to deliver as promised pursuant to the Development Agreement and directly and clearly violate the terms of the Development Agreement, specifically in its transfer and assignment of the rights and benefits of the Development Agreement.

For these failures to perform and breaches of contract, the Commission seeks $10,887,773 in total damages as per the amended complaint in the State Action, an amount that reflects the $5 million in funding the Commission provided to the Debtors and approximately $5.87 million in lost property tax revenue from the tax abatement. The Commission is entitled to this recovery under the terms of the Development Agreement and under Indiana Law.

The Commission's Claims filed against the Debtors are for the same amount sought in the State Action. The Claims were filed in a timely manner, include the writings that form the basis of the claims, specifically the Development Agreement which establishes the contractual relationship between the Commission and the Debtors, and in all other respects conform to the statutory requirements for a proof of claim. As such, the Commission's claims are colorable and capable of estimation for the purposes of temporary allowance and voting on the Debtors Plan.

**b. Temporary Allowance is appropriate when an objection to a claim will not be resolved before confirmation and the objection to the claim is questionable or frivolous**

Temporary allowance under F.R.B.P. 3018(a) is appropriate when an objection to a proof of claim cannot be resolved prior to voting on and the confirmation of a plan and when the objection to a proof of claim is frivolous or of questionable merit. *In re Armstrong*, 292 B.R. at 686. These circumstances are not exclusive; rather, the court may exercise its discretion when determining whether temporary allowance is appropriate given the circumstances of a case. *Id*. While being a remedy to ensure the timely and efficient administration of a bankruptcy, temporary allowance is also a protection to prevent abuse on the part of a plan proponent by filing objections to the claims of potential dissenting creditors to ensure acceptance of the plan. *In re Stone Hedge Properties*, 191 B.R. 59, 64 (Bankr. M.D. Pa. 1995).

Here, the Debtors' Objections threaten to disenfranchise the Commission of its right to participate in accepting or rejecting the Debtors' Plan. When filed, the Commission's Claims were deemed allowed under § 502, but by simply filing Objections (not on the merits of those Objections), the Debtors have functionally disallowed the Claims.

Temporary allowance of a claim is also appropriate when an objection to a proof of claim has questionable legal merit. *In re Armstrong*, 292 B.R. at 686. Here, the Debtors' objections to the Commission's Claims lack merit in both their failure to meet the required burden of proof to overcome the presumed validity of a properly filed claim and the

Debtors' reliance on questionable and, in some instances, frivolous assertions in their requests to the Court for disallowance.

As the Commission stated in its Responses to the Objections, a properly filed proof of claim constitutes prima facie evidence of the validity and the amount of the claim. Fed. R. Bankr. P. Rule 3001(f); *See also In re Salem*, 465 F.3d 767, 779 (7th Cir. 2006). Once a creditor files a proof of claim that satisfies the requirements of Rule 3001, the burden of proof shifts to the objecting party to produce sufficient evidence to rebut the claim's *prima facie* validity. *In re Pierport Dev. & Realty, Inc.*, 491 B.R. 544, 547 (Bankr. N.D. Ill. 2013); *In re Neely*, 608 B.R. 806 (Bankr. N.D. Ill. 2019). Debtors assert questionable arguments for disallowance with no evidence and little legal support. Specifically, the Debtors assert four grounds for disallowance: 1) that the Commission failed to substantiate the amount of the Claims, 2) that the Commission failed to attach a writing upon which the Claims are purportedly based, 3) that a writing upon which the Claims are based is unenforceable, and 4) that the Debtors are not liable to the Commission whatsoever. These arguments, taken as a whole, do not adequately address the central issue of the validity Commission's Claims and merely serve to frustrate the Commission's voting rights.

First, the Debtors insist the Commission was required to provide a detailed calculation or breakdown to support the amount of the Claims. As the Commission points out in its Responses to the Objections, even if the Debtors provided some support for this

assertion (which they did not), the standard they purport to hold the Commission to is more stringent than what is required for a proof of claim. Additionally, the Debtors do not present any evidence that the amount the Commission asserts is incorrect or that another amount is more appropriate.

Next, the Debtors argue that the Commission did not attach a writing upon which the Claims are presumably based, specifically the "RDA Contract." This argument is questionable in two regards. First, the Debtors mischaracterize the requirement of F.R.B.P 3001(c)(1), broadening it to mean that a claimant must include *all* the writings upon which a claim may be based. In doing so, the Debtors again fail to provide legal support for their unreasonably broad interpretation of Rule 3001, nor do they provide the RDA Contract or any other evidence that the Claims are otherwise unenforceable under the Development Agreement.

The Debtors then allege that if the Commission's Claims are based in part on the RDA Contract, then the Commission did not properly initiate legal proceedings against the Debtors by failing to comply with a notice requirement. This argument seems to insinuate that the Commission's claim may be based on a breach, other than the breach of the Development Agreement. What this breach is, the Debtors fail to specify, nor do they provide any evidence to support such contention. As such, the relevance of this argument as to the validity of the Commission's Claim is questionable.

Third, the Debtors assert the Memorandum of Agreement (the "MOA") that the Commission included with the Claims is unenforceable because CCD never signed it. Similar to the Debtors' argument about the RDA Contract, whether the MOA is enforceable against the Debtors does not defeat the Commission's Claims against the Debtors for breach of the Development Agreement.

Rather, the argument that the MOA is unenforceable against the Debtors only brings into question whether the Debtors should continue to (or should have ever received) the benefits of the tax abatement, an issue that is well outside of the scope of the presumed validity of the Commission's properly filed Claims. As explained in the Commission's response to CCD's objection, the MOA comprises an essential part of the tax abatement framework, as required by the South Bend Municipal Code. Debtors cannot expect that the MOA can both be unenforceable against them for purposes of Commission's Claims *and* that they can continue to receive the benefits of the tax abatement if the MOA is indeed unenforceable. As such, this argument, too, is questionable and potentially even frivolous.

Finally, Debtors close their Objections by asserting alternate defenses including 1) that Section 7.2 of the Development Agreement is an unenforceable penalty clause under Indiana Law, 2) that force majeure excuses certain breaches, and 3) that the Commission may not be the proper party to assert a claim against the Debtors with regard to the tax abatement. These defenses are not developed beyond these assertions. In this sense, these

arguments are frivolous for the purposes of temporary allowance. Temporary allowance under Rule 3018 is therefore appropriate to preserve the Commission's voting rights until such time as the Objections to the Claims are properly resolved.

**c. The Court may adopt any method it deems appropriate to determine the amount of a temporarily allowed claim.**

F.R.B.P. 3018(a) does not establish a method that a court must adopt when determining the amount of a claim for temporary allowance. Courts, therefore, may use their discretion and adopt any method necessary to determine the amount to temporarily allow the claim for purposes of voting. *In re Hydrox Chem. Co.*, 194 B.R. 617, 623 (Bankr. N.D. Ill. 1996). Nevertheless, the amount of a temporarily allowed claim should reflect the claimant's economic interest against the Debtor. *Pension Benefit Guar. Corp. v. Enron Corp.*, 2004 U.S. Dist. LEXIS 218120, 17 (Bankr. S.D.N.Y. 2004).

Accordingly, the Court should temporarily allow the Commission's Claims in their face value amount for purposes of voting on the Plan. As detailed above, the amount of the Commission's Claims are not arbitrary or unreasonable but instead reflect the exact amount of damages sought for the Debtors' breaches of the Development Agreement in the State Action. Accordingly, it most accurately reflects the Commission's economic interest at present and is reasonable in light of the breaches of the Development Agreement. Accordingly, the face value amount of the Claims is appropriate for purposes of temporary allowance.

Some courts have cautioned against granting disproportionate voting power to creditors when determining an amount of a temporarily allowed claim. *See Pension Benefit Guar. Corp. v. Enron Corp.*, 2004 U.S. Dist. LEXIS 218120 at 18. Here, this caution is not applicable due to the face value of the Commission's Claims ($10,879,977.00) being an outlier when compared to the values of the claims of the other creditors in Class 7 (ranging in value from $10.00 to $124,420.00). Accordingly, even if the Court determined that only a fraction of the face value of the Commission's Claims was reasonable for temporary allowance, the Commission would still hold the majority of the voting power in its class. Thus, when determining the value of the Commission's Claims for temporary allowance, the Court should emphasize the amount that reflects the Commission's economic interest rather than the risk that the Commission may have disproportionate voting power as a result. The discrepancy is simply a reflection of the Commission's economic interest.

The Commission is without a doubt the Debtors' largest unsecured creditor. Rule 3018 is meant to protect the interests of creditors from disenfranchisement via claim objection. Therefore, temporary allowance of the Commission's Claims is necessary to allow the Commission to participate fully in voting to accept or reject the Debtors' Plan of Reorganization.

## IV. CONCLUSION

WHEREFORE Creditor, the Redevelopment Commission of the City of South Bend respectfully requests that the Court enter an Order temporarily allowing the Commission's claims (Claims no. 3 and no. 5) against the Debtors in their face value amount of $10,879,877 for the purpose of voting to accept or reject the Debtors' Plan of Reorganization and granting all other just and proper relief.

Dated: October 28, 2026

Respectfully Submitted,

*/s/ Katherine E. Iskin*

Katherine E. Iskin (33679-71)
Matthew J. Anderson (27511-71)
**MAY OBERFELL LORBER LLP**
4100 Edison Lakes Parkway, Suite 100
Mishawaka, IN 46545
Telephone: 574-243-4100
Email: kiskin@maylorber.com
manderson@maylorber.com

### CERTIFICATE OF SERVICE

I certify that on October 28, 2026, a copy of the foregoing was filed electronically with the Clerk using the CM/ECF System, which sent notification of such filing to all counsel of record.

*/s/ Katherine E. Iskin*

Katherin E. Iskin (33679-71)