UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| In the Matter of:<br><br>Matthews 350 E LaSalle, LLC<br>*Debtor(s)*<br><br>Commerce Center Development, LLC<br>*Debtor(s)* | Case No. 26-30288-pes<br>Chapter 11<br><br>(Jointly Administered) |

**MOTION IN SUPPORT OF CONFIRMATION OF CHAPTER 11 PLAN AND RESPONSE TO OBJECTIONS OF 300 E. LASALLE AVE NOTE LLC AND THE REDEVELOPMENT COMMISSION OF THE CITY OF SOUTH BEND**

Matthews 350 E LaSalle LLC d/b/a 300 E. LaSalle d/b/a 300 East LaSalle ("**Matthews 350**"), and Commerce Center Development, LLC ("**CCD**", together, "**Debtors**"), by counsel, for their *Motion in Support of Confirmation of Chapter 11 Plan and Response to Objections of 300 East LaSalle Ave Note LLC and The Redevelopment Commission of the City of South Bend,* state as follows:

**INTRODUCTION**

The *Debtors' Combined Chapter 11 Plan of Reorganization* [Filing No. 144] (the "**Plan**") provides a three (3) year framework under which the Debtors will continue operating, devote net operating income to Plan obligations, make monthly principal and interest payments to their senior secured lender, pursue refinancing, and, if refinancing is unavailable, market and ultimately auction the mortgaged real estate. The Plan preserves secured creditors' liens to the extent provided in the Plan and supplies defined remedies if the Debtors fail to perform their obligations under the Plan.

Furthermore, the terms with respect to the treatment of the secured claim of KeyBank National Association ("**KeyBank**") [Class No. 3] was a framework that was

discussed with KeyBank prior to the filing of this Chapter 11 and one that KeyBank had multiple opportunities to comment on before the filing of the Plan and had indicated that the terms were agreeable. It was not until KeyBank sold its loan to an entity formed for the ultimate purpose of owning Debtors' project that the terms became unagreeable.

The two (2) objections to confirmation that were filed do not warrant denial of confirmation. The objection [Filing No. 221] (the "**300 E. LaSalle Objection**") of 300 E. LaSalle Ave Note LLC ("**300 E. LaSalle**") principally rests on the mistaken premise that the Plan substantively consolidates the Debtors or necessarily transfers Matthews 350's property to creditors of CCD. It does neither. The Debtors' cases remain jointly administered, the underlying estates remain separate, and the Plan can be confirmed and construed consistently with those boundaries.

Nor does the Plan improperly permit holders of filed CCD claims to vote merely because those creditors do not hold claims against Matthews. The Shein claims were filed against CCD, are separately classified based on their asserted secured rights, and are treated as impaired. Any distribution on those claims will be made from property properly available to CCD, subject to the liens and rights of senior creditors.

The Redevelopment Commission of the City of South Bend's (the "**Redevelopment Commission**") objection [Filing No. 218] (the "**Redevelopment Commission Objection**"; together with the 300 E. LaSalle Objection, the "**Objections**"), can likewise be resolved without denying confirmation. The Plan includes both financial projections and a liquidation analysis. The Debtors will establish at the confirmation hearing that the Plan's projections are reasonable, that the Plan offers impaired creditors at least the value available in a hypothetical Chapter 7 liquidation, and that confirmation

is not likely to be followed by liquidation or another reorganization. The Debtors also agree that, to the extent the Redevelopment Commission's disputed claim is ultimately allowed, it will receive the same treatment as other allowed Class 7 claims. That clarification eliminates the Redevelopment Commission's unequal treatment objection without prejudging the pending claim objections.

The Court should overrule both Objections and confirm the Plan, with any appropriate clarification in the confirmation order concerning estate separateness and the treatment of the Redevelopment Commission's disputed claim.

## RELEVANT PROCEDURAL BACKGROUND

The Debtors each commenced separate Chapter 11 cases on March 10, 2026 (the "**Petition Date**"). The Court subsequently ordered joint administration under Matthews 350's case number, while creditors remained required to file proofs of claim in the particular Debtor's case to which each claim related.

The Debtors filed the Plan on July 28, 2026. The Plan expressly recognizes the joint administration structure and provides that claims are classified for distribution only to the extent they qualify within the description of the applicable class. The Plan identifies nine classes and separately describes the legal rights and treatment applicable to each class.

The Plan treats the senior secured claim now held by 300 E. LaSalle in Class 3. It values the collateral identified for that class at $30,008,048 and provides for a secured claim in that amount, bearing interest at five percent (5%), amortized over thirty (30) years, with estimated monthly payments of $161,089.69 and a three (3) year term. The Plan further provides for continued effectiveness of the loan documents except as

modified, periodic refinancing applications, marketing through an approved commercial real estate broker if refinancing is not completed, and an absolute auction if the prescribed marketing process does not produce a sale. Upon an uncured default, the collateral may be abandoned, applicable stays terminated, and the secured creditor permitted to enforce its remedies against the collateral.

The Plan classifies the Sheins' asserted CCD secured claim in Class 4 and the Shein Trust's asserted CCD secured claim in Class 5. The Plan identifies those claims by reference to the proofs of claim filed in CCD's case, treats each class as impaired, and provides that the loan and security documents remain effective except as modified by the Plan.

Class 7 consists of general unsecured claims. Holders of allowed Class 7 claims receive *pro rata* distributions from the Debtors' disposable income, including annual payments during the three (3) year Plan term and net proceeds from specified avoidance recoveries. The Plan presently identifies the Redevelopment Commission's claims as disputed because the Debtors filed objections seeking their disallowance.

The Plan provides that its funding source will be net monthly income from the Debtors' continued operations and attaches projections through December 31, 2029. It also attaches a liquidation analysis and states that the Debtors must demonstrate that nonaccepting creditors will receive at least as much under the Plan as in a Chapter 7 liquidation. The Plan states that the Debtors expect sufficient cash on the Effective Date to pay claims required to be paid at that time and will continue operating under existing management to fund future payments.

300 E. LaSalle asserts that it acquired KeyBank National Association's rights concerning the Debtors' loan on September 30, 2026, including proofs of claim in the asserted amount of $30,132,468.79. It objects principally to the combined form of the Plan, the classification and voting rights of the Sheins and Shein Trust, the use of Matthews 350 property, the treatment of its secured claim, the proposed interest rate, and feasibility.

The Redevelopment Commission filed unsecured proofs of claim against both Debtors in the amount of $10,879,877, and the Debtors' objections to those claims remain unresolved. The Redevelopment Commission objects based on the best interests test, feasibility, and the Plan's treatment of its disputed claims.

**REQUESTED RELIEF AND BASIS THEREFOR**

By this Motion, Debtors seek to have the Objections overruled and request the Plan be confirmed. A Chapter 11 plan must designate classes of claims, identify impaired and unimpaired classes, specify the treatment of impaired classes, provide the same treatment for each claim within a class unless a holder agrees to less favorable treatment, and provide adequate means for implementation. 11 U.S.C. § 1123.

A plan may place a claim in a class only when that claim is substantially similar to the other claims in that class. 11 U.S.C. § 1122. A filed proof of claim is deemed allowed unless a party in interest objects; upon an objection, the Court determines the amount and allowance of the claim after notice and a hearing. 11 U.S.C § 502 .

A holder of a claim allowed under Section 502 may accept or reject a plan. 11 U.S.C. § 1126. A class of claims accepts a plan when creditors holding at least 2/3s in

amount and more than 1/2 in number of the allowed claims actually voting in that class accept the plan. 11 U.S.C. § 1126.

The requirements to confirm a plan are set forth in Section 1129 of the Bankruptcy Code and as set forth below, each of those requirements are satisfied. Furthermore, if all applicable requirements of Section 1129(a), other than Section 1129(a)(8), are met, the Court may confirm a plan over a rejecting impaired class if the plan does not discriminate unfairly and is fair and equitable as to that class. 11 U.S.C. § 1129.

For a secured class, fair and equitable treatment may include retention of the liens securing the allowed claims and deferred cash payments totaling at least the allowed amount, with an effective date value of at least the value of the creditor's interest in the estate's interest in the collateral. 11 U.S.C. § 1129. Alternatively, the plan may provide for a qualifying sale of the collateral with liens attaching to proceeds or for realization of the indubitable equivalent of the secured claims. 11 U.S.C. § 1129.

The secured portion of an allowed claim is determined by the value of the creditor's interest in the estate's interest in the collateral, considering the purpose of the valuation and the proposed use or disposition of that property. 11 U.S.C. § 506.

The Northern District of Indiana's local rules require a plan proponent seeking confirmation over a rejecting class to identify the rejecting class and explain how Section 1129(b) is satisfied no later than fourteen (14) days before the confirmation hearing. N.D. Ind. L.B.R. B-3020-1. The plan proponent must also file and serve a verified ballot report identifying each class, its impairment status, the voting results, material changes, and the availability of funds for payments due on the effective date. N.D. Ind. L.B.R. B-3018-1.

## A. THE PLAN SATISFIES THE REQUIREMENTS FOR CONFIRMATION

The Plan identifies the classes of secured, unsecured, priority, subordinated, and equity claims; states whether each class is impaired; and specifies the treatment afforded to each class. It also identifies continued operations, disposable income, refinancing, marketing, and an ultimate sale process as the means for implementation. Those provisions address the classification, treatment, and implementation requirements governing a Chapter 11 plan. 11 U.S.C. § 1123.

Joint administration does not alter the Plan's express recognition that claims were required to be filed against the particular Debtor obligated on the claim. The Plan should be construed and confirmed on that basis. Nothing in the Plan requires substantive consolidation, and the confirmation order may expressly provide that confirmation does not merge the estates or make one debtor liable for a claim solely against the other.

The Plan also supplies enforceable treatment for 300 E. LaSalle's secured claim. It provides monthly principal and interest payments, continuation of the applicable loan documents except as modified, refinancing and sale procedures, and enforcement rights following an uncured default. To the extent Class 3 has rejected the Plan, the Debtors request confirmation under Section 1129(b) and state that the requirements of Section 1129(a) have all been met, with the exception of Section 1129(a)(8) as follows:

**11 U.S.C. § 1129(a)(1) - Plan Complies with Applicable Provisions**

**Classification under 11 U.S.C. § 1122**

Substantially similar claims grouped together

Each secured creditor in its own class due to distinct collateral and legal rights

**11 U.S.C. § 1129(a)(2) - Proponent Compliance**

Disclosure Statement approved; solicitation per Section 1125

Voting procedures complied with

Notice provided per Court order

**11 U.S.C. § 1129(a)(3) - Good Faith**

Plan proposed to maximize value through going concern preservation

New value contribution rather than pure debt restructuring

Reasonable prospects of success per budget; no improper purpose

**11 U.S.C. § 1129(a)(4) - Payments Subject to Court Approval**

Administrative expenses remain subject to Court review and approval

Professional fees subject to applications and Court approval

**11 U.S.C. § 1129(a)(5) - Disclosure of Officers/Directors**

Preconfirmation management (David Matthews) continues in management

**11 U.S.C. § 1129(a)(6) - Regulatory Approvals**

Not applicable; no governmental rate changes involved

**11 U.S.C. § 1129(a)(7) - Best Interests of Creditors Test**

Liquidation Analysis [Filing No. 144-2] establishes Chapter 7 alternative

Net to unsecured creditors in liquidation: NEGATIVE $150,000

Projected administrative expenses (-$150,000)

None of the secured creditors show equity

Plan provides Pro Rata distribution from disposable income over 3 years

Going concern value preserved

Each individual creditor receives at least as much under the Plan as it would in Chapter 7

**11 U.S.C. § 1129(a)(8) - Acceptance by All Impaired Classes**

NOT satisfied

Cramdown analysis under Section 1129(b) addressed below

**11 U.S.C. § 1129(a)(9) - Priority Claims Treatment**

Administrative expenses paid in cash on Effective Date (§ 5.1)

No Section 507 priority claims

**11 U.S.C. § 1129(a)(10) - One Impaired Accepting Class**

Non insider impaired classes accepted (Classes 4 and 5)

Equity security holders accepted (Class 9)

**11 U.S.C. § 1129(a)(11) - Feasibility**

Projections [Filing No. 144-1] establish:

Net Operating Income

Sufficient cash flow for debt service and operations

Sufficient net income to make required plan payments to unsecured creditors

**11 U.S.C. § 1129(a)(12) - U.S. Trustee Fees Current**

US Trustee Fees are current and will remain current

**11 U.S.C. § 1129(a)(13) - (16)**

(13) Retiree benefits - not applicable

(14) Domestic support - not applicable (corporate debtors)

(15) Individual debtor projected disposable income - not applicable

(16) Transfers in compliance with non-bankruptcy law - applicable but unobjected

**CRAMDOWN UNDER 11 U.S.C. § 1129(b)**

**Burden: Plan must (1) not discriminate unfairly and (2) be fair and equitable**

**Plan Does Not Discriminate Unfairly as to Class 3 (300 E LaSalle) – the only objecting secured creditor:**

Class 3 receives similar treatment in structure to other secured creditors:

Allowed Secured Claim equal to collateral value based on KeyBank's own appraised value;

Lien retention;

Deferred cash payments;

No similarly situated secured class receives materially better treatment; and

Treatment is consistent with (indeed more generous than) what Chapter 7 would yield.

**Fair and Equitable - Class 3 under 11 U.S.C. § 1129(b)(2)(A)(i) The Plan satisfies all three prongs of 11 U.S.C. § 1129(b)(2)(A)(i):**

1. Lien retention. Plan § 3 expressly provides that 300 E. LaSalle's loan documents continue, which include a mortgage against the real estate subject to the lien of 300 E. LaSalle and a security agreement against personal property.

2. Deferred cash payments totaling at least the allowed amount of the secured claim.

3. Present value at least equal to the value of the secured claim.

## B. THE COURT SHOULD OVERRULE 300 E. LASALLE'S OBJECTION

### 1. The Plan does not substantively consolidate the Debtors.

300 E. LaSalle correctly observes that the Debtors' cases are jointly administered and have not been substantively consolidated. But that fact does not establish a defect in the Plan. The Plan acknowledges that creditors were required to file claims in the individual case to which each claim relates and classifies claims according to their asserted rights.

The Court can eliminate any possible ambiguity by providing in the confirmation order that:

a. the estates remain separate;

b. confirmation does not create liability against a Debtor that was not previously obligated on a claim;

c. a distribution on a claim against only one Debtor may be made only from property legally available to that Debtor; and

d. joint administration remains an administrative procedure rather than a merger of assets and liabilities.

That construction preserves the Plan's combined administrative structure without granting substantive consolidation.

### 2. The Sheins' and Shein Trust's claims are properly treated as claims against CCD

The Plan identifies the Sheins' and Shein Trust's claims as proofs of claim filed in CCD's case. The objection likewise acknowledges that those proofs of claim were filed

against CCD and that CCD executed the asserted guaranty and mortgage. Thus, the Plan does not depend on treating the Sheins or Shein Trust as creditors of Matthews 350.

Section 1122 permits a claim to be included in a class when it is substantially similar to the other claims in that class. 11 U.S.C. § 1122. The Shein claims assert rights based on their own loan and collateral documents, while 300 E. LaSalle asserts senior liens securing a different loan against different collateral interests. The Plan therefore addresses those asserted secured rights in separate classes rather than treating them as legally identical.

The filed Shein proofs of claim are deemed allowed unless a party in interest objects. 11 U.S.C. § 502. There has not been any claim objection or judgment avoiding the asserted CCD guaranty or mortgage. The suggestion that those instruments might later be challenged does not, standing alone, establish that the claims are presently disallowed.

The Plan treats Classes 4 and 5 as impaired because it modifies the timing of payments while preserving other terms of the applicable instruments. Holders of allowed impaired claims may vote on a plan. 11 U.S.C. § 1126. Their votes must be counted only in the classes containing their CCD claims and do not create claims against Matthews 350.

### 3. The Plan does not authorize an improper transfer of Matthews 350 property

300 E. LaSalle contends that the Plan will use Matthews 350 property to pay claims solely against CCD. The Plan, however, does not identify any particular Matthews 350

asset that must be transferred to the Sheins or Shein Trust. It states generally that Plan payments will be funded through net operating income.

The confirmation order can clarify that the Plan authorizes only distributions consistent with ownership of the relevant property, the separateness of the estates, and valid liens. That clarification answers the objection without changing the treatment of any class or requiring denial of confirmation.

**4. The Plan's proposed stay against collection from David Matthews**

300 E. LaSalle correctly asserts that the Plan stays its collection rights against non-debtor David Matthews. That particular term was a term that was discussed and proposed to 300 E. LaSalle's predecessor, KeyBank, both prior to the Petition Date and after, and a term with which KeyBank appeared to be agreeable, having taken no action to attempt to collect from David Matthews individually since the Petition Date.

A modification to the Plan to remove such term can be filed to the extent that this Court otherwise determines the plan is confirmable and the confirmation order may clarify that no stay, discharge, or injunction concerning a non-debtor, including David Matthews, is granted except to the extent expressly agreed to, in writing, by the respective creditor. The disparate treatment argument based on an asserted non-debtor stay therefore does not support denial of confirmation.

**5. The secured treatment of 300 E. LaSalle is subject to confirmation evidence, not summary denial**

The Plan provides 300 E. LaSalle with a secured claim based on the amount of the collateral value, which is set forth in the Schedules and Statements filed by CCD. The

Plan also provides for continued liens and the continuation of the loan documents, as modified by the Plan, monthly payments, refinancing requirements, a sale process, and collateral enforcement rights after an uncured default. Section 1129(b) permits confirmation over a secured class when the holder retains its lien and receives deferred cash payments with the required value as of the effective date. 11 U.S.C. § 1129.

300 E. LaSalle disputes the proposed five percent (5%) interest rate and the feasibility of refinancing. Again, the five percent (5%) interest rate originates from communications with KeyBank prior to and after the Petition Date regarding plan terms, all of which was prior to the time 300 E. LaSalle purchased the loan from KeyBank with a different fundamental goal (namely "loan to own") than KeyBank had, which was to permit Debtors to resolve their litigation with the Redevelopment Commission and refinance their obligations to KeyBank. Additionally, to the extent that the Court determines the Plan is otherwise confirmable, Debtors propose to file a modification to provide interest at the *Till* rate to resolve this objection by 300 E. LaSalle.

Furthermore, with respect to the feasibility of refinancing, the confirmation of the Plan will put Debtors in a much better position to move forward with refinancing than their current position as debtors in possession or the position in which they were in prior to the filing of these bankruptcy cases.

Additionally, this category of objections by 300 E. LaSalle identify factual issues for the confirmation hearing, about which Debtors can present testimony and evidence. The objection does not justify denying confirmation before that evidence is considered.

### C. THE COURT SHOULD OVERRULE THE REDEVELOPMENT COMMISSION'S OBJECTION

#### 1. The Plan includes a liquidation analysis and permits a determination under the best interests test

The Redevelopment Commission argues that the liquidation analysis lacks adequate substantiation and fails to assign value to certain leases, the parking lot, and going concern interests. The Plan nevertheless includes a liquidation analysis and expressly recognizes the requirement that nonaccepting creditors receive at least what they would receive in a Chapter 7 liquidation.

At the confirmation hearing, the Debtors will establish the basis for the asset values, the treatment of secured claims, the ownership of the listed property, and the effect of the relevant leases and operating interests. The Court can then compare the value available under the Plan with the value available in a hypothetical liquidation. The Redevelopment Commission's challenges to particular assumptions concern the evidentiary support for the analysis; they do not establish that the Plan necessarily fails to meet the liquidation test.

#### 2. The Plan provides a concrete means of implementation and a basis for finding feasibility

The Redevelopment Commission contends that the projections do not sufficiently explain the anticipated reduction in commercial vacancy or the methodology used to forecast operations. The Plan, however, does more than state a general expectation of success. It identifies net operating income as the funding source, attaches projections on an annual basis going forward, continues existing management, requires periodic

refinancing applications, and establishes a brokered sale and auction process if refinancing is unsuccessful.

The Debtors will support those projections and implementation measures at the confirmation hearing through testimony and evidence. Again, the Plan's combination of operating income, periodic refinancing efforts, and a defined sale process supplies a concrete route to performance and repayment. The Redevelopment Commission's disagreement with projected assumptions should be evaluated against the confirmation evidence rather than treated as a basis to deny the Plan prior to the confirmation hearing.

**3. The Redevelopment Commission's disputed claim can receive the same treatment as other allowed Class 7 claims**

The Redevelopment Commission's final objection concerns the Plan's statement that its disputed claim is not presently being treated because the Debtors seek disallowance. The Bankruptcy Code requires the same treatment for each claim within a class unless the holder agrees to less favorable treatment. 11 U.S.C. § 1123(a)(4).

That issue can be resolved through a modification or the confirmation order that will clarify that:

a. The Redevelopment Commission's claims remain disputed and subject to the pending claim objections;

b. Confirmation does not allow or disallow the Redevelopment Commission's claims;

c. To the extent either Redevelopment Commission claim is allowed, it will receive the same treatment applicable to other allowed Class 7 claims against the corresponding Debtor; and

d. Distributions otherwise allocable to the disputed Redevelopment Commission claim may be withheld pending allowance without forfeiting the claim's right to Class 7 treatment if ultimately allowed.

A filed claim is deemed allowed unless objected to, and after an objection the Court determines the amount to be allowed. 11 U.S.C. § 502. A holder may vote only through a claim allowed under Section 502. 11 U.S.C. § 1126. The Redevelopment Commission has requested temporary allowance for voting purposes, and the voting treatment of its claims should follow the Court's ruling on that request. The merits of the underlying claim objections need not be decided as a condition to confirmation if the confirmation order preserves equal Class 7 treatment for any amount ultimately allowed.

### D. THE PLAN MAY BE CONFIRMED UNDER 11 U.S.C. § 1129(b) AS TO ANY REJECTING IMPAIRED CLASS

The Plan seeks confirmation under Section 1129(a) and, alternatively, Section 1129(b). If an impaired class has rejected the Plan, the Court may confirm notwithstanding Section 1129(a)(8) if the remaining applicable requirements are met and the Plan does not discriminate unfairly and is fair and equitable as to the rejecting class. 11 U.S.C. § 1129.

As to Class 3, the Plan preserves the secured creditor's collateral position, provides deferred cash payments, and establishes remedies culminating in a sale or auction if refinancing is not achieved. As to Class 7, allowed claims share *pro rata* in the same distribution fund and specified recovery proceeds. No junior Class 8 distribution is permitted, and the Class 8 claimant has consented to subordination and no distribution.

Accordingly, subject to the evidence presented at the confirmation hearing (the appropriate place and time to present evidence) and the clarifications requested above, the Plan provides a basis for confirmation under Section 1129(b) as to any rejecting impaired class.

## CONCLUSION

The Debtors respectfully request that the Court:

A. Overrule the objection of 300 E. LaSalle Ave Note LLC;

B. Overrule the objection of the Redevelopment Commission of the City of South Bend;

C. Confirm the Debtors' Combined Chapter 11 Plan of Reorganization under Section 1129(a) or, as necessary, Section 1129(b);

D. Clarify in the confirmation order that:

1. the Debtors' estates remain separate and are not substantively consolidated;
2. claims and distributions remain attributable to the Debtor against which the corresponding claim exists;
3. the Plan does not grant a stay, discharge, or injunction protecting non debtor David Matthews; and
4. any Redevelopment Commission claim ultimately allowed will receive the same treatment as other allowed Class 7 claims against the corresponding Debtor; and

Respectfully submitted,

*<u>/s/ Weston E. Overturf</u>*
Weston E. Overturf, Atty. No. 27281-49

Anthony T. Carreri, Atty. No. 36107-49
Jason T. Mizzell, Atty. No. 30038-53
KROGER, GARDIS & REGAS, L.L.P.
111 Monument Circle, Suite 900
Indianapolis, IN 46204
(317) 777-7443
woverturf@kgrlaw.com
acarreri@kgrlaw.com
jmizzell@kgrlaw.com

*Counsel for Debtors, Matthews 350 E LaSalle, LLC and Commerce Center Development, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of November, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

- **Miranda Bernadac** mbernadac@tbmattorneys.com, tvonstamwitz@tbmattorneys.com
- **Anthony Thomas Carreri** ACarreri@kgrlaw.com, dg@kgrlaw.com;sharding@kgrlaw.com;lstella@kgrlaw.com
- **Christopher C. Hagenow** chagenow@tbmattorneys.com, tvonstamwitz@tbmattorneys.com
- **Katherine Everett Iskin** kiskin@maylorber.com, MayOberfellLorber@jubileebk.net
- **Marcellus Lebbin** lebbin@gmail.com
- **Ryan Murphy** iumurphy19@gmail.com
- **Weston Erick Overturf** woverturf@kgrlaw.com, dg@kgrlaw.com;sharding@kgrlaw.com;lstella@kgrlaw.com
- **Jennifer Prokop** jennifer.prokop@usdoj.gov, jwprokop@yahoo.com
- **United States Trustee** USTPRegion10.SO.ECF@usdoj.gov

I further certify that on the 4th day of November, 2026, a copy of the foregoing was mailed by first class United States mail, postage prepaid, and properly addressed to the following:

**NONE**

*/s/ Weston E. Overturf*
Weston E. Overturf